# EXHIBIT A

## Register of Actions

| | | |
|---|---|---|
| ☐ **Filed by Plaintiff/Petitioner** | **Case Number:** 2023CV030043 | **Division:** 209 |
| ☐ **Filed by Defendant/Respondent** | **Case Type:** Breach of Contract | **Judicial Officer:** Sarah Block Wallace |
| ☐ **Filed by Court** | **Case Caption:** Sabin MD, Jeffrey v. Unum Group et al | **Court Location:** Denver County - District |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| F3375941C88A0 | 01/09/2023 4:10 PM | Zachary Cline Warzel Esq. | Keating Wagner Polidori Free, P.C. | Jeffrey Sabin MD | Summons | District Court Civil Summons - (Unum Group) | Public |
| | | | | | Return of Service | Affidavit of Process Server - - Summons, Complaint, Civil Case Cover Sheet, Pre-Trial Order, and Delay Reduction Order served to Lyanne Gares for Unum Group on 01/06/2023 | Public |
| A32E5762A95FD | 01/09/2023 12:48 PM | Zachary Cline Warzel Esq. | Keating Wagner Polidori Free, P.C. | Jeffrey Sabin MD | Summons | District Court Civil Summons - The Paul Revere Life Insurance Company | Public |
| | | | | | Return of Service | Affidavit of Service - Summons, Complaint, Civil Case Cover Sheet, Pre-Trial Order, and Delay Reduction Order served to Corey Edwards for The Paul Revere Life Insurance Company on 01/09/2023 | Public |
| N/A (Details) | 01/05/2023 4:27 PM | Alex C Myers | Denver County - District | N/A | Order | PRE-TRIAL ORDER | Public |
| N/A (Details) | 01/05/2023 4:24 PM | Alex C Myers | Denver County - District | N/A | Order | DELAY REDUCTION ORDER | Public |
| 6CCE98C692152 | 01/05/2023 3:51 PM | Zachary Cline Warzel Esq. | Keating Wagner Polidori Free, P.C. | Jeffrey Sabin MD | Complaint w/Jury Demand | Complaint & Jury Demand | Public |
| | | | | | Civil Case Cover Sheet | District Court Civil Case Cover Sheet for Initial Pleading of Complaint | Public |

## Party Information

| Party Name | Party Type | Party Status | Attorney Name |
|---|---|---|---|
| Jeffrey Sabin, MD | Plaintiff | Active | ROSS WHITING PULKRABEK (Keating Wagner Polidori Free, P.C.) ZACHARY CLINE WARZEL (Keating Wagner Polidori Free, P.C.) |
| Paul Revere Life Ins Co | Defendant | Active | N/A |
| Unum Group | Defendant | Active | N/A |

# EXHIBIT B

| DISTRICT COURT, COUNTY OF DENVER,<br>STATE OF COLORADO<br><br>**Court Address:**<br>1437 Bannock Street, Room 256<br>Denver, CO 80202<br>(720) 865-8301 | DATE FILED: January 5, 2023 3:51 PM<br>FILING ID: 6CCE98C692152<br>CASE NUMBER: 2023CV30043<br><br><br>▲ **COURT USE ONLY** ▲ |
|---|---|
| **Plaintiff**: JEFFREY SABIN, M.D.<br><br>v.<br><br>**Defendants:** THE PAUL REVERE LIFE INSURANCE COMPANY; UNUM GROUP | |
| **Attorneys for Plaintiff Jeffrey Sabin, M.D.:**<br>Zachary Warzel, No. 36546<br>Ross Pulkrabek, No. 31111<br>Address:   Keating Wagner Polidori Free, P.C.<br>         1290 Broadway<br>         Suite 600<br>         Denver, CO  80203<br>Phone No.: (303) 534-0401<br>Fax No.:   (303) 534-8333<br>E-mail:    zwarzel@keatingwagner.com<br>         rpulkrabek@keatingwagner.com | Case No.:<br><br>Div. |

**DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD-PARTY COMPLAINT**

1.  This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case.  It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases.  Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2.  Simplified Procedure under C.R.C.P. 16.1 applies to this case unless (check one box below if this party asserts that C.R.C.P. 16.1 does not apply):

☐ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

1

☒ This party is seeking a monetary judgment against another party for more than $100,000, including any penalties or punitive damages, but excluding attorney fees, interest and costs, as supported by the following certification:

> By my signature below and in compliance with C.R.C.P. 11, based upon information reasonable available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonable believed to exceed $100,000."

**Or**

☐ Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3. ☒ This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

Date:   January 5, 2023.                    **KEATING WAGNER POLIDORI FREE, P.C.**


*s/ Zachary C. Warzel*
Zachary C. Warzel, CO Reg. #36546
Ross W. Pulkrabek, CO Reg. #31111
1290 Broadway, Suite 600
Denver, CO 80203
Tel: (303) 534-0401
Fax: (303) 534-8333
zwarzel@keatingwagner.com
rpulkrabek@keatingwagner.com

*Attorneys for Plaintiff*

2

# EXHIBIT C

| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, STATE OF COLORADO<br>1437 Bannock Street, Room 256<br>Denver, CO 80202<br>Telephone: (720) 865-8301 | DATE FILED: January 5, 2023 3:51 PM<br>FILING ID: 6CCE98C692152<br>CASE NUMBER: 2023CV30043 |
| **Plaintiffs:**<br><br>JEFFREY SABIN, M.D.<br><br>vs.<br><br>**Defendants:**<br><br>THE PAUL REVERE LIFE INSURANCE COMPANY; UNUM GROUP | ▲ COURT USE ONLY ▲ |
| Attorneys for Plaintiff:<br>Zachary Warzel, No. 36546<br>Ross Pulkrabek, No. 31111<br>Address:    Keating Wagner Polidori Free, P.C.<br>                  1290 Broadway<br>                  Suite 600<br>                  Denver, CO 80203<br>Phone No.: (303) 534-0401<br>Fax No.:    (303) 534-8333<br>E-mail:    zwarzel@keatingwagner.com<br>              rpulkrabek@keatingwagner.com | Case Number:<br><br>Division: |

## COMPLAINT & JURY DEMAND

Plaintiff, Jeffrey Sabin, M.D., by and through his attorneys, Zachary Warzel and Ross Pulkrabek of the law firm of Keating Wagner Polidori Free, PC, for his Complaint and Jury Demand, states and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Jeffrey Sabin, M.D., is a citizen of Colorado who currently resides in Jefferson County.  At all times relevant, Dr. Sabin held an enforceable insurance policy

1

underwritten by The Paul Revere Life Insurance Company ("Paul Revere"), which was designed to protect him in the event he became unable to perform the important duties of his occupation.

2.      Defendant Paul Revere is a Massachusetts corporation with its principal place of business located in Massachusetts.  Paul Revere is an operating subsidiary of Unum Group.  Paul Revere, at all times relevant, was authorized to do business in the State of Colorado.

3.      Defendant Unum Group is a Delaware corporation with its principal place of business located in Tennessee.  Unum is the parent company of Paul Revere.  Unum Group administers the disability policy described below and was involved in the handling of Dr. Sabin's claim.  Unum Group, at all times relevant, was authorized to do business in the State of Colorado.

4.      Defendants, at all times relevant, engaged in the business of insurance in the State of Colorado.

5.      Defendants' conduct, as described below, occurred in the State of Colorado.

6.      This Court has personal jurisdiction over Defendants pursuant to Colorado's "long-arm statute," C.R.S. § 13-1-124.

7.      This Court has jurisdiction over the subject matter of this action.

8.      Venue is proper in the county designated in this Complaint pursuant to C.R.C.P. 98(c).  Defendants are nonresidents of this State and Plaintiff designates Denver County as the place of trial for this matter.

## FACTUAL ALLEGATIONS

**Purchase and Terms of the Policy**

9.      Dr. Sabin became an Orthopedic Surgeon, with a specialty in spine surgery, after graduating from medical school in 1983.

10.      On or about April 20, 1994, Dr. Sabin purchased an individual "Preferred Professional Disability Income Policy" from Paul Revere, Policy Number 0102663943 ("the Policy").

11.      The Policy is not subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*

12.      The agent at the time of the sale represented that the Policy would provide Dr. Sabin with full protection if he were ever to become unable to perform surgeries due to injury or sickness.

13.      In exchange for the payment of annual premiums, the Policy extends Dr. Sabin disability coverage.  This coverage is designed to ensure Dr. Sabin will receive guaranteed monthly income in the event he becomes disabled from his occupation as an orthopedic surgeon with a specialty in spine surgery, even if he is able to do other work.  For total disability, the Policy provides "lifetime" coverage; *i.e.,* there is no maximum benefit period and benefits will be paid for so long as Dr. Sabin remains disabled, until his death.

14.      The Policy contains the following pertinent provisions:

## POLICY SCHEDULE

POLICY NUMBER:  0102663943                    DATE OF ISSUE:  APR 20, 1994

INSURED:      JEFFREY J SABIN MD

POLICY OWNER:  THE INSURED

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### TABLE OF ADDITIONAL BENEFITS

| ADDITIONAL BENEFITS ATTACHED | AMOUNT OF BENEFIT | MAXIMUM BENEFIT PERIOD | ANNUAL PREMIUM PRIOR TO AGE 65 |
|---|---|---|---|
| LIFETIME TOTAL DISABILITY (858) | $15,000.00 PER MONTH | LIFETIME | $1,456.50 |
| COST OF LIVING (1104) | 4% - CPI - 4% | -- | $1,051.08 |
| TOTAL DISABILITY IN YOUR OCCUPATION | -- | -- | $581.00 |
| ASSOCIATION DUES BENEFIT (874) | $600.00 PER YEAR | -- | 0.00 |

\* \* \*

4

**PART 1**
**DEFINITIONS**

THE FOLLOWING WORDS HAVE SPECIAL MEANINGS. THEY ARE IMPOR-
TANT IN DESCRIBING YOUR RIGHTS AND OUR RIGHTS UNDER THE POLICY.
REFER BACK TO THESE MEANINGS AS YOU READ YOUR POLICY.

1.1     ″**Policy**″ means the legal contract between You and Us. The policy,
        the application, the Policy Schedule, and any attached papers that
        We call riders, amendments, or endorsements make up the entire
        contract between You and Us.

1.2     ″**You**″ and ″**Your**″ refer to the Insured named in the Policy Schedule.

1.3     ″**We**″, ″**Us**″ and ″**Our**″ refer to The Paul Revere Life Insurance Com-
        pany. Our Home Office is 18 Chestnut Street, Worcester,
        Massachusetts, 01608.

1.4     ″**Date of Issue**″ means the date that the Policy becomes effective. It
        is shown on the Policy Schedule.

1.5     ″**Injury**″ means accidental bodily injury sustained after the Date of Is-
        sue and while Your Policy is in force.

1.6     ″**Sickness**″ means sickness or disease which first manifests itself af-
        ter the Date of Issue and while Your Policy is in force.  It includes
        Disability due to complications of pregnancy or childbirth.  It includes
        Disability due to normal pregnancy or childbirth after You have been
        Disabled for 90 days.

1.7     ″**Physician**″ means any licensed practitioner of the healing arts prac-
        ticing within the scope of his or her license. A Physician must be a
        person other than You.

1.8     ″**Physician's Care**″ means the regular and personal care of a Physi-
        cian which, under prevailing medical standards, is appropriate for the
        condition causing the disability.

1.9     ″**Your Occupation**″ means the occupation or occupations in which You
        are regularly engaged at the time Disability begins.

1.10    ″**Total Disability**″ means that because of Injury or Sickness:

        a.  You are unable to perform the important duties of Your Occu-
            pation; and
        b.  You are receiving Physician's Care. We will waive this re-
            quirement if We receive written proof acceptable to Us that
            further Physician's Care would be of no benefit to You.

5

1.11    **"Residual Disability"**, prior to the Commencement Date, means that due to Injury or Sickness which begins prior to age 65:

    a. (1) You are unable to perform one or more of the important duties of Your Occupation; or
      (2) You are unable to perform the important duties of Your Occupation for more than 80% of the time normally required to perform them; and
    b. You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further care would be of no benefit to You; and
    c. You are not Totally Disabled.

As of the first Commencement Date to occur, Residual Disability means that due to the continuation of that Injury or Sickness:

    a. You incur a Loss of Earnings while You are engaged in Your Occupation or another occupation; and
    b. You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further care would be of no benefit to You; and
    c. You are not Totally Disabled.

Residual Disability must follow right after a period of Total Disability that lasts at least as long as the Qualification Period, if any. This period is shown on the Policy Schedule.

1.12    **"Recovery"** means a period which begins prior to age 65 during which:

    a. You incur a Loss of Earnings which follows Total or Residual Disability which continued at least to the Commencement Date; and
    b. The Loss of Earnings is due to the prior Injury or Sickness which caused the Total or Residual Disability; and
    c. You are working full time in Your Occupation. "Full time" means at least as many hours as You were working before Your Disability began.

1.13    **"Disability"or "Disabled"** refers to continuing periods of Total Disability, Residual Disability and/or Recovery.  Successive periods will be deemed to be continuing if:

    a. Due to the same or related causes; and
    b. Separated by no more than 12 months;

Otherwise such periods will be deemed to be new and separate Disabilities.

1.14    **"Commencement Date"** is the day shown on the Policy Schedule when benefits begin during a Disability.

1.15    **"Maximum Benefit Period"** is the longest period of time for which We will pay benefits during any Disability. It is shown on the Policy Schedule.

We will not pay Residual Disability or Recovery benefits beyond the later of:

    a. Your 65th birthday; or
    b. The date on which 24 months of Disability benefits have been paid.

**PART 2
BENEFITS**

The monthly benefits payable under this Policy are subject to the terms of Part 9 "Claims".

**2.1   TOTAL DISABILITY BENEFIT**

We will periodically pay a Total Disability benefit during Your Total Disability. The monthly amount We will pay is the Maximum Monthly Amount.   It is shown on the Policy Schedule.

This benefit will begin on the Commencement Date. We will continue to pay it while You remain Totally Disabled. But in no event will We pay beyond the Maximum Benefit Period. For periods of less than a month, We will pay 1/30th of the benefit for each day of Total Disability.

**2.2   RESIDUAL DISABILITY BENEFIT**

We will periodically pay a Residual Disability benefit during Your Residual Disability.

The monthly amount We will pay equals:

$$\frac{\text{Loss of Earnings}}{\text{Prior Earnings}} \quad X \quad \text{Maximum Monthly Amount}$$

During any Disability each of the first 6 monthly payments of this benefit will not be less than 50% of the Maximum Monthly Amount.

The benefit will begin on either the Commencement Date or the day after Your Total Disability ends, if later. We will pay this benefit while Your Residual Disability continues, but not beyond the Maximum Benefit Period. For periods of less than a month, We will pay 1/30th of the benefit for each day of Residual Disability.

**"Loss of Earnings"** for any month means Your Prior Earnings minus Your Monthly Earnings for the month for which a benefit is claimed. This difference will be considered Loss of Earnings to the extent it is due to the Injury or Sickness which caused the Disability. The Loss of Earnings must be at least 20% of Prior Earnings.

If the Loss of Earnings for any month is 75% or more of Prior Earnings, We will deem the loss to be 100% of Prior Earnings.

**"Prior Earnings"** means the greater of:

    a.   Your average Monthly Earnings for the year just before Your Disability began; or
    b.   Your highest average Monthly Earnings for any 2 successive years during the 5 year period just before Your Disability began.

Starting as of the first Review Date, We will make an inflation adjustment to Your Prior Earnings.   We will multiply Your Prior Earnings by the CPI Factor. The result will be used until the next Review Date to compute Residual Disability benefit amounts payable.   However, the inflation adjustment increase will be at least 7% of Your Prior Earnings amount.

The inflation adjustment will not apply once the Disability ends.   But it will apply to recurrent Disability deemed continuing under the Recurrent Disability section of Your Policy.

7

**"CPI"** means the Consumer Price Index for All Urban Consumers. It is published by the United States Department of Labor. If this index is discontinued or if the method for computing it is materially changed, We may choose another index. We will choose an index which in Our opinion would most accurately reflect the rate of change in the cost of living in the United States. CPI will then mean the index We chose.

**"Review Date"** means the date that occurs:

      a.  After each successive 12 months of Disability; and
      b.  While Your Disability continues.

No Review Date will occur on or after Your 65th birthday.

**"Index Month"** means the calendar month four months prior to the calendar month in which a Review Date occurs. But the first Index Month for any Disability will be the calendar month 4 months prior to the month in which Your Disability began.

**"CPI Change"** means the result of a computation We will make as of each Review Date. We will divide the CPI for the most recent Index Month by the CPI for the Index Month prior to the most recent Index Month.

**"CPI Factor"** means the result of the CPI Change as of the current Review Date multiplied by the CPI Change for each prior Review Date occurring since the Disability began. The CPI Factor as of the first Review Date will equal the CPI Change as of that Review Date. A CPI Factor is determined as of each Review Date while Disability continues.

**"Monthly Earnings"** means Your salary, wages, commissions, bonuses, fees, and income earned for services performed. If You own any portion of a business or profession, it means:

      a.  Your share of the income earned by that business or profession;
      b.  Less Your share of business expenses which are deductible for Federal income tax purposes;
      c.  Plus Your salary and any contributions to a pension or profit sharing plan made on Your behalf.

Monthly Earnings does not include:

      a.  Income from deferred compensation plans, disability income policies, or retirement plans; or
      b.  Income not derived from Your vocational activities.

We will allow either the cash or accrual accounting method. But during a Disability the same method must be used when determining Loss of Earnings.

* * *

8

**5.1    WAIVER OF PREMIUM**

After You have been Disabled for 90 days, We will waive any premium that becomes due while You remain Disabled. Your Policy and its benefits will continue as if the premium had been paid.

We will also refund any premium paid that became due during those first 90 days of Disability.

When You are no longer eligible for Waiver of Premium, You can continue Your Policy in force by paying the next premium that becomes due.

Waiver of Premium will not apply to any premiums which become due after You elect the RENEWAL OPTION IF NOT EMPLOYED. HOSPITAL CONFINE-MENT INDEMNITY BENEFIT in PART 8.

### LIFETIME TOTAL DISABILITY BENEFIT RIDER

This rider provides a Lifetime Total Disability benefit.

**LIFETIME BENEFIT AFTER AGE 65**

We will pay this benefit during Your continuous Total Disability if:

1. The Total Disability begins before age 65; and
2. The Total Disability continues until age 65; and
3. The benefits under the Policy to which this rider is added have been paid during Your Total Disability.

This benefit will start to pay on the later of: (a) Your 65th birthday; or (b) the date the Total Disability benefit payable under Your Policy ends. We will pay it while You remain Totally Disabled for as long as You live.

**FOR INJURY**

For Total Disability due to Injury, the monthly amount We will pay will be the amount shown on the Policy Schedule.  Any Cost of Living benefit rider added to Your Policy shall apply to this amount.

**FOR SICKNESS**

For Total Disability due to Sickness, the monthly amount We will pay will be based on the amount shown on the Policy Schedule. Any Cost of Living benefit rider added to Your Policy shall apply to this amount. The amount shown on the Policy Schedule plus any Cost of Living in-crease that applies to this rider shall be multiplied by a factor. The factor to be used will be based on Your age at the start of Total Disa-bility which continues until age 65.

#### Factors by age for Total Disability due to Sickness

| | |
|---|---|
| 1.0 for 55 or less | .5 for 60 |
| .9 for 56 | .4 for 61 |
| .8 for 57 | .3 for 62 |
| .7 for 58 | .2 for 63 |
| .6 for 59 | .1 for 64 |

If a larger amount is payable under this Policy for the same period, the larger benefit will be payable in lieu of this benefit.

**GENERAL**

This rider will end:

1. At the same time the Policy ends; or
2. On Your 65th birthday,

whichever happens first.

All definitions in Your Policy apply to this rider. All provisions of Your Policy stay the same except where We change them by this rider.

The annual premium for this rider is shown on the Policy Schedule.

The Date of Issue of this rider is the same as that of Your Policy. If We issued this rider after Your Policy, the Date of Issue is shown below.

15.     At the time Dr. Sabin purchased the Policy in 1994, he was a practicing orthopedic surgeon with a specialty in spine surgery.  The application for the Policy indicates that his Occupation is "Orthopedic Surgeon – Spine spec." and lists his "Exact Duties" as "Surgery of the spine / surgical spine fellowship – 1 year Univ. of CO."

16.     Dr. Sabin signed the application for the Policy on Page 2, acknowledging and agreeing to the following:

> I have read the statements and answers recorded above. They are to the best of my knowledge and belief, true and complete and correctly recorded. They will become part of this Application and the basis for any policy issued on it.

17.     Dr. Sabin continued in his occupation as an orthopedic surgeon specializing in spine surgery until his vision suddenly was damaged and he was rendered unable to continue performing surgeries in 2020.

18.     Before Dr. Sabin's vision was damaged, the reputation and qualifications that he had developed over many years as a practicing orthopedic surgeon specializing in spinal surgery led lawyers to retain him as an expert witness in litigation.  Dr. Sabin's acceptance of expert witness engagements was separate and apart from his normal clinical practice, with much of the work conducted after hours, at home, and on the weekends, and did not involve the treatment of patients.

**Onset of Dr. Sabin's Total Disability**

19.     On April 20, 2020, Dr. Sabin saw his ophthalmologist, Todd Maus, M.D., because of a sudden significant eye infection he developed during a trip to Arizona.

20.     Due to the infection, the pressures in Dr. Sabin's eyes became excessive.

21.     Eye drops, antibiotics, and oral medications were ineffective.

22.     As a result of the infection, Dr. Sabin ultimately underwent six separate surgical procedures in 2020 and 2021 to address the pressures, the resulting development of cataracts, and damage to nerve receptors in his eyes.

23.     While the pressures in his eyes have now normalized after extensive treatment, Dr. Sabin's vision was severely and permanently damaged.  He is no longer able to utilize fine sutures, fine forceps and pickups, he experiences photophobia, he has trouble judging depth perception, and has significantly decreased peripheral vision.

24.     On or around July 9, 2020, as a result of the damage to Dr. Sabin's vision, he was forced to stop performing surgeries so as not to endanger patients.

25.     Dr. Sabin, for a time, continued to see patients in an office setting, but was forced to refer patients to spine surgeons in other practices as needed.

26.     Due to his inability to perform surgery, Dr. Sabin was forced to close his clinical practice entirely on May 27, 2021, and can no longer treat patients even in an office-visit setting.

27.     Dr. Sabin no longer treats patients as a result of the damage to his vision.

28.     For now, Dr. Sabin continues to accept engagements for expert witness consulting in the legal setting. However, in addition to the fact that Dr. Sabin never intended that his occupation be an expert witness detached from any ability to practice medicine, it is anticipated that requests that he serve as an expert witness will diminish and ultimately stop in the future due to his inability to perform spinal surgery and treat patients.

**Dr. Sabin's Disability Claim**

29.     Dr. Sabin submitted a total disability claim under the Policy in October 2020.

30.     Dr. Sabin's eye doctor, Dr. Maus, submitted an attending physician statement to Defendants confirming Dr. Sabin's diagnosis and his inability to perform surgery.

31.     On January 6, 2021, Defendants wrote to Dr. Sabin agreeing that he was no longer able to perform surgery and agreeing that his "occupation is that of a self-employed orthopedic spine surgeon."

32.     Also on January 6, 2021, however, Defendants concluded that Dr. Sabin was not totally disabled because, "Although surgery is considered an important duty of your occupation at the time your disability began, the medical / legal reviews you perform in your occupation are also considered to be an important duty of your occupation."

33.     Defendants thus concluded that Dr. Sabin may be "residually disabled," but not "totally disabled" under the terms of the Policy.  Notably, "residual disability" under the Policy has a 24-month maximum benefit period.

34.     Dr. Sabin responded to the January 6th letter on January 10, 2021, explaining that his expert witness work was not an important duty of his occupation as a surgeon.

35.     On February 5, 2021, Defendants responded and asked for earnings, profit and loss, and tax information from prior to the onset of Dr. Sabin's disability.

36.     On February 12, 2021, Defendants reiterated their determination that Dr. Sabin was not totally disabled because he continues to perform expert legal reviews.  Defendants based their decision on an analysis of "Current Procedural Terminology" ("CPT") medical billing/production information preceding the onset of Dr. Sabin's disability to conclude that the main services he performed and billed for were surgical procedures (42%) and expert legal reviews (37%).

37.     This analysis completely disregarded the aspect of Dr. Sabin's surgical practice involving examination and treatment of patients in an office setting.

38.     This analysis of CPT billing and financial information is not the methodology or standard provided by the Policy for determining total disability.

39.     Dr. Sabin submitted a formal request for reconsideration through his attorney on April 23, 2021, explaining that the Policy covers Dr. Sabin's disability from his job as an orthopedic spine surgeon as stated in the Policy's application (which is incorporated into the Policy by reference and forms the basis for the Policy's issuance), and that it is obvious that a spine surgeon who can no longer perform surgery cannot do his job.  The letter also submitted statements from attorneys in the community concerning the likely demise of Dr. Sabin's expert witness side work.

40.     Defendants responded on May 17, 2021, upholding their prior decision that Dr. Sabin is not totally disabled from his occupation, and concluding, again, that his expert witness work is an important duty of his occupation as a spine surgeon.

41.     Defendants' determination that Dr. Sabin is not totally disabled was contrary to the Policy, contrary to Colorado law, and unreasonable.

42.     The Policy's definition of "Total Disability" is ambiguous and must be construed in favor of the insured under Colorado law.  The Policy, as written, does not require that the insured must be unable to perform "each and every" duty of his occupation in order to be considered totally disabled.

43.     Defendants' insistence that Dr. Sabin's acceptance of expert witness engagements was an important part of his occupation as a spine surgeon, and that his ability to continue doing

so precluded a finding of total disability, was a deliberate distortion intended to diminish the extent of his impairment and exaggerate his ability to do his job – thus allowing Defendants to severely limit the coverage provided by the Policy by categorizing Dr. Sabin as "residually disabled" and subjecting the claim to a 24-month maximum benefit period.

44.     Defendants knew, or should have known, that their definition "Total Disability" is ambiguous, and that such distorted parsing of an insured's "Occupation" is unreasonable, contrary to industry standards, and has been rejected by courts around the country. *See, e.g., Leonor v. Provident Life & Acc. Co., Paul Revere Life Ins. Co.*, 790 F.3d 682 (6th Cir. 2015) (finding identical definition of "Total Disability" to be ambiguous; insured dentist was totally disabled because injury prevented him from performing dental procedures, despite fact that insured continued to manage other businesses that he owned and income increased after onset of disability); *Smith v. Provident Life & Accident Ins. Co.*, No. 3:17-cv-104-MCR-MJF, 2018 U.S. Dist. LEXIS 245868, at *24 (N.D. Fla. Sep. 28, 2018) (finding it unreasonable for insurer to focus on billing information while ignoring the reality of doctor's practice and the type of surgical procedures he was capable of performing, and stating, "When an insured is no longer able to perform an activity that is 'at the core of his occupation,' he is totally disabled even if he can still perform other duties of his job that had been more lucrative.").

45.     All conditions precedent to Dr. Sabin's receipt of benefits under the Policy have been satisfied.

46.     Alternatively, Defendants' unreasonable conduct and breaches of contract have excused Dr. Sabin's compliance with the terms of the Policy.

47.     Since Defendants denied total disability benefits on January 6, 2021, Dr. Sabin has not performed any surgeries.  He was forced to cease seeing patients entirely, even in an office setting, on or about May 27, 2021.

48.     All available evidence from Dr. Sabin's treatment providers indicates that he will never again be able to perform the important duties of his occupation as an orthopedic surgeon specializing in spine surgery.

49.     As a direct and proximate result of Defendants' unwarranted and unreasonable denial of Dr. Sabin's total disability claim, Dr. Sabin has lost, and continues to lose, significant monthly income to which he is entitled.

50.     As set forth above, Defendants' failure and/or refusal to pay Dr. Sabin total disability benefits to which he is entitled is ongoing.  Absent an Order of this Court requiring Defendants to fulfill their obligations under the Policy, Defendants will continue to refuse to pay Dr. Sabin future total disability benefits to which he is entitled.

51.     As set forth above, Dr. Sabin's relationship with Defendants is so irreparably damaged that Dr. Sabin should not be forced to deal with Defendants in the future in an attempt to collect the total disability benefits to which he is entitled.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract against Paul Revere)

52.     Each and every allegation set forth in this Complaint is herein incorporated by reference.

53.     The Policy discussed above is a contract of insurance.

54.     The Policy was in full force and effect, with all premiums paid to date, at the time Dr. Sabin's total disability began and when the claim was submitted.

55.     Paul Revere breached the above-discussed contract by denying and/or delaying the total disability benefits due to Dr. Sabin.

56.     As a direct and proximate result of Paul Revere's breach of contract, Dr. Sabin has suffered damages in amounts to be proved at trial.

**SECOND CLAIM FOR RELIEF**
**(Bad Faith Breach of Insurance Contract**
**Against Paul Revere and Unum)**

57.     Each and every allegation set forth in this Complaint is herein incorporated by reference.

58.     At all times relevant, Dr. Sabin held an enforceable contract for disability insurance issued by Paul Revere and administered by Unum.  This contract is herein referred to as the Policy.

59.     The Defendants owed Dr. Sabin a duty of good faith and fair dealing.

60.     Defendants breached their duty of good faith and fair dealing to Dr. Sabin by rendering an unwarranted and unreasonable disability determination and refusing to pay Dr. Sabin the total disability benefits to which he was and is entitled.

61.     That Defendants' disability determination was undertaken in bad faith is evidenced by the following facts, actions, and/or omissions:

a.     Defendants' knowing use of an ambiguous definition of "Total Disability" and deliberate interpretation of that definition in a manner that deprived Dr. Sabin of the benefits he was due;

b.     Defendants' refusal to pay Dr. Sabin's claim without conducting a reasonable investigation based upon all information;

      c.      Defendants' reliance on biased, incorrect, and/or self-serving information and opinions;

      d.      Defendants' insistence on reaching conclusions that run counter to the weight of the evidence;

      e.      Defendants' reliance on standards for disability and benefits eligibility which find no support in the Policy;

      f.      Defendants' failure to promptly pay Dr. Sabin's total disability benefits without a reasonable basis;

      g.      Defendants' decision to deprive Dr. Sabin of the benefits and protections of the Policy;

      h.      Defendants' decision to place their own interests above those of the insured;

      i.      Defendants' decision to engage in conduct prohibited by C.R.S. §§ 10-1-101 and 10-3-1104(1)(h); and

      j.      other conduct to be discovered in the course of these proceedings.

62.      Defendants knew that their conduct was unreasonable or recklessly disregarded the fact that their conduct was unreasonable.

63.      As a direct and proximate result of Defendants' bad faith breach of contract, Dr. Sabin has suffered, and will continue to suffer, injuries, damages, and losses.

**<u>THIRD CLAIM FOR RELIEF</u>**
**(Violation of C.R.S. § 10-3-1115 against Paul Revere and Unum)**

64.      Each and every allegation set forth in this Complaint is herein incorporated by reference.

65.     Pursuant to C.R.S. §§ 10-3-1115 and -1116, a person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first party claimant.

66.     Defendants are engaged in the business of insurance in the State of Colorado.

67.     Dr. Sabin is a first party claimant.

68.     Defendants may not unreasonably delay or deny payment to Dr. Sabin of total disability benefits owed under the Policy.

69.     Defendants have failed to pay Dr. Sabin the total disability benefits owed under the Policy.

70.     Defendants' failure to pay Dr. Sabin total disability benefits owed under the Policy is ongoing.

71.     Defendants lack a reasonable basis for their failure to pay Dr. Sabin past and/or future total disability benefits owed under the Policy.

72.     Defendants' unreasonable delay and denial of benefits constitutes one or more violations of C.R.S. §§ 10-3-1115 and -1116.

73.     Defendants' statutory violations have caused Dr. Sabin to suffer, and to continue to suffer, injuries, damages, and losses.

74.     Pursuant to C.R.S. § 10-3-1116, Dr. Sabin is entitled to recover reasonable attorneys' fees, costs, and two times the covered benefit unreasonably delayed and/or denied by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jeffrey Sabin, M.D., respectfully requests this Court enter judgment in his favor and against Defendants The Paul Revere Life Insurance Company and Unum Group for all damages he has sustained as a result of Defendants' unlawful actions and omissions, as described herein, including:

(A)     economic damages equal to the amount of total disability benefits owed to Plaintiff to the date of judgment;

(B)     statutory damages equal to two times the amount of total disability benefits owed to Plaintiff to the date of judgment;

(C)     economic damages equal to the amount of future total disability benefits owed to Plaintiff to his anticipated life expectancy of 83 years, reduced to present value, or, alternatively, placement on claim for receipt of ongoing total disability benefits from the date of judgment going forward;

(E)     non-economic damages in an amount to compensate Plaintiff for the aggravation, stress, worry, and fear caused by Defendants' bad faith conduct;

(F)     attorneys' fees and costs, as permitted by C.R.S. § 10-3-1116;

(G)     the costs of bringing this action, including expert witness fees;

(H)     pre- and post-judgment interest, statutory or moratory; and

(I)     any other such relief as this Court may deem just and proper.

### PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES.

19

Respectfully submitted this 5th day of January 2023.

KEATING WAGNER POLIDORI FREE, P.C.

By:     _s/ Zachary C. Warzel_____
           Zachary C. Warzel, CO Reg. #36546
           Ross W. Pulkrabek, CO Reg. #31111
           1290 Broadway, Suite 600
           Denver, CO 80203
           Tel: (303) 534-0401
           Fax: (303) 534-8333
           zwarzel@keatingwagner.com
           rpulkrabek@keatingwagner.com

           *Attorneys for Plaintiff*

Plaintiff's Address:
2 White Fir Court
Littleton, CO 80127

# EXHIBIT D

| | |
|---|---|
| **DISTRICT COURT**<br>**CITY & COUNTY OF DENVER, COLORADO**<br>1437 Bannock Street, Room 256<br>Denver, Colorado 80202 | DATE FILED: January 5, 2023 4:24 PM<br>CASE NUMBER: 2023CV30043 |
| **Plaintiff**: JEFFREY SABIN, MD<br><br>v.<br><br>**Defendant:** UNUM GROUP et al. | **Case Number:** 2023CV30043<br><br>**Courtroom:** 209 |
| **DELAY REDUCTION ORDER** | |

All civil courtrooms are on a delay reduction docket.

**IF AN ATTORNEY OR PRO-SE PARTY FAILS TO COMPLY WITH THIS ORDER, THE COURT MAY DISMISS THE CASE WITHOUT PREJUDICE.  THIS ORDER IS THE INITIAL NOTICE REQUIRED BY C.R.C.P 121 § 1-10, AND C.R.C.P. 41(B)(2).**

A.     In all civil actions, the following deadlines must be met:

1.     **Service of Process:**  Proof of service of process under C.R.C.P. 4 for all defendants must be filed within **63 days** after filing the complaint. After **63 days**, the Court may dismiss the action against any defendant for whom proof of service has not been filed.

2.     **Default:**  Motions for judgment must be filed within **14 days** after default has occurred and must comply with C.R.C.P. 121 § 1-14.  Reasonable inquiry regarding a person's military status requires confirmation through the Department of Defense's Servicemembers Civil Relief Act website (https://scra.dmdc.osd.mil) or equivalent confirmation.

3.     **Trial Setting:**  The Responsible Attorney, as defined in C.R.C.P. 16(b)(2), must file and serve a Notice to Set the case for trial and complete the trial setting no later than **14 days** from the date the case is at issue.  Counsel may call the courtroom to set trials only on Tuesdays, Wednesdays, and Thursdays from 10:00 a.m. until noon.

4. **Continuances:** Continuances of trials are disfavored, and continuances of trial are even less likely to be granted if the trial cannot be reset within a year of the filing date of the action. Accordingly, if you schedule your trial toward the end of the one-year period, you should assume that you will not be able to obtain a continuance of the trial.

5. **Cases filed under C.R.C.P. 16:**

   a) **Case Management Conference:**  The notice to set trial must also include a notice to set a Case Management Conference to be held no later than **49 days** after the case is at issue.  Counsel may call the courtroom to set case management conferences only on Tuesdays, Wednesdays, and Thursdays from 10:00 a.m. until noon.

   b) **Proposed Case Management Order:**  At least **7 days** before the Case Management Conference, the parties must file a proposed Case Management Order.

   c) **Waiver of Case Management Conference:**   If all parties are represented by counsel, a joint request to waive the case management conference may be included in the proposed Case Management Order.  Unless such a request has been granted, counsel must appear for the case management conference.

6. **Cases filed under C.R.C.P. 16.1:**

   **Certificate of Compliance:**  Not later than **49 days** after the case is at issue, the Plaintiff (or the Responsible Attorney) must file a Certificate of Compliance as required under C.R.C.P. 16.1(h).  No Case Management Order or Case Management Conference is required.

B.   Additionally, in all civil actions, the following provisions apply:

   1. **Service of this Order:**  The Plaintiff or Responsible Attorney must send a copy of this Order to all other parties who enter their appearance.

   2. **Related Cases:**  An attorney entering an appearance in this case who is aware of a related case is ordered to complete and file in this case an Information Regarding Related Case(s) form, available in Room 256 of the City and County Building or online at:

https://www.courts.state.co.us/userfiles/file/Information_Regarding_Related_Cases_Form(1).doc

Date: January 5, 2023

BY THE COURT:

Alex C. Myers
District Court Judge

# EXHIBIT E

<table>
<tr><td>

DISTRICT COURT OF THE 2ND JUDICIAL DISTRICT,
DENVER COUNTY, COLORADO

1437 Bannock Street
Denver, CO 80202
(303) 606-2300

</td><td>

DATE FILED: January 5, 2023 4:27 PM
CASE NUMBER: 2023CV30043

</td></tr>
</table>

**Plaintiff:** JEFFREY SABIN, MD

v.

**Defendant(s):** UNUM GROUP et al.

▲COURT USE ONLY▲

**Case Number:** 2023CV30043

**Division:** 209

## PRE-TRIAL ORDER

## A.    ALTERNATIVE DISPUTE RESOLUTION

The Court will not issue a separate ADR order at this time, but parties may contact the Court Clerk at any time if they wish to have an ADR order entered, provided all parties or counsel for the parties are included in the communication.

## B.    DUTY TO CONFER[1]

Colo. R. Civ. P. 121 § 1-15(8) states that "moving counsel and any self-represented party shall confer with opposing counsel and any self-represented parties before filing a motion." Rule 121 § 1-15(8) requires the parties to identify and attempt to resolve emerging issues before engaging in motions practice. The duty to confer requires counsel to confer in good faith either by telephone, in person, email, or in writing with any party who might potentially oppose the relief requested. A single unanswered email or phone call is insufficient to comply with the rule. The Court expects the parties to have made (or at least attempted) follow-up in their conferral. (E.g., if a voicemail is left, it must be followed by a second attempt to confer in the form of an additional telephone call or voicemail).

The word "shall" in Rule 121 § 1-15(8) is a mandatory requirement. Before filing a motion, the moving party must confer with any potentially opposing party, as detailed above. "If no conference has occurred, the reason why, including all efforts to confer, shall be stated." The reason why no conference has occurred must be explained in substantive detail, and a lack of conferral with be excused only under unusual or extraordinary circumstances. On one end of the spectrum, it will not be acceptable for the moving party to make a single phone call, leave a voicemail requesting conferral, and submit a corresponding motion shortly thereafter without the

---

[1] The Court finds Colorado District Court Judges Frederick Gannett and Juan Villasenor and United States District Court Magistrate Judge Boland's interpretation of the conferral requirement persuasive and attributes the following discussion to them.

required conferral. On the other hand, the Court will not allow a moving party to be hamstrung by an opposing party if the moving party has made numerous attempts to confer by leaving messages and there is no timely return communication. The Court will evaluate whether parties have satisfied the duty to confer on a case-by-case basis.

The Court also reads Rule 121 § 1-15(8) as applying to *pro se* parties in the same manner as it applies to any attorney entering an appearance before the Court.

## C.    MOTIONS

1. DO NOT, UNDER ANY CIRCUMSTANCES, COMBINE PLEADINGS (i.e., Defendant's Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment). IF YOU DO, YOUR PLEADING MAY BE STRICKEN *SUA SPONTE.*

2. Plan ahead as "forthwith" motions are discouraged. Due to the electronic filing system, filings are not received by this division at the same time they are filed. If the filing is an emergency and needs immediate attention from the Court, please contact the courtroom clerk and alert them of the filing. However, please note that your emergency may not be considered the Court's emergency.

3. The Court interprets C.R.C.P. 121, § 1-15 to require the moving party to give the non-moving party(s) at least two business days to respond before the moving party files the motion.

4. The parties shall comply with the formatting requirements of C.R.C.P. 10 for every motion.

5. A motion will be followed by a response, and a reply unless this Court has eliminated a reply or other pleading pursuant to C.R.C.P. 121. No other pleadings relating to a given motion will be accepted for filing unless court order permits.

6. The requirements of C.R.C.P. 121 § 1-15 concerning the content of briefs will be strictly enforced. **Except as otherwise outlined in this order, all motions and briefs are limited to 10 pages in length.** Should a party wish to exceed the Court's limit, the party shall seek court approval before filing the motion.

7. The requirements of C.R.C.P. 121 § 1-15 concerning the time for filing motions will be strictly enforced. Extensions of the deadlines are strongly discouraged because they make it unlikely that the motions will be ruled on in advance of trial. The Court may, if appropriate, expedite the briefing schedule.

8. Once motions are at issue, they will be ruled upon as the Court's docket permits, usually without a hearing. Motions hearings will be set so as not to interfere with the conduct of other trials.

| MOTIONS FOR SUMMARY JUDGMENT (C.R.C.P. 56) |
|---|

9. **Summary Judgment Motions pursuant to C.R.C.P. 56 shall be filed at least 91 days (13 weeks) before trial.**

a. Motion, Page Limits, and Exhibits
This deadline and these procedures contemplate filing a single motion for summary judgment by a party. This deadline applies to any motion under C.R.C.P. 56, even if designated as a cross-motion for summary judgment or motion for determining a question of law. The page limits outlined in C.R.C.P. 121 § 1-15(1)(a) apply. However, the case caption, signature block, certificate of service, and attachments will not count toward the page limit.

b. Exhibits
Exhibits attached to a motion for summary judgment, a response in opposition or a reply must follow the following format. Defendant must label his/her/its exhibits by letters: A, B, C, etc. If Defendant needs to attach more than 26 exhibits, Defendant may instead number his/her/its exhibits starting at 501, 502, 503, etc. Plaintiff must designate his/her/its exhibits by numbers: 1, 2, 3, 4, etc.

When filing any exhibits in support of, or opposition to, a motion, the party must label the exhibit and include its title so that the description appears in the register of actions. For example: "Ex. A, John Smith Decl." "Ex. 3, Sales Contract." "Ex. F, Plaintiff Depo."

Voluminous exhibits are discouraged on summary judgment.

c. Motion Format
*Facts Section.* The moving party must use the following format: the movant must create a section of the motion titled "Statement of Undisputed Material Facts" and must set forth in simple, declarative sentences, separately numbered and paragraphed, each material fact which the movant believes is not in dispute and which supports movant's claim that movant is entitled to judgment as a matter of law. The movant must avoid adding unnecessary adjectives or adverbs to his or her material facts. In general, the Court finds such descriptors vague and unhelpful to adjudicate summary judgment motions.

Each separately numbered and paragraphed fact must be accompanied by a specific reference to material in the record which establishes that fact. General references to pleadings, depositions, or documents are insufficient if the document is over one page in length. A "specific reference" means the title of the document (e.g., "Exhibit A, Pl. Depo.") and a specific paragraph or page and line number; or, if the document is attached to the motion, the paragraph or page and line number.

*Legal Argument Section.* For each claim for relief or defense as to which judgment is requested, the motion must: (a) identify which party has the burden of proof; (b) identify each element that must be proved; (c) for each identified element, identify the material undisputed facts that prove that element and the pinpoint location in the filed record; or

(d) if the respondent has the burden of proof, identify the elements which the movant contends the respondent cannot prove (with reference to the record).

d.  Response Format

***Facts Section.*** Any party opposing the motion for summary judgment must create a section of the response titled "Response to Statement of Undisputed Material Facts," and must respond by deeming the facts "undisputed," "disputed," or "undisputed for purposes of summary judgment." Each response must be made in separate paragraphs numbered to correspond to movant's paragraph numbering. A "disputed" response must address the fact as tendered by the movant, not a fact that the non-movant wishes had been tendered. Proper responses to a "disputed" fact should be limited to an argument that (1) the particular parts of materials in the record don't establish the absence or presence of a genuine dispute; or (2) the movant cannot produce admissible evidence to support the fact. The response must be accompanied by a brief factual explanation to support the dispute.

**If the non-movant fails to properly address the other party's assertion of fact as required here, the Court generally will consider the fact undisputed for purposes of the motion.**

If the party opposing the motion believes that there are additional disputed (or undisputed) facts which it has not adequately addressed in the submissions made in the facts section, the party must create a separate section of the response titled "Statement of Additional Disputed (or Undisputed) Facts," and must set forth in simple, declarative sentences, separately numbered and paragraphed, each additional material undisputed/disputed fact which undercuts movant's claim that it is entitled to judgment as a matter of law. Each separately numbered and paragraphed fact must be accompanied by a specific reference to material in the record which establishes the fact or at least demonstrates that it is disputed/undisputed.

***Legal Argument Section.*** The response must utilize the same format for each claim/defense as set forth above: (a) if the respondent disputes the statement of the burden of proof on necessary elements, it must identify such as disputed and must provide supporting legal authority. (b) If the movant has the burden of proof, the respondent must identify all elements for which there are disputed material facts, as well as provide a brief explanation of the reason(s) for the dispute and specific references to supportive evidence in the record appendix. Stipulation to facts not reasonably in dispute is highly encouraged. (c) If the respondent has the burden of proof, for each element identified by the movant as lacking proof, the respondent should identify the facts and their location in the record that establish that element.

e.  Reply Format

***Facts Section.*** At the beginning of the reply, the movant must list the facts that are undisputed and disputed by their respective paragraph number.

The movant must create a section titled "Reply Concerning Undisputed Facts" and must include any **factual** reply regarding the facts asserted in its motion to be undisputed, supported by specific references to material in the record. The reply will be made in

separate paragraphs numbered according to the motion and the opposing party's response.

The movant must create a section titled "Response Concerning Disputed Facts" to respond to those facts claimed to be in dispute, and either admit that the fact is disputed or supply a brief factual explanation for its position that the fact is undisputed, accompanied by a specific reference to material in the record which establishes that the fact is undisputed. The movant's response to undisputed fact must be done in paragraphs numbered to correspond with the opposing party's paragraph numbering.

***Legal Argument Section.*** The movant must respond to the legal arguments made by the respondent and must not raise new issues.

Finally, legal argument is not permitted in the factual sections of the motion/response/reply and should be reserved for the legal argument section(s) of the documents. If, for example, a party believes that an established fact is immaterial, that argument must go in the legal argument section, and the fact should be admitted. If, on the other hand, a party believes that the reference to material in the record does not support the claimed fact, that fact may be disputed accompanied by a brief *factual* argument made under these procedures.

## MOTIONS – EXPERT TESTIMONY

10. **Motions challenging expert testimony pursuant to C.R.E. 702 must be filed at least 70 days (10 weeks) before trial unless a different time is permitted by court order.** C.R.C.P. 16(c). Motions shall include the following: (1) identification of the expert witness and separately state each opinion/testimony the moving party seeks to exclude; (2) a response for each opinion/testimony with the specific foundational challenge made to the opinion/testimony, e.g., relevancy, sufficiency of facts and data, methodology. C.R.E. 702 and 703; and, (3) indication of whether an evidentiary hearing is requested, explain why such a hearing is necessary, and specify the time needed for the evidentiary hearing (assuming time is divided equally between the parties).

The Court in its discretion may set a hearing to determine the admissibility of the challenged opinions under the Colorado Rules of Evidence.

## MOTIONS IN LIMINE

11. **Motions *in limine* shall not exceed 5 pages and must be filed at least 35 days prior to trial unless a different time is permitted by court order.** C.R.C.P. 16(c). Responses shall be filed no more than **7 days** after the motion is filed, unless a different time is permitted by court order. No replies shall be allowed.

| **OTHER PRETRIAL MOTIONS** |
|---|

12. **Other pretrial motions must be filed at least 42 days before trial unless a different time is permitted by court order.** Responses shall be filed **14 days** after the filing of the motion unless a different time is permitted by court order. No replies shall be allowed.

## D.   DISCOVERY

1. Failure to disclose or insufficient/untimely disclosure of any document, exhibit or opinion is undertaken at your own risk. Similarly, delaying discovery until the eve of deadlines and/or trial is undertaken at your own risk. Do not procrastinate in the preparation of your case.

2. **NO WRITTEN DISCOVERY MOTIONS WILL BE ACCEPTED.** The Court will address *ALL* discovery disputes with a discovery hearing (in-person) instead of by formal written motions. A "discovery dispute" means a disagreement involving issues arising under C.R.C.P. 16, 16.1, 26, 30, 31, 33, 34, 35, 36, 37, and 45. The purpose of this procedure is to ensure an expedited and inexpensive resolution of discovery disputes. The following procedures will be in effect in this case:

   a. If there is a discovery dispute, counsel are expected to confer in a meaningful way to try to resolve it. This means in writing, by telephone or in person. An exchange of emails is not sufficient.

   b. If counsel cannot resolve the dispute, they shall contact one of the clerks for this court during setting times (Tuesday, Wednesday & Thursday from 10 am – 12 noon) at 303-606-2393. If counsel cannot agree on a date the Court will set the hearing date.

   c. The dispute will be argued and resolved at the hearing, or taken under advisement with a prompt ruling by the Court. The parties shall file a one-page, concise identification of the discovery issues in dispute (with citations) and provide a copy of any legal authority that might be helpful to the Court, at least 2 days before the hearing. The discovery issues shall be laid out clearly and explain the legal and factual justifications for an objection. This shall be done in lieu of filing a written motion and response. DO NOT file any written motion, attachments, etc. unless the Court requests it.

   d. If a dispute occurs during a deposition, please call the clerk of this courtroom at the above number and advise them about the nature of the dispute. The Court will address the dispute as quickly as possible, based upon the Court's availability.

## E.   EXPERTS

1. Disclosure of expert opinions must comply with C.R.C.P. 26(a)(2). As set out in Comment 21 to C.R.C.P. 26, detailed expert disclosures "facilitate the trial, avoid delays, and enhance the prospect for settlement."

2. Retained Experts shall be limited to testifying on direct examination about matters disclosed in reasonable detail in the written expert disclosures.

3.  For non-retained experts (including treatment providers), the Court strictly construes the requirement in C.R.C.P. 26(a)(2)(b)(ii)(a). Non-retained expert disclosures must include "a complete description of all opinions to be expressed and the basis and reasons therefor." This is required regardless of whether the expert's opinions formed during treatment are stated in a party's medical records. A boilerplate statement that the treatment provider "will testify about the plaintiff's medical records and their impact on the plaintiff's treatment" does not meet this requirement.

4.  Disputes over the adequacy of expert disclosures should be raised at the time of disclosure.

## F.      CASE MANAGEMENT ORDER

1.  The recently amended provisions of C.R.C.P. 16 and 16.1 concerning presumptive and modified case management orders will apply.

2.  At the same time as the Notice to Set Trial is filed, the Responsible Attorney shall file a notice to set a Case Management Conference as required in C.R.C.P. 16(d)(1), to be held no later than 49 days after the case is at issue, and shall provide notice of the conference to all parties.

3.  Not later than 42 days after the case is at issue and at least 7 days before the Case Management Conference, the parties shall file, in editable format, a proposed Case Management Order consisting of the matters set forth in C.R.C.P. 16(b)(1)-(17) and take all necessary actions to comply with those subsections.

4.  If all parties are represented by counsel, no later than 35 days after the case is at issue, counsel may file a proposed Case Management Order in compliance with C.R.C.P. 16(b) and may jointly request the Court to dispense with a Case Management Conference.

5.  If the parties cannot agree on a modified case management order, they shall submit a draft order identifying the areas of disagreement. The Court will decide the disputed matters and will issue a Case Management Order promptly.

6.  The parties shall contact the clerk of this court at (303) 606-2393 during setting times (Tuesday, Wednesday & Thursday from 10 am – 12 noon) to schedule a case management conference if they think one will be helpful.

7.  Cases Filed Under C.R.C.P. 16.1: Not later than 49 days after the case is at issue, the Plaintiff (or Responsible Attorney) shall file a Certificate of Compliance as required under C.R.C.P. 16.1(h). No Case Management Order or Case Management Conference is required.

## G.      TRIAL SETTING

Continuances will NOT be granted as a matter of course, even if stipulated. Continuances will be granted only for good cause shown. Contested motions for continuance will likely be decided on the first day of trial unless ripe at least **7 days** before trial.

**H.     TRIAL MANAGEMENT ORDER**

1.  Plaintiff's counsel shall prepare and submit a Trial Management Order ("TMO") no later than **28 days** before the date of trial.

**I.     TRIAL PREPARATION**

1.  A Pre-trial Conference is not scheduled by the Court automatically. The parties may contact the clerk of this Court at any time if they wish to schedule a Pre-trial Conference in this matter. Unless good cause is shown to hold the conference closer to trial, the Pre-trial Conference shall be held no later than **7 days** before trial.

2.  The FTR shall be the official record in this case, absent an agreement to use a freelance court reporter. Counsel and any party appearing *pro se* shall decide if a retained court reporter will be used. Review and comply with the 2nd Judicial District Chief Judge Directive 2011-1 and attached policy regarding Court Reporters.

3.  Any Trial Briefs must be filed no later than **7 days** before trial and shall not exceed 5 pages. In lieu of a trial brief, a party may file a list of case and statutory authority upon which the party intends to rely.

4.  **Witness Lists**. A correctly spelled list of the probable witnesses who may be called. In addition to listing the names of the witnesses, the list shall also specify the witnesses' titles or degrees and employment (e.g., Dr. John Smith, M.D., Children's Hospital) if applicable.

5.  **Joint Order of Proof**. Counsel **shall confer** and prepare a joint order of proof which identifies each counsel's good-faith estimate of the order in which witnesses will be presented and the time required for direct and cross-examination of each witness.

6.  **The witness lists and order of proof shall be filed no later than 7 days before the commencement of trial.**

7.  **Exhibits.**
    a.  The parties must prepare a comprehensive Index of Exhibits and note those exhibits which are stipulated. Authenticity of exhibits shall be deemed stipulated to unless an objection is filed **14 days** before trial.

    b.  Counsel shall stipulate to admissibility of exhibits where appropriate to reduce use of Court and, if applicable, jury time. Each exhibit in the index should be accompanied by a number, Plaintiffs shall use numbers 1-999 and Defendants shall use numbers 1,000-1,999. If there are multiple Plaintiffs or multiple Defendants the parties shall designate the exhibit number range each party will use.

    c.  All exhibits must be pre-marked with the number or letter identification, along with the case number. On the day of trial, counsel shall have in their possession at least four complete sets of all exhibits (either paper or electronic): one copy for the judge, one copy for witnesses, and copies for counsel.

d.   The parties shall exchange any demonstrative exhibits **7 days** before the first day of trial.

e.   Unless the Court orders otherwise, on or before the trial date, the parties must submit ALL of their exhibits, and/or images of large or demonstrative exhibits, through the E-Filing system. Parties should anticipate that there are exhibits such as negotiable instruments where the original paper document may need to be tendered to the Court. Images of these exhibits shall also be filed through the E-Filing system. *See* CJD 11-01 ¶ VI. Submission of exhibits shall be in substantial compliance with Paragraph V, of Chief Justice Directive 11-01. *See id.* ¶ V. Any violation of this Order regarding the submission of exhibits will be subject to sanctions including contempt of Court under C.R.C.P. 107.

f.   Copies of a draft of list of exhibits and witnesses must be exchanged at least **42 days** before trial, as required by C.R.C.P. 16(f)(2). Other orders concerning exhibits may be entered as necessary.

**8.  Depositions**
a.   If any party wishes to use depositions in place of live testimony, C.R.C.P. 16(f)(3)(VI)(D) shall be complied with.

b.   The parties must provide the Court with a single copy of the deposition transcript with the designations and cross designations indicated, **7 days** before trial.

c.   All objections shall be filed with the designations and shall include a specific Rule of Evidence supporting the objection.

d.   The same rules apply to written, videotape, and DVD depositions alike.

9.   If a party needs any form of audio/visual equipment, the party(s) is responsible for providing it. This includes extension cords and power surge strips

10.  **Interpreters.** If any party or witness requires an interpreter which the Court is required to provide under CJD 06-03 (as amended, May 2016), you must notify the courtroom clerk for Courtroom 209 of the need for the interpreter, the language needed and the anticipated date and length of testimony of the witness who is English Language Deficient **not less than 35 days before trial.** Failure to do so may result in the Court's inability to schedule an interpreter and, if so, the witness will not be permitted to testify.

## J.   JURY INSTRUCTIONS

1.   Attorneys are required to meet and confer in good faith, preferably in person, regarding jury instructions. The Court has already prepared the following instructions: 3:1, 3:4, 3:8, 3:9, 3:12, 3:14, 3:15, 3:16, 4:1, 4:2, 4:2A, 5:1 and 5:6. Counsel for the plaintiff is required to submit a joint proposed initial draft of the final jury instructions directly to the court via e-mail to the Court's law clerk (02courtroom209@judicial.state.co.us) no later than 7 days prior to the scheduled trial. By initial draft, the Court means a single document that includes the instructions the Court has already prepared, the instructions to which all parties have stipulated, and any additional or disputed instructions of any party, as discussed below.

2. Please note: the Court does not need, nor will it accept, basic introductory or closing instructions, oaths, admonitions, lengthy annotations, or similar instructions.

3. Counsel shall submit instructions using the following order: opening instructions; 2:1 claims and defenses; basic evidentiary instructions; instructions relating to the plaintiff's claims; instructions relating to defenses; damages; definitions; closing instructions.

4. Unless a stipulation can be reached, counsel for both parties shall be responsible for submitting their own version of a proposed 2:1 instruction under the "Claims of the Parties" instruction. The Court will either choose between those submitted instructions or prepare its own.

5. If counsel cannot agree on the wording of other instructions then both counsel shall submit instructions defining applicable stipulations, claims, standards of proof, affirmative defenses, damages, and special definitions under the appropriate sections.

6. Additional instructions may be submitted. However, the Court does not favor, and rarely gives, special instructions patterned after caselaw; any such instructions shall be submitted separately via e-mail, accompanied by a brief statement of authority, in compliance with the requirements for the initial draft. All proposed instructions must be organized in substantial compliance with the format utilized by the Court. If either counsel has an objection to a submitted instruction, the nature of the objection shall be briefly stated on the initial draft submitted to the Court, along with a brief statement of authority.

7. The Court shall prepare proposed verdict forms that conform to the proposed instructions.

8. All instructions must be submitted through the E-Filing system in editable format. *See* CJD 11-01 ¶ VII. Accordingly, two editable documents comprising the proposed jury instructions must be E-Filed **7 days** before trial: (1) one document of stipulated instructions (without CJI and/or case citations), and (2) one document of disputed instructions (with CJI and/or case citations). The set of instructions provided to the jury as well as a party's tendered instructions that have been rejected by the Court shall be uploaded in the E-Filing system.

9. The Court will conduct a conference on the instructions during breaks, over the lunch hour, or at the end of the day. Counsel and/or parties shall be prepared, with case citations, to discuss the disputed instructions at the time of the conference. The goal is to have a completed set of instructions ready for the jury as soon as the presentation of evidence is concluded.

## K.      JUROR NOTEBOOKS (If Applicable)

Each trial juror will be provided with a juror notebook. We will provide the notebooks, unless an oversize notebook is needed, in which case the parties must provide them. We will prepare general information and juror question forms, but the parties must prepare the remainder of the contents. Each page must be three-hole punched in advance so it can be placed in a notebook. Each party must file its materials with courtroom staff *in person* no later than 3:00 p.m. on the

Thursday before the first day of trial. The person bringing the materials to court must be prepared to place the material into the notebooks. Each party must supply an original and eight copies of the following:

1. **Exhibit Lists**. A list of exhibits whose admissibility is stipulated or not subject to reasonable dispute.

2. **Exhibits or Excerpts of Exhibits**. Copies of stipulated exhibits may be put in the juror notebooks. If exhibits are lengthy, stipulated excerpts may be used with my permission. The parties should bring to trial eight (three hole-punched) copies of any exhibit not stipulated to; copies will be placed in the notebook if and when the exhibit is admitted.

3. **Glossary of Terms**. If there are any scientific or other specialized terms which will be used repeatedly, those should be set forth, with an agreed-upon definition. If the parties have a legitimate dispute about the definition of any term, just the term should be listed.

## L.      JURY SELECTION (If Applicable)

1. Each side will have a maximum of 20 minutes for *voir dire*, unless additional time is requested and permitted in advance of the first day of trial. In multi-party cases, time must be divided between all parties on the side(s) of the case.

2. The Court will ask some basic questions before counsels' *voir dire*. If there are questions all parties believe the should ask during its *voir dire*, such questions should be submitted to the Court at least **7 days** before trial.

3. *Voir dire* will be conducted from the lectern.

4. Typically, an alternate juror is selected. The Court will advise counsel on the first day of trial how the alternate will be designated. The Court prefers that the alternate be allowed to deliberate, but a final decision will be made before the venire arrives for trial.

5. Peremptory challenges are to be made against the presumptive panel.

6. Typically, challenges for cause will be exercised at the bench upon the conclusion of all parties' *voir dire*. Peremptory challenges will be announced orally in open Court *by counsel*.

## M.      CONDUCT OF TRIAL

1. **Scheduling/Use of Time**
   a. The trial day will start at 8:30 a.m. and end at 5:00 p.m. We will take a morning and an afternoon break of 15 to 20 minutes each. Lunch will run for approximately 1 hour within the timeframe of noon to 1:30 p.m. Adjustments to this schedule may be made for good cause shown or upon order of the Court.

   b. Counsel and parties will be in court by 8:00 a.m. on each day of trial. This allows time for setup and preparation before beginning each trial day. It also provides an opportunity for counsel to discuss anything outside the presence of the jury before the trial day begins.

c. Jurors (if applicable) are the most important people in the decision-making process; their time is more valuable than ours. Witnesses must be scheduled so that no lengthy gaps occur in testimony. If there is a lengthy delay in one side's presentation of evidence, the Court will likely exercise its discretion and require the other side to begin the presentation of evidence. Proper concern for the jury's time is generally more important than the order in which evidence is presented.

d. Counsel and the Court will spend a few minutes at the end of each trial day (after the jury has been excused) discussing what will occur the next day, including what witnesses are scheduled and how much time each witness is expected to take.

2. **Opening Statements**. Each side will have a maximum of 20 minutes for its opening statement. In multiple-party cases, this time must be divided between the parties. Additional time may be permitted for good cause shown.

3. **Questioning of Witnesses**.
   a. Generally, questioning will be done from the podium unless permission is granted to approach the witness or the bench.

   b. Redirect may be limited or disallowed. The Court generally does not allow re-cross. Prior to questioning, counsel should ask to approach for a bench conference should a re-cross be sought.

   c. Juror questions will be permitted when all other questions have been asked. Jurors will submit written questions on forms which the Court will place in the juror notebooks. As required, the Court will make a determination on whether the question will be asked after a bench conference as to any question(s). Counsel may ask *brief* follow-up questions after juror questions have been asked, but only as to issues raised by the jurors' questions.

4. **Objections**.
   a. Make objections professionally: be brief, concise and specific.

   b. Speaking objections are not permitted.

   c. Do not automatically respond to an objection; if I want a response to an objection before ruling on it, I will ask for one.

5. **Closing Arguments**. Each side will have 20 minutes for closing argument. In multiple-party cases, this time must be divided between the parties. Additional time may be permitted for good cause shown.

6. **Miscellaneous**.
   a. Parties must remain at counsel table while court is in session.

   b. Counsel must use surnames.

c.  No food is permitted in the courtroom; water is permitted at counsel table.

d.  Please turn off (or silence) all electronic devices before coming into court.

## N.     GENERAL RULES

1.  If this Order conflicts with any Pre-Trial Order that was issued previously **THIS ORDER** will supersede.

2.  Any reference in this Order to "counsel" includes *pro se* parties.

3.  The parties are to **notify the Court within 24 hours of settlement or resolution of the case. This should be accomplished by both calling the Courtroom at its main number of 303-606-2393 AND e-filing a notice of settlement. All documents confirming settlement shall be filed not later than 28 days from the date of settlement,** unless otherwise ordered by the Court.

4.  Unless all parties agree on the record that exhibits need not be maintained, the following procedure will be followed:

    a.  When the trial or hearing is concluded, each party will withdraw any exhibits or depositions which that party marked or admitted.

    b.  Each party will maintain in its custody the withdrawn exhibits and depositions without modification of any kind until 63 days after the time for the need of such exhibits for appellate or other review purposes has expired, unless all parties stipulate otherwise on the record or in writing. It will be the responsibility of the withdrawing parties to determine when the appropriate time period has expired.

    5.  This is a *CIVIL* division. Counsel will treat jurors, parties, witnesses, me, my staff, and each other with professionalism, courtesy and respect at all times. This applies not only to the actual trial, but to all aspects of the case, including discovery and motions practice, and includes what is written as well as what is said.

### DISCOVERY PROTOCOL

Counsel are reminded that all discovery responses shall be made in the spirit and with the understanding that the purpose of discovery is to elicit facts and to get to the truth. The Rules of Civil Procedure are directed toward securing a just, speedy and inexpensive determination of every action. The discovery process shall not be employed to hinder or obstruct these goals, nor to harass, unduly delay or needlessly increase the cost of litigation.

### WRITTEN DISCOVERY

These discovery protocols shall be considered as part of the responsibility of parties and counsel to comply with the Rules of Civil Procedure relating to discovery.

1. The parties should refrain from interposing repeated boilerplate type objections such as "overbroad, unduly burdensome, vague, ambiguous, not reasonably calculated to lead to the discovery of admissible evidence" and other similar objections. In the event any such objections are made, they shall be followed by a clear and precise explanation of the legal and factual justification for raising such an objection. Additionally, if the objecting party otherwise responds to the discovery request but does so subject to or without waiving such an objection, that party shall describe with reasonable specificity the information which may be available, but which is not being provided as a result of the objection raised.

2. When a responding party claims not to understand either a discovery request or the meaning of any words or terms used in a discovery request, that party shall, within fourteen (14) days of receiving the discovery request, seek clarification of the meaning from counsel who served the discovery. A failure to seek such clarification shall be considered a violation of this Order for Discovery Protocol.

3. A discovery response which does not provide the information or material requested but promises to do so at some point in the future will be treated as the equivalent of no response unless the party so responding provides a specific reason for the information not being produced as required by the Rules of Civil Procedure, and also provides a specific date by which such information will be produced.

4. A response to a discovery request that does not provide the information or material requested but rather states that the party is continuing to look for or search for such information or material will be treated as the same as no response, unless that party provides a clear description of where such information or material is normally located, who is normally in custody of such information or material, where the party has searched, the results of the search, as well as the identity of all persons who have engaged in such a search. The responding party shall also provide a clear explanation of the ongoing search and a specific date by which the search will be complete.

5. Whenever a party objects to discovery based upon a claim of attorney/client privilege, work product protection, or any other privilege or protection, that party shall produce a detailed privilege/protection log that includes at least the following for each such item for which privilege is claimed:

   a. The information required by C.R.C.P. 26(b)(5);

   b. The date of the information or material;

   c. All authors and recipients; and

   d. The specific privilege or protection which is claimed.

   The proponent of the privilege has the burden of establishing that privilege. Failure to comply with this paragraph 5 and Order for Discovery Protocol will constitute a waiver of the claimed privilege.

**DEPOSITIONS**

1. Depositions shall be conducted in compliance with the Colorado Rules of Civil Procedure.

2. During all depositions, counsel shall adhere strictly to C.R.C.P. 30(d) (1) and (3). No objections may be made, except those which would be waived if not made under C.R.C.P. 32(d)(3)(B) (errors, irregularities), and those necessary to assert a privilege, to enforce a limitation on evidence directed by the Court, or to present a C.R.C.P. 30(d)(3) motion (to terminate a bad faith deposition). Objections to form shall be stated: "Objection as to form." Any further explanation is inappropriate and prohibited unless specifically requested by the attorney asking the question.

3. There shall be no speaking objections. It is inappropriate and prohibited for an attorney, during the course of questioning, to advise a witness to answer, "if you know," or "if you remember." It is similarly prohibited for an attorney during questioning to advise a witness not to speculate. All such questions shall be considered speaking objections. All deponent preparation shall be conducted prior to the commencement of the deposition and shall not take place during the course of the deposition.

4. It is appropriate for the deponent to request clarification of a question. However, it is not appropriate for counsel to do so.

5. A deponent and an attorney may not confer during the deposition while questions are pending. Similarly, neither a deponent nor counsel for a deponent may interrupt a deposition when a question is pending or a document is being reviewed, except as permitted by C.R.C.P. 30(d) (1).

6. Counsel shall refrain from excessive objections that have the purpose or effect of disrupting the flow of questioning or the elicitation of testimony.

7. Counsel may instruct the deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the Court, or to present a motion under C.R.C.P. 30(d)(3). Whenever counsel instructs a witness not to answer a question, counsel shall state on the record the specific reason for such an instruction, the specific question, part of a question or manner of asking the question upon which counsel is basing the instruction not to answer the question.

8. Violations of these Discovery Protocols will result in the Court limiting or prohibiting additional discovery in the case.

DATED: January 5, 2023.

BY THE COURT:

_____

Alex C. Myers
District Court Judge

# EXHIBIT F

JANUARY 9, 2023

**JEFFREY SABIN, MD V. THE PAUL REVERE LIFE INSURANCE COMPANY**
**CASE NO. 2023CV30043**
**AFFIDAVIT OF SERVICE**

*I this day SERVED the within named*

THE PAUL REVERE LIFE INSURANCE COMPANY
C/O CSC

1/9/2023 @10:40AM- IN HAND TO COREY EDWARDS,
CLERK. SERVED BY JOHN RYMASZEWSKI-PROCESS
SERVER

*No.* 84 STATE ST
*in the city/town of* BOSTON, MA, *an attested copy of the SUMMONS; COMPLAINT AND JURY
DEMAND; CIVIL CASE COVER SHEET; PRE-TRIAL ORDERS AND DELAY REDUCTION ORDER*

*Service and travel* $ 99

Process Server/

# EXHIBIT G

| | |
|---|---|
| District Court, Denver County, Colorado<br>Court Address:<br>1437 Bannock Street, Room 256<br>Denver, CO 80202<br>(720) 865-8301 | DATE FILED: January 9, 2023 12:48 PM<br>FILING ID: A32E5762A95FD<br>CASE NUMBER: 2023CV30043 |
| Plaintiff:  JEFFREY SABIN, M.D.<br><br>v.<br><br>Defendants: THE PAUL REVERE LIFE INSURANCE COMPANY;<br>UNUM GROUP | ▲   **COURT USE ONLY**   ▲ <br><br>Case Number: 2023cv30043<br><br>Division: 209    Courtroom: |
| **DISTRICT COURT CIVIL SUMMONS** | |

**TO THE ABOVE-NAMED DEFENDANT: The Paul Revere Life Insurance Company / Registered Agent: Corporation Service Company, 84 State Street, Boston, MA 02109**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint.  If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you.  If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you.  Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated: January 6, 2023.                     *s/ Zachary C. Warzel*
                                            Zachary C. Warzel, CO Reg. #36546
                                            Ross W. Pulkrabek, CO Reg. #31111
                                            Keating Wagner Polidori Free, P.C.
                                            1290 Broadway, Suite 600
                                            Denver, CO 80203
                                            (303) 534-0401

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:**  A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal.  The plaintiff has 14 days from the date this summons was served on you to file the case with the court.  You are responsible for contacting the court to find out whether the case has been filed and obtain the case number.  If the plaintiff files the case within this time, then you must respond as explained in this summons.  If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

# EXHIBIT H

# Affidavit of Process Server

DISTRICT COURT, DENVER COUNTY, COLORADO

DATE FILED: January 9, 2023 4:10 PM
FILING ID: F3375941C88A0
CASE NUMBER: 2023CV30043

| JEFFREY SABIN, M.D. | VS | THE PAUL REVERE LIFE INSURANCE COMPANY; UNUM GROUP | 2023CV30043 |
|---|---|---|---|
| PLAINTIFF/PETITIONER | | DEFENDANT/RESPONDENT | CASE NUMBER |

I, GILBERT DEL VALLE _____ being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service.   RECEIVED 01/06/2023

**Service:** I served UNUM GROUP
NAME OF PERSON / ENTITY BEING SERVED

with (list documents) SUMMONS; COMPLAINT AND JURY DEMAND; PRE-TRIAL ORDER; DELAY REDUCTION ORDER; DISTRICT COURT CIVIL CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD-PARTY COMPLAINT

by leaving with LYNANNE GARES (MANAGING AGENT) _____ At
NAME                                         RELATIONSHIP

☐ Residence _____
ADDRESS                    CITY / STATE

☒ Business   C/O CORPORATION SERVICE COMPANY, 251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808
ADDRESS                                      CITY / STATE

On _____01/06/2023_____   AT _____3:15 PM_____
DATE                          TIME

Thereafter copies of the documents were mailed by prepaid, first class mail on_____
DATE

from_____
CITY          STATE          ZIP

**Manner of Service:**
☒ CORPORATE
☐ **Personal:** By personally delivering copies to the person being served.
☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of _____ and explaining the general nature of the papers.
☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.
☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

**Non-Service:** After due search, careful inquiry and diligent attempts at the address (es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address   ☐ Moved, Left no Forwarding   ☐ Service Canceled by Litigant ☐ Unable to Serve in Timely Fashion
☐ Address Does Not Exist ☐ Other_____

**Service Attempts:** Service was attempted on: (1)_____ (2)_____
DATE       TIME              DATE       TIME

(3)_____(4)_____(5)_____
DATE       TIME              DATE       TIME              DATE       TIME

Age 50   Sex FEMALE Race WHITE Height 5'5 Weight 180   HAIR BROWN

GILBERT DEL VALLE
BRANDYWINE PROCESS SERVERS, LTD.,
PO BOX 1360, WILMINGTON, DE 19899

SUBSCRIBED AND SWORN to before me this 6TH day of JANUARY, 2023.

_____
SIGNATURE OF NOTARY PUBLIC

NOTARY PUBLIC for the state of   DELAWARE

KEVIN DUNN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires on July 26, 2026

NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS

# EXHIBIT I

District Court, Denver County, Colorado
Court Address:
1437 Bannock Street, Room 256
Denver, CO 80202
(720) 865-8301

DATE FILED: January 9, 2023 4:10 PM
FILING ID: F3375941C88A0
CASE NUMBER: 2023CV30043

Plaintiff:  JEFFREY SABIN, M.D.

v.

Defendants: THE PAUL REVERE LIFE INSURANCE COMPANY;
UNUM GROUP

▲   **COURT USE ONLY**   ▲ 

Case Number: 2023cv30043

Division: 209    Courtroom:

## DISTRICT COURT CIVIL SUMMONS

**TO THE ABOVE-NAMED DEFENDANT: Unum Group / Registered Agent: Corporation Service Company, 251 Little Falls Drive, Wilmington, New Castle, DE 19808**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint.  If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you.  If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you.  Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated: January 6, 2023.

*s/ Zachary C. Warzel*
Zachary C. Warzel, CO Reg. #36546
Ross W. Pulkrabek, CO Reg. #31111
Keating Wagner Polidori Free, P.C.
1290 Broadway, Suite 600
Denver, CO 80203
(303) 534-0401

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:**  A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court.  You are responsible for contacting the court to find out whether the case has been filed and obtain the case number.  If the plaintiff files the case within this time, then you must respond as explained in this summons.  If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.