**UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-00236-DDD-KLM

JEFFREY SABIN, M.D.,

      Plaintiff,

v.

THE PAUL REVERE LIFE INSURANCE COMPANY and UNUM GROUP,

      Defendants.

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND FOR
DETERMINATIONS AS A MATTER OF LAW**

---

Defendants move the Court to enter summary judgment in their favor on

Plaintiff's claims. Defendants seek determinations that (1) Plaintiff is not totally

disabled; at most he is residually (or partially) disabled; (2) the monthly disability

benefit under the disability policy is $1,508 not $15,080; (3) Defendants handled the

disability claim in good faith; (4) and the statutory penalty under sections 10-3-1115

and -1116, C.R.S., only applies to *past* monthly disability benefits that were

unreasonably delayed or denied. It does not apply to *future* monthly benefits that

have not yet vested or become due.

**INTRODUCTION**

This case presents the central question whether Plaintiff is "Totally

Disabled" under a disability insurance policy where he cannot perform orthopedic

surgeries, but he can still perform other important (and more lucrative) duties,

including medical-legal reviews. Based on the undisputed facts, the plain language of the Policy, well-established canons of contract interpretation, and cases interpreting similar policy language, he is not Totally Disabled.

Plaintiff is a self-employed medical doctor working under the name Precision Orthopedics. Before developing glaucoma, Plaintiff treated patients in the office, performed orthopedic surgeries, and provided medical-legal reviews. The medical-legal work was substantial; it accounted for more than one-third of his income. After vision problems resulting from glaucoma interfered with his ability to perform surgeries, Plaintiff stopped performing surgeries in July 2020 but continued to see patients in the office and continued to provide medical-legal reviews. He later stopped seeing patients in the office in May 2021. Though he closed his office, he kept his corporation active and still performed medical-legal work under the name Precision Orthopedics. Indeed, Plaintiff's revenue increased after he stopped performing surgery and performed more medical-legal work, and he had less overhead.

Plaintiff submitted a claim for monthly disability benefits under a policy issued by Paul Revere. The policy provided for both Total Disability and Residual (or partial) Disability. The policy defined Total Disability as the inability (due to sickness or injury) to perform the important duties of the insured's Occupation. In contrast, Residual Disability was the inability to perform one or more of the important duties of the insured's Occupation.

Plaintiff admitted he continued to see patients in the office and perform medical-legal work, but he claimed he was Totally Disabled because he could no longer perform orthopedic surgery. Unum reviewed Plaintiff's claim and denied his claim for Total Disability benefits because he remained capable of performing an important duty of his Occupation: medical-legal work. Unum also reviewed Plaintiff's eligibility for Residual Disability but found Plaintiff was not eligible because he had not experienced a requisite loss of earnings of 20% or more.

Plaintiff brought this lawsuit asserting claims for breach of contract and common law and statutory bad faith. Plaintiff argues he is Totally Disabled because "his expert witness work was not an important duty of his occupation as a surgeon." (Compl. ¶ 34.) He does not alternatively contend he is Residually Disabled.

Plaintiff's position fails as a matter of law because he is not Totally Disabled. The Policy defines Plaintiff's "Occupation" as the "occupation or occupations in which you are regularly engaged at the time Disability begins." Before his disability, Plaintiff's medical-legal work occupied about twenty percent of his work time and accounted for more than one-third of his income. Thus, the work was either part of his Occupation or was an additional Occupation in which he was regularly engaged. Defendants appropriately considered it when determining his eligibility for Total Disability benefits.

Plaintiff also claims that the monthly benefit is $15,080.  But the Policy provides that the monthly benefit is one-tenth of this amount for claims based upon

a sickness (here, glaucoma) that are submitted at age 64. The monthly benefit is thus actually $1,508.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

**A.      Plaintiff's Occupation.**

1.      Plaintiff Jeffrey Sabin, M.D. is a medical doctor. Plaintiff worked for Colorado Orthopedic Clinic for fifteen years before starting his own practice, Precision Orthopedics, in 2005. (Exhibit 1 (Sabin Dep. Tr., Jul. 24, 2023), 19:9–20:6, 22:15–20.)

2.      Plaintiff's occupational duties included seeing patients in his office, reviewing patient histories and medical information, recommending treatment, communicating with patients and patients' families, surgical preparation, performing surgeries, documenting patient status, performing medical-legal exams, and performing medical-legal reviews. (Ex. 1, 55:1–58:18.)

3.      Plaintiff also did medical-legal work since the mid-1990s. (Ex. 1, 8:6–9, 89:10–90:19.)

4.      Plaintiff's medical-legal work consisted of medical record reviews, independent medical examinations (IMEs), and preparing reports and opinions based on his record reviews and IMEs. (Ex. 1, 95:19–97:4.)

5.      Plaintiff's medical-legal work was always performed through his medical practice, Precision Orthopedics. (Ex. 1, 89:10–90:19, 29:9–14, 66:14–67:7.)

4

6. Plaintiff estimated his work schedule consisted of roughly fifty to fifty-four hours per week "doing [his] specific specialty as an orthopedic surgeon" including about twenty-two hours in his office, twenty hours in the hospital, and nine hours at home doing work related to patient treatment and clinical notes. (Ex. 1, 72:1–73:24.)

7. Plaintiff estimated he spent an additional twelve hours per week at home doing medical-legal reviews and two hours per week at his office doing medical-legal exams. (Ex. 1, 72:1–73:24.) Plaintiff estimated medical-legal work before his disability accounted for about 20% of his time. (Ex. 1, 98:20–23.)

8. Medical-legal reviews comprised one-third or more of Plaintiff's income before his disability. (Ex. 1, 99:11–100:5.; Exhibit 2 (Letter from Unum to Plaintiff, Jan. 6, 2021), p. 2; Exhibit 3 (Letter from Unum to Plaintiff, Feb. 12, 2021), p. 2.)

**B.    Plaintiff's Medical Condition.**

9. Plaintiff stopped performing surgeries in July 2020 due to problems with his vision caused by glaucoma. (Ex. 1, 36:11–39:10, Exhibit 4 (Attending Physician Statement), p. 1))

10. Plaintiff stopped treating patients and closed his physical office on May 31, 2021. (Ex. 1, 39:6–10.)

11. But Plaintiff continued to do medical-legal reviews and independent medical exams. (Ex. 1, 66:7–13; Exhibit 5 (Letter from Plaintiff to patients, Feb. 15, 2021).)

12. Precision Orthopedics continued to do business limited to medical-legal work. (Ex. 1, 29:9–14.)

13. Plaintiff estimated that since May 31, 2021, his medical-legal work produced $1 million or more of revenue annually. (Ex. 1, 119:11–14.)

14. Plaintiff has not experienced a loss of earnings since he stopped performing surgeries and treating patients. (Ex. 1, 150:25–151:13.)

**C.     The Individual Disability Insurance Policy.**

15. Plaintiff purchased an individual disability insurance policy from The Paul Revere Life Insurance Company in 1994. (Exhibit 6 (Policy No. 0102663943).)

16. The policy provides Total and Residual Disability benefits. (Ex. 6, pp. 7–8.)

17. For Total Disability, the policy provides a maximum monthly benefit of $15,080 for sickness claims submitted before or at age 55. (Ex. 6, pp. 3, 22.)

18. For sickness claims submitted after age 55, the monthly benefit is multiplied by a factor determined by the insured's age at the time of disability:

**Factors by age for Total Disability due to Sickness**

| | |
|---|---|
| 1.0 for 55 or less | .5 for 60 |
| .9 for 56 | .4 for 61 |
| .8 for 57 | .3 for 62 |
| .7 for 58 | .2 for 63 |
| .6 for 59 | .1 for 64 |

(Ex. 6, p. 22.)

19. For sickness claims submitted at age 64 (like Dr. Sabin's claim), the

6

factor is .1 and the resulting monthly benefit is $1,508 (.1 x $15,080). (Exhibit 7

(Individual Statement), pp. 1, 4.)

20.    The policy defines "Total Disability" as being "unable to perform the

important duties of Your Occupation":

> 1.10    **"Total Disability"** means that because of Injury or Sickness:
>
> a.    You are unable to perform the important duties of Your Occupation; and
> b.    You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.

(Ex. 6, p. 7.)

21.    In the very next paragraph, the Policy defines "Residual Disability" to

mean that "due to Injury or Sickness," the insured is "unable to perform one or more

of the important duties of Your Occupation":

> 1.11    **"Residual Disability"**, prior to the Commencement Date, means that due to Injury or Sickness which begins prior to age 65:
>
> a. (1)    You are unable to perform one or more of the important duties of Your Occupation; or

(Ex. 6, p. 8.)

22.    The Policy defines "Your Occupation" as the "occupation or occupations

in which You are regularly engaged at the time Disability begins":

> 1.9    **"Your Occupation"** means the occupation or occupations in which You are regularly engaged at the time Disability begins.

7

(Ex. 6, p. 7.)

23.    If an insured is Residually Disabled, the Policy provides a percentage of the Total Disability benefit based on the insured's Loss of Earnings. The Policy will not pay Residual Disability benefits if the Loss of Earnings is less than 20%. (Ex. 6, p. 9.)

24.    The maximum benefit period for Residual Disability benefits is the later of the insured's 65th birthday or when 24 months of disability benefits have been paid. (Ex. 6, p. 7.)

### D.    Plaintiff's Disability Claim.

25.    In October 2020, Plaintiff submitted a claim to Unum. (Ex. 7, p. 4.)

26.    Plaintiff completed a claim form called an "Individual Statement," which asked whether the condition causing his disability was a sickness or an injury/accident. (Ex. 7, p. 1.) Plaintiff answered it was a sickness. (*Id.*) He completed the section of the claim form for sicknesses and detailed that the name of the condition causing his disability was "Glaucoma." (*Id.*) He left blank the section for a disability based upon injury/accident:

8

(*Id.*)

27.    Plaintiff's Individual Statement was consistent with prior statements to his treating physician denying "any trauma or previous eye surgeries." (Exhibit 8 (Denver Eye Surgeons medical records), p. 1.) It was also consistent with his treating physician's statements that his vision problems were caused by "episodic and likely virus associated eye conjunctivitis/inflammation exerbrating [sic] his glaucoma condition. (Exhibit 9 (Letter from Denver Eye Surgeons, Nov. 24, 2021), p. 2.) And it was consistent with diagnostic codes and notes in Plaintiff's medical records. (Ex. 8, pp. 2–6.)

28.    Plaintiff had his ophthalmologist complete an Attending Physician Statement (APS), which asked what was the primary diagnosis that may impact Plaintiff's functional capacity. (Ex. 4.) Consistent with Plaintiff's Individual Statement and his medical records, his ophthalmologist answered "Primary open angle glaucoma, Bilateral." (Ex. 4, p. 1.)

29.     Plaintiff said his medical condition impacted his ability to perform his occupational duties because he had "not been able to do any surgery secondary to severe visual compromise, double vision, inability to focus, inability to have depth perception." (Exhibit 10 (Occupation Description), p. 1.)

30.     Plaintiff also completed an Occupation Description form that asked him to list and describe his occupational duties. (Ex. 10.) He listed three occupational duties: (1) office practice, (2) Medical-Legal; and (3) Surgery:

(*Id.*)

31.     Unum reviewed Plaintiff's claim for disability benefits and the documentation he provided, obtained Plaintiff's medical records, obtained CPT

codes[1] from Plaintiff's medical practice, and spoke with Plaintiff regarding his claim for disability benefits. (Exhibit 11 (Merritt Dep. Tr., Oct. 11, 2023), 77:13–78:2.)

32.    Unum reviewed the Policy definition of "Your Occupation," information Plaintiff provided concerning his occupation and job duties, occupational research, and CPT codes and reports to determine the important duties of Plaintiff's Occupation. (Ex. 11, 77:13–78:2, 83:10–22.)

33.    On January 6, 2021, Unum denied Plaintiff's claim for Total Disability benefits because "[a]lthough surgery is considered an important duty of your occupation ... , the medical / legal reviews you perform in your occupation are also considered an important duty. Because you are able unable to perform one of the important duties of your occupation but continue to perform another important duty of your occupation, we have determined that you are not Totally Disabled under the terms of your policy at this time." (Ex. 2, p. 2.)

34.    Unum reached this conclusion by considering the duties Plaintiff actually performed before his disability. Unum did not rely on Plaintiff's job title, or the duties other orthopedic surgeons might or might not perform. (Ex. 11, 64:6–69:19.)

---

[1] "Current Procedural Terminology (CPT®) codes offer doctors and health care professionals a uniform language for coding medical services and procedures to streamline reporting, increase accuracy and efficiency." Am. Med. Ass'n, *CPT overview & code approval*, https://www.ama-assn.org/practice-management/cpt/cpt-overview-and-code-approval#:~:text=Code%20applications%20%26%20criteria-,What%20is%20a%20CPT%C2%AE%20code%3F,reporting%2C%20increase%20accuracy%20and%20efficiency (last visited Apr. 16, 2024).

35. Unum determined "medical / legal reviews accounted for [Plaintiff's] highest charges during the year prior to [his] disability at about 43%," supporting its conclusion that medical / legal reviews were an important duty of Plaintiff's Occupation. (Ex. 2, p. 2.)

36. Unum advised that, although Plaintiff was not eligible for Total Disability benefits, it would evaluate his eligibility for Residual Disability benefits. (*Id.*)

37. Between January and April 2021, Unum requested and Plaintiff provided income information. (Ex. 2; Exhibit 12 (Letter from Plaintiff to Unum, Jan. 10, 2021), p. 1.)

38. At Plaintiff's request, Unum evaluated Plaintiff's CPT codes for pre-pandemic period March 2019 through February 2020 and concluded that "legal / medical reviews accounted for 37% of [Plaintiff's] total charges" during that time. (Ex. 3, p. 2.) The review confirmed Unum's determination that "medical / legal reviews are considered an important duty of [Plaintiff's] occupation that [he] continue[s] to perform," and therefore he was ineligible for Total Disability benefits. (*Id.*)

39. On April 23, 2021, Plaintiff's counsel requested reconsideration of the decision. (Exhibit 13 (Letter from K. Lapuyade to Unum, Apr. 23, 2021).)

12

40.     Unum treated the request as an appeal, which was considered by a separate department at Unum. (Exhibit 14 (Letter from Unum to K. Lapuyade, Apr. 27, 2021).)

41.     The Appeal department upheld Unum's decision that Plaintiff was not Totally Disabled because "[t]he information that Dr. Sabin provided back to July 2016 supports that legal medical reviews was a duty he was routinely engaged in for the 3 years immediately prior to his claimed onset of disability." (Exhibit 15 (Letter from Unum to K. Lapuyade, May 17, 2021), p. 4.)

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]f the movant does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Leica Geosys., Inc. v. L.W.S. Leasing, Inc.*, 872 F. Supp. 2d 1191, 1197 (D. Colo. 2012) (quotations omitted). The burden then shifts to the nonmoving party to identify "specific facts showing there is a genuine issue for trial." *Id.* "[T]o avoid summary judgment, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party." *Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255, 1259 (10th Cir. 2020) (quotations and alterations omitted).

"If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

## ARGUMENT

**A.    Defendants did not breach the Policy because Plaintiff did not satisfy the Policy definition of "Total Disability." He could still perform an important occupational duty—medical legal work.**

Plaintiff is not Totally Disabled because he remains capable of performing an important duty of his Occupation—medical-legal reviews. Indeed, Plaintiff listed this as one of three important duties in his Occupation Description. (Statement of Undisputed Material Facts (SUMF) ¶ 30.)

### 1.    Applicable law.

An insurance policy is interpreted according to ordinary principles of contract interpretation. *Hoang v. Assur. Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007). The insured bears the burden of proving entitlement to coverage. *Rodriguez by & through Rodriguez v. Safeco Ins. Co. of Am.*, 821 P.2d 849, 853 (Colo. App. 1991). "Contract interpretation is a question of law for the court to decide." *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 696 (Colo. 2009). Courts interpret contracts by giving "effect to the plain and generally accepted meaning of the contractual language" and "seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." *Id.* at 697. If the plain language of the

14

policy is unambiguous, the Court must enforce the policy as written. *Hoang*, 149 P.3d at 801. Courts may not "rewrite an unambiguous policy" or "force a strained construction in order to resolve it against the insurer." *Farmers Ins. Exch. v. Kretzer*, 541 P.3d 613, 616 (Colo. App. 2023).

### 2. Medical / legal work is an important duty of Plaintiff's Occupation under the Policy.

The Policy's definitions of Total and Residual Disability do not focus on the insured's job title but rather on his occupational duties. Plaintiff, however, relies on his job title of "orthopedic surgeon" to argue he is Totally Disabled, contending that he is "an orthopedic surgeon with a specialty in spine surgery" and his eye condition prevents him from doing surgery. (Compl. ¶¶ 13, 23–24.)

Plaintiff's argument is contrary to the Policy definition of "Your Occupation." "'Your Occupation' means the occupation or occupations in which You are regularly engaged at the time Disability begins." (SUMF ¶ 19.) That is, the Policy looks to the occupation *or occupations* in which the insured was regularly engaged *at the time the Disability began*, not the insured's job title. (*Id.*)

Courts throughout the country that have considered similar policy language have agreed an insured's occupation is determined by the actual duties he performed prior to disability, not the insured's job title. *See, e.g., Sullivan v. Paul Revere Life Ins. Co.*, 820 F. Supp. 2d 1131, 1137–39 (N.D. Ala. 2011) (holding insured was hospital vice president of medical affairs and emergency room doctor where he performed duties of both roles before disability); *Hershman v.*

15

*Unumprovident Corp.*, 660 F. Supp. 2d 527, 532–34 (S.D.N.Y. 2009) (holding

insured's pre-disability duties included invasive and non-invasive cardiology and

administrative work); *Yahiro v. Nw. Mut. Life Ins. Co.*, 168 F. Supp. 2d 511, 515–18

(D. Md. 2001) (holding insured's pre-disability occupational duties included surgical

and non-surgical treatment, diagnostic tests, referrals, and teaching); *Dym v.

Provident Life & Acc. Ins. Co.*, 19 F. Supp. 2d 1147, 1148–50 (S.D. Cal. 1998)

(holding plaintiff's pre-injury duties included major and minor surgeries and office

work and examinations); *Mintzter v. Provident Life & Acc. Ins. Co.*, Civ. Action No.

21-5595 (MAS) (JBD), 2023 WL 4108850, at *5–8 (D.N.J. June 21, 2023) (holding

plaintiff's occupation including ophthalmologic surgery and non-surgical

ophthalmological duties); *Simon v. Unum Grp.*, No. 07 Civ. 11426(SAS), 2009 WL

857635, at *4–5 (S.D.N.Y. Mar. 30, 2009) (holding plaintiff's duties as an OB/GYN

included surgical procedures, delivering babies, and non-surgical gynecological

examinations and procedures).

Courts have explained that "where an insured practices a specialty but does

not confine himself to it, the 'total disability' analysis is similarly unconfined. Thus,

if a physician routinely performs surgeries but also devotes substantial time to a

non-surgical practice, he is not totally disabled by an inability to operate."

*Hershman*, 660 F. Supp. 2d at 532. It is irrelevant whether the duties are treated as

"separate 'occupations,' or whether one considers the [non-surgical] duties a piece of

the same occupation." *Id.* at 533. Either way, the non-surgical duties "cannot be

16

considered 'incidental.'" *Id.*; *see also Sullivan*, 820 F. Supp. 2d at 1138–39 (holding the plaintiff's occupation either included both medical and administrative duties or he held two occupations—physician and vice president of medical affairs; under either analysis, he was not totally disabled).

Since the mid-1990s, Plaintiff has done medical-legal work through his medical practice. (SUMF ¶¶ 3–5.) Plaintiff spent roughly fourteen hours per week doing medical-legal reviews and examinations. (SUMF ¶ 7.) The work accounted for one-third or more of Plaintiff's income. (SUMF ¶¶ 8, 33, 35.) It was an important duty of Plaintiff's Occupation under the Policy. *See Yahiro*, 168 F. Supp. 2d at 518 (holding "no reasonable trier of fact could conclude that Plaintiff's non-surgical treatment of patients and his teaching duties were merely incidental to his surgical treatment of patients" because those duties "consumed a large percentage of his time and directly generated a significant portion of his income"). Alternatively, Plaintiff held two occupations, one of which was medical-legal work. *See Sullivan*, 820 F. Supp. 2d at 1138–39.

### 3. Plaintiff is not Totally Disabled because he remains capable of performing medical / legal work.

Plaintiff likely will argue that the Policy definition of Total Disability does not require that he be unable to perform *all* the important duties of his Occupation. But neither does the Policy say an insured is Totally Disabled when he cannot do *some* of the important duties of his occupation. The Total Disability definition must

17

be read in conjunction with the Residual Disability definition that immediately

follows it. Total Disability is where the insured is unable to perform the important

duties of his Occupation, while Residual Disability is where the insured is unable to

perform one or more of the important duties of his Occupation. Following both

Policy definitions, Plaintiff is not Totally Disabled.

"Total" means "[w]hole; not divided; full; complete." Black's Law Dictionary,

*total* (11th ed. 2019). Giving the Policy language its plain and ordinary meaning,

"the important duties of Your Occupation" must mean "the whole and complete

duties" of the insured's Occupation. This is consistent with the principle that the

Policy must be construed as a whole. *See id.* "Residual Disability" means an insured

is unable to perform "*one or more* of the important duties of Your Occupation."

(SUMF ¶ 23 (quoting Ex. 6, p. 8) (emphasis added).) To give both provisions

meaning, Total Disability must mean that an insured is unable to perform *all* the

important duties of his Occupation, while Residual Disability means an insured is

unable to perform *one or more but fewer than all* of his duties. Any other

interpretation would render the Residual Disability provision meaningless.

Numerous courts across the country have applied this same rationale and

reached the same conclusion when interpreting similar or identical policy language:

> When the policy is read as a whole, it can only be
> interpreted in one way. If the residual disability provision
> is to be given meaning, an insured can only be "totally
> disabled" if he can no longer perform *any* of the
> "substantial and material duties" of his occupation. An

18

> inability to perform one or more of those duties would
> only render an insured residually disabled.

*Simon*, 2009 WL 857635, at \*5; *see also McOsker v. Paul Revere Life Ins. Co.*, 279 F.3d 586, 588 (8th Cir. 2002) ("[A] person who can perform some but not all of his or her important duties has a 'Residual Disability' within the meaning of the policy ... [T]herefore in order to be eligible for total disability payments a person would be required to show that he or she was unable to perform any of those important duties. ... [I]t is not otherwise possible to give effect to both parts of the contract."); *Karlin v. Paul Revere Life Ins. Co.*, 742 F. Supp. 2d 1253, 1263 (D. Kan. 2010) ("[T]o be eligible for total disability benefits, a person is required to show that he or she is unable to perform any of those important duties. To read [the policy] otherwise would not give effect to both parts of the Policy, and renders the term 'Residual Disability' superfluous."); *Yahiro*, 168 F. Supp. 2d at 517 ("Plaintiff's alternative argument, that he is totally disabled unless he can perform '*all* the substantial and material acts necessary to the performance of his former occupation,' effectively eliminates the partial disability provisions contained in the policies.").

Although Plaintiff will cite cases holding otherwise, his cases are unpersuasive because they apply interpretive rules that are contrary to Colorado law. For example, Plaintiff has previously cited *Hepp v. Paul Revere Life Insurance Co.*, 120 F. Supp. 3d 1328, 1335 (M.D. Fla. 2015); *Natarajan v. Paul Revere Life Insurance Co.*, 720 F. Supp. 2d 1321, 1326 (M.D. Fla. 2010); and *Leonor v. Provident Life & Accident Co.*, 790 F.3d 682, 687 (6th Cir. 2015). These cases were decided

19

under Florida and Michigan law, which each construe insurance policies strictly against the insurer. *See Hepp*, 120 F. Supp. 3d at 1335 (M.D. Fla. 2015) (applying Florida law, under which insurance policies are "construed liberally in favor of the insured and strictly against the insurer"); *Natarajan*, 720 F. Supp. 2d at 1326 (same); *Leonor*, 790 F.3d at 687 (applying Michigan law, under which "courts are to construe [an insurance] contract in favor of the insured if an ambiguity is found" (quotations omitted) (alteration in original)).

Colorado courts, however, will not "rewrite an unambiguous policy" or "force a strained construction" in order to resolve an insurance policy against an insurer. *Kretzer*, 541 P.3d at 616. Instead, they first seek to harmonize policy provisions. *See Rocky Mountain Prestress, LLC*, 960 F.3d at 1259–60 ("Although an ambiguous term must be construed broadly in favor of the insured, this 'does not mean that we must adopt [the insured's] views wholesale.' ... 'On the contrary, we must ensure that any interpretation of [the ambiguous term] comports with the policy's remaining provisions.'" (alteration in original) (citations omitted) (quoting *Colo. Pool Sys., Inc. v. Scottsdale Ins. Co.*, 317 P.3d 1262, 1270 (Colo. App. 2012))). The cases of *Simon*, *McOsker*, *Sullivan*, and *Yahiro* apply the same type of plain language analysis to harmonize the entire policy that Colorado law directs and which should be adopted here.

**B.    The maximum monthly benefit under the Policy is $1,508, based on Plaintiff's age when he submitted his sickness claim.**

In addition to disagreeing whether Plaintiff is totally or residually disabled, the parties disagree over what the monthly benefit is. The monthly benefit is $15,080 up until age 55. (SUMF ¶¶ 17–18.) The Policy then reduces the monthly benefit for sickness claims by a factor depending on the insured's age when he submits the claim. (SUMF ¶ 18.)

Plaintiff submitted a disability claim based upon a sickness (glaucoma) when he was 64 years old. (SUMF ¶ 19, 26–28.) In his Individual Statement claim form, he reported the claim as a sickness and completed the "Sickness" section of the claim form, describing the condition causing his disability as "Glaucoma." (SUMF ¶ 26.) This was consistent with his medical records. (SUMF ¶ 27.) Plaintiff has not disclosed any expert witness to opine that the cause of his disability was other than a sickness.

Accordingly, any monthly benefit was one-tenth of $15,080 or $1,508.

**C.    Defendants did not deny Plaintiff's claim in bad faith.**

Plaintiff's common law and statutory bad faith claims fail as a matter of law because Defendants' interpretation of the Policy language was reasonable and there is no evidence of subjective bad faith.

21

### 1.    Applicable bad faith law.

### a.    Common law bad faith.

To establish his common law bad faith claim, Plaintiff must prove both objective and subjective elements: (1) the insurer acted unreasonably under the circumstances; and (2) the insurer knew that its position was unreasonable or recklessly disregarded the fact that its position was unreasonable. *Shuessler v. Wolter*, 310 P.3d 151, 161–62 (Colo. App. 2012).

"[T]he reasonableness of an insurer's conduct is measured objectively based on industry standards." *Zolman v. Pinnacol Assur.*, 261 P.3d 490, 496 (Colo. App. 2011). Under Colorado law, it is reasonable for an insurer to challenge claims that are "fairly debatable." *Id.* "The central question 'is whether a reasonable insurer under the circumstances would have denied or delayed payment of the claim.'" *Todd v. USAA Gen. Indem. Co.*, --- F. Supp. 3d ----, Civ. Action No. 21-cv-03232-CMA-STV, 2024 WL 263571, at *10 (D. Colo. Jan. 24, 2024) (quoting *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008)).

In appropriate circumstances, Colorado courts have granted summary judgment on bad faith claims. *See, e.g. Sandoval v. Unum Life Ins. Co. of Am.*, 952 F.3d 1233, 1235–40 (10th Cir. 2020) (affirming summary judgment for Unum on Plaintiff's bad faith claims where claim handling process was reasonable); *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003) (affirming summary judgment for insurers on insured's bad faith claim where insurers acted

22

reasonably under the circumstances); *Sanderson v. Am. Family Mut. Ins. Co.,* 251 P.3d 1213, 1216 (Colo. App. 2010) (affirming summary judgment for the insurer as a matter of law because the insured failed to show that a reasonable jury could have found that the insurer acted in bad faith).

### b.    Statutory bad faith.

Colorado law imposes a statutory penalty if an insurer "unreasonably delays or denies payment of a claim for benefits." §§ 10-3-1115 to -1116, C.R.S. To prove a statutory bad faith claim, Plaintiff must prove his claim was denied "without a reasonable basis." *Glacier Constr. Co. v. Travelers Prop. Cas. Co. of Am.*, 569 F. App'x 582, 589 (10th Cir. 2014). The statute requires a finding that the insurer's conduct was unreasonable, regardless of the ultimate resolution of the underlying claims—i.e., the insured must not only show the insurer should not have denied benefits, but that the denial was manifestly unreasonable. *See Wagner v. Am. Family Mut. Ins. Co.*, 569 F. App'x 574, 580 (10th Cir. 2014). In other words, Plaintiff must show that his claim was not fairly debatable and that Unum had no reasonable basis to deny it.

### 2.    Defendants' interpretation of the term "Total Disability" under the Policy was reasonable.

Plaintiff's common law and statutory bad faith claims each fail because Defendants reasonably denied his claim for Total Disability benefits.

First, as detailed in section A, above, Defendants correctly denied Plaintiff's claim because he does not meet the Policy definition of Totally Disabled. Because

his claim was correctly denied, his bad faith claims necessarily fail. *See Dym*, 19 F. Supp. 2d at 1151 ("Because the court concludes that Provident did not erroneously deny plaintiff benefits, plaintiff's bad faith claim must fail."); *Mintzer*, 2023 WL 4108850 at *8 ("Here, the Court's finding that Plaintiff is not entitled to total disability benefits under the Policy necessarily precludes Plaintiff's bad faith claim under the common law.").

Second, even if the Court disagrees with Defendants' interpretation of the Policy language, their interpretation was reasonable. Defendants' interpretation is supported by the plain language of the Policy, Colorado's canons of contract interpretation, and cases throughout the country interpreting similar or identical language. (SUMF ¶¶ 20–22.) *See Copper Mountain*, 208 P.3d at 697; *Yahiro*, 168 F. Supp. 2d at 518; *Simon*, 2009 WL 857635, at *5; *McOsker*, 279 F.3d at 588; *Karlin*, 742 F. Supp. 2d at 1263; *Hershman*, 660 F. Supp. 2d at 532; *Sullivan*, 820 F. Supp. 2d at 1138–39; *Mintzter*, 2023 WL 4108850 at *5–8.

Because Defendants reasonably denied Plaintiff's claim for Total Disability benefits, his common law and statutory bad faith claims fail as a matter of law.

### 3. There is no evidence of subjective bad faith for common law bad faith.

Although "fair debatability" alone is not necessarily dispositive on common law bad faith claims, there is no evidence of subjective bad faith here. The evidence shows the claim handling process was reasonable and appropriate. *See Sanderson*, 251 P.3d at 1218 Defendants reviewed the information Plaintiff provided, explained

the basis for denying Total Disability benefits, reconsidered the decision based on additional information Plaintiff provided, and considered whether Plaintiff was eligible for Residual Disability benefits. (SUMF ¶¶ 31–41.)

### D.    The statutory penalty does not apply to future monthly benefits.

An insured "whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in district court to recover reasonable attorney fees and court costs and two times the covered benefit." § 10-3-1116, C.R.S. The parties may agree that the statutory penalty under sections 10-3-1115 and -1116 only applies to past due monthly benefits that were either delayed or denied. It does not apply to future, unvested monthly benefits. If there is a disagreement between the parties on this, then Defendants seek a legal ruling that it only applies to back benefits.

Plaintiff's Policy provides a *monthly* benefit. (Ex. 6, p. 9 ("We will periodically pay a Total Disability Benefit during Your Total Disability. The *monthly amount* We will pay is the Maximum Monthly Amount. It is shown on the Policy Schedule." (emphasis added).) Thus, the only "covered benefit" for which Plaintiff could recover statutory penalties would be benefits due through the date of judgment. The statutory penalty would not apply to any future benefits not yet due because those benefits have not been delayed or denied. Plaintiff's Complaint seems to acknowledge this. He seeks "statutory damages equal to two times the amount of

25

total disability benefits owed to Plaintiff *to the date of judgment.*" (Compl., p. 19 (emphasis added).)

## CONCLUSION

Defendants properly construed the Policy and found Plaintiff was not Totally Disabled because Plaintiff could still perform at least one of the three occupational duties listed in his Occupation Description claim form—medical-legal work. The Court should thus enter summary judgment for Defendants on all Plaintiff's claims.

The Court should also rule that the monthly benefit for Plaintiff's sickness disability claim submitted at age 64 is $1,508.

If necessary, the Court should also rule that the statutory penalties under section 10-3-1116 are limited to any monthly benefits already due to Plaintiff and do not apply to future monthly benefits.

Respectfully submitted:  April 19, 2024.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

*/s/ Stephen M. Bressler*
Stephen M. Bressler
201 E. Washington Street, Suite 1200
Phoenix, AZ 85004
Phone: (602) 262-5311
E-mail: sbressler@lewisroca.com

Elizabeth Michaels
1601 19th Street, Suite 1000
Denver, CO 80202
Phone: (303) 623-9000
E-mail: emichaels@lewisroca.com

*Attorneys for Defendants The Paul Revere Life
Insurance Company and Unum Group*

## CERTIFICATE OF COMPLIANCE WITH PRACTICE STANDARDS

I certify that the foregoing Motion for Summary Judgment and for
Determinations as a Matter of Law complies with the type-volume limitations set
forth in Judge Domenico's Practice Standards, section III(A)(1). The Motion is 5,443
words in length, including footnotes but excluding the case caption, signature block,
certificate of service, and certificate of compliance.

Dated:  April 19, 2024.

*/s/ Stephen M. Bressler*
Stephen M. Bressler

27

## CERTIFICATE OF SERVICE

I certify that on April 19, 2024 a true and correct copy of the foregoing was

filed via the CM/ECF system and served upon the following:

Zachary Warzel
Ross Pulkrabek
KEATING WAGNER POLIDORI FREE, PC
1290 Broadway, Suite 600
Denver, CO 80203
Phone: (303) 534-0401
E-mail: zwarzel@keatingwagner.com
       rpulkrabek@keatingwagner.com

*Attorneys for Plaintiff*

*/s/ Sonya Rodriguez*