**EXHIBIT**
**17**
30(b)(6) The Paul Revere 06-29-2023



# THE PAUL REVERE
## LIFE INSURANCE COMPANY

**COPY**

**18 CHESTNUT STREET**
**WORCESTER, MASSACHUSETTS  01608**

The Paul Revere Life Insurance Company will pay the benefits provided in this Policy for loss due to Injury or Sickness.

We have issued this Policy to You in consideration of the payment of the premium and the statements made in Your application. Your application is part of this Policy.

**Insured**     **JEFFREY J SABIN MD**

**Policy Number**  **0102663943   APR 20, 1994**     **Date of Issue**

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE TO AGE 65. NO CHANGE IN PREMIUM RATES.** As long as the premium is paid on time, We cannot change Your Policy or its premium rate until Your 65th birthday.

**RENEWAL OPTIONS AFTER YOU REACH AGE 65. SUBJECT TO CHANGE IN PREMIUM RATES.** You may continue Your Policy for a Total Disability benefit with a limited benefit period while You are actively and regularly employed full time.  There is no age limit.  This option is explained in PART 7.

When You are no longer actively and regularly employed after age 65, You may continue Your Policy for the rest of Your life. The benefit will be limited to a Hospital Confinement Indemnity. This benefit will take the place of all other benefits under the Policy. This option is explained in PART 8.

**YOUR RIGHT TO CANCEL.** If You are not satisfied with Your Policy, You may cancel it. Return the Policy to Us or Our agent by midnight of the tenth day after the date You receive it. If You return the Policy by mail, it must be properly addressed, postage prepaid, and postmarked no later than midnight of that tenth day. Our mailing address is 18 Chestnut Street, Worcester, Massachusetts 01608. Within ten days after We receive the Policy, We will refund any premium You have paid. The Policy will be considered to have never been issued.

**READ YOUR POLICY CAREFULLY.** It is a legal contract between You and Us.

Signed for The Paul Revere Life Insurance Company.

Secretary                    President and CEO

CHARTERED IN MASSACHUSETTS

990                    **DISABILITY INCOME POLICY**                    91-1
THE PREFERRED PROFESSIONAL

## TABLE OF CONTENTS

| | Page |
|---|---|
| Renewal Provisions | 1 |
| Policy Schedule | 3 |
| Automatic Increase Benefit | 3 |
| Part 1 — Definitions | 6 |
| Part 2 — Benefits | 8 |
|     Total Disability Benefit | |
|     Residual Disability Benefit | |
|     Recovery Benefit | |
|     Presumptive Total Disability Benefit | |
|     Cosmetic or Transplant Surgery | |
|     Rehabilitation | |
|     Survivor Benefit | |
| Part 3 — Exclusions | 11 |
| Part 4 — Premium and Reinstatement | 12 |
| Part 5 — Waiver of Premium | 13 |
| Part 6 — Recurrent and Concurrent Disability | 13 |
| Part 7 — Renewal Option After Age 65 | 14 |
|     If Employed - Total Disability Benefit | |
| Part 8 — Renewal Option After Age 65 | 15 |
|     If Not Employed - Hospital Confinement Indemnity | |
| Part 9 — Claims | 16 |
| Part 10 — General Provisions | 17 |

A copy of Your application, added benefits You have purchased, and any added provisions are attached at the back of the Policy.

990                    DISABILITY INCOME POLICY                    91-1
THE PREFERRED PROFESSIONAL

*Claimant Name:  Jeffrey J Sabin     Claim #:  18451825*

PRL-CL-IDI-000176

**EXHIBIT 6**

POLICY SCHEDULE

POLICY NUMBER:   0102663943                         DATE OF ISSUE:   APR 20, 1994

INSURED:         JEFFREY J SABIN MD

POLICY OWNER:    THE INSURED

**********************************************************************************

SUMMARY OF PREMIUM   PREFERRED NONSMOKER

ANNUAL PREMIUM FOR DISABILITY BENEFITS         $5,865.00
ANNUAL PREMIUM FOR ADDITIONAL BENEFITS         $3,088.58
TOTAL ANNUAL PREMIUM                           $8,953.58
*SELECT 15 ANNUAL PREMIUM                      $7,610.54

YOUR ANNUAL PREMIUM                            $7,610.54

*YOU HAVE A SELECT PREMIUM AS INDICATED.
THIS PREMIUM WILL REMAIN IN EFFECT UNTIL YOUR 65TH BIRTHDAY.  IT IS
SUBJECT TO CHANGE IF YOU RENEW YOUR POLICY AFTER YOUR 65TH BIRTHDAY.
**********************************************************************************

TABLE OF DISABILITY BENEFITS

| FROM INJURY OR FROM SICKNESS | COMMENCEMENT DATE | MAXIMUM MONTHLY AMOUNT | MAXIMUM BENEFIT PERIOD* |
|---|---|---|---|
| | 91ST DAY | $15,080.00 | TO AGE 65 |

QUALIFICATION PERIOD FOR RESIDUAL DISABILITY:    0 DAYS
*THE MAXIMUM BENEFIT PERIOD MAY CHANGE DUE TO YOUR AGE AT TOTAL DISABILITY.
PLEASE SEE POLICY SCHEDULE II.
**********************************************************************************

MODIFICATION OF COVERAGE

NONE.

**********************************************************************************

990          PREFERRED PROFESSIONAL DISABILITY INCOME POLICY          91-1

## POLICY SCHEDULE

POLICY NUMBER:   0102663943                          DATE OF ISSUE:  APR 20, 1994

INSURED:        JEFFREY J SABIN MD

POLICY OWNER:   THE INSURED

********************************************************************************

### TABLE OF ADDITIONAL BENEFITS

| ADDITIONAL BENEFITS ATTACHED | AMOUNT OF BENEFIT | MAXIMUM BENEFIT PERIOD | ANNUAL PREMIUM PRIOR TO AGE 65 |
|---|---|---|---|
| LIFETIME TOTAL DISABILITY (858) | $15,000.00 PER MONTH | LIFETIME | $1,456.50 |
| COST OF LIVING (1104) | 4% - CPI - 4% | -- | $1,051.08 |
| TOTAL DISABILITY IN YOUR OCCUPATION | -- | -- | $581.00 |
| ASSOCIATION DUES BENEFIT (874) | $600.00 PER YEAR | -- | 0.00 |

---

Claimant Name: Jeffrey J Sabin        Claim #:   18451825

PRL-CL-IDI-000178

**EXHIBIT 6**

POLICY SCHEDULE II

POLICY NUMBER:  0102663943                DATE OF ISSUE:  APR 20, 1994

INSURED:        JEFFREY J SABIN MD

POLICY OWNER:   THE INSURED

*****************************************************************************

MAXIMUM BENEFIT PERIODS

YOU HAVE A LIFETIME BENEFIT RIDER ADDED TO YOUR POLICY WHICH PROVIDES A
BENEFIT FOR AS LONG AS YOU LIVE.  PLEASE REFER TO YOUR POLICY FOR DETAILS.

FOR TOTAL DISABILITY BENEFITS PAYABLE TO AGE 65, IF TOTAL DISABILITY BEGINS:

```
        BEFORE AGE 61                        TO AGE 65
        AT AGE 61 BUT BEFORE AGE 62          48 MONTHS
        AT AGE 62 BUT BEFORE AGE 63          42 MONTHS
        AT AGE 63 BUT BEFORE AGE 64          36 MONTHS
        AT AGE 64 BUT BEFORE AGE 65          30 MONTHS
        AT OR AFTER AGE 65 BUT BEFORE
        AGE 75                               24 MONTHS
        AT OR AFTER AGE 75                   12 MONTHS
```

Claimant Name: Jeffrey J Sabin        Claim #:  18451825

PRL-CL-IDI-000179

**EXHIBIT 6**

POLICY SCHEDULE III

POLICY NUMBER:   0102663943                      DATE OF ISSUE:  APR 20, 1994

INSURED:        JEFFREY J SABIN MD

POLICY OWNER:   THE INSURED

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

AUTOMATIC INCREASES

NO AUTOMATIC INCREASES TO BENEFITS OR PREMIUMS ARE SCHEDULED.

PRIOR TO YOUR 60TH BIRTHDAY, YOU MAY AMEND THIS POLICY TO
PROVIDE FOR AUTOMATIC INCREASES TO MONTHLY BENEFITS.  YOU CAN
DO THIS BY APPLYING TO US.  APPROVAL WILL BE SUBJECT TO OUR
UNDERWRITING GUIDELINES.

Claimant Name:  Jeffrey J Sabin       Claim #:   18451825

PRL-CL-IDI-000180
**EXHIBIT 6**

## PART 1
## DEFINITIONS

THE FOLLOWING WORDS HAVE SPECIAL MEANINGS. THEY ARE IMPORTANT IN DESCRIBING YOUR RIGHTS AND OUR RIGHTS UNDER THE POLICY. REFER BACK TO THESE MEANINGS AS YOU READ YOUR POLICY.

1.1    **"Policy"** means the legal contract between You and Us. The policy, the application, the Policy Schedule, and any attached papers that We call riders, amendments, or endorsements make up the entire contract between You and Us.

1.2    **"You"** and **"Your"** refer to the Insured named in the Policy Schedule.

1.3    **"We"**, **"Us"** and **"Our"** refer to The Paul Revere Life Insurance Company. Our Home Office is 18 Chestnut Street, Worcester, Massachusetts, 01608.

1.4    **"Date of Issue"** means the date that the Policy becomes effective. It is shown on the Policy Schedule.

1.5    **"Injury"** means accidental bodily injury sustained after the Date of Issue and while Your Policy is in force.

1.6    **"Sickness"** means sickness or disease which first manifests itself after the Date of Issue and while Your Policy is in force. It includes Disability due to complications of pregnancy or childbirth. It includes Disability due to normal pregnancy or childbirth after You have been Disabled for 90 days.

1.7    **"Physician"** means any licensed practitioner of the healing arts practicing within the scope of his or her license. A Physician must be a person other than You.

1.8    **"Physician's Care"** means the regular and personal care of a Physician which, under prevailing medical standards, is appropriate for the condition causing the disability.

1.9    **"Your Occupation"** means the occupation or occupations in which You are regularly engaged at the time Disability begins.

1.10    **"Total Disability"** means that because of Injury or Sickness:

　　　a.　You are unable to perform the important duties of Your Occupation; and

　　　b.　You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.

Claimant Name: Jeffrey J Sabin    Claim #:   18451825

PRL-CL-IDI-000181

**EXHIBIT 6**

1.11  **"Residual Disability"**, prior to the Commencement Date, means that due to Injury or Sickness which begins prior to age 65:

    a. (1) You are unable to perform one or more of the important duties of Your Occupation; or

       (2) You are unable to perform the important duties of Your Occupation for more than 80% of the time normally required to perform them; and

    b. You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further care would be of no benefit to You; and

    c. You are not Totally Disabled.

As of the first Commencement Date to occur, Residual Disability means that due to the continuation of that Injury or Sickness:

    a. You incur a Loss of Earnings while You are engaged in Your Occupation or another occupation; and

    b. You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further care would be of no benefit to You; and

    c. You are not Totally Disabled.

Residual Disability must follow right after a period of Total Disability that lasts at least as long as the Qualification Period, if any. This period is shown on the Policy Schedule.

1.12  **"Recovery"** means a period which begins prior to age 65 during which:

    a. You incur a Loss of Earnings which follows Total or Residual Disability which continued at least to the Commencement Date; and

    b. The Loss of Earnings is due to the prior Injury or Sickness which caused the Total or Residual Disability; and

    c. You are working full time in Your Occupation. "Full time" means at least as many hours as You were working before Your Disability began.

1.13  **"Disability"or "Disabled"** refers to continuing periods of Total Disability, Residual Disability and/or Recovery. Successive periods will be deemed to be continuing if:

    a. Due to the same or related causes; and

    b. Separated by no more than 12 months;

Otherwise such periods will be deemed to be new and separate Disabilities.

1.14  **"Commencement Date"** is the day shown on the Policy Schedule when benefits begin during a Disability.

1.15  **"Maximum Benefit Period"** is the longest period of time for which We will pay benefits during any Disability. It is shown on the Policy Schedule.

We will not pay Residual Disability or Recovery benefits beyond the later of:

    a. Your 65th birthday; or

    b. The date on which 24 months of Disability benefits have been paid.

990

-7-

## PART 2
## BENEFITS

The monthly benefits payable under this Policy are subject to the terms of Part 9 "Claims".

### 2.1   TOTAL DISABILITY BENEFIT

We will periodically pay a Total Disability benefit during Your Total Disability. The monthly amount We will pay is the Maximum Monthly Amount.  It is shown on the Policy Schedule.

This benefit will begin on the Commencement Date. We will continue to pay it while You remain Totally Disabled. But in no event will We pay beyond the Maximum Benefit Period. For periods of less than a month, We will pay 1/30th of the benefit for each day of Total Disability.

### 2.2   RESIDUAL DISABILITY BENEFIT

We will periodically pay a Residual Disability benefit during Your Residual Disability.

The monthly amount We will pay equals:

$$\frac{\text{Loss of Earnings}}{\text{Prior Earnings}} \quad X \quad \text{Maximum Monthly Amount}$$

During any Disability each of the first 6 monthly payments of this benefit will not be less than 50% of the Maximum Monthly Amount.

The benefit will begin on either the Commencement Date or the day after Your Total Disability ends, if later. We will pay this benefit while Your Residual Disability continues, but not beyond the Maximum Benefit Period. For periods of less than a month, We will pay 1/30th of the benefit for each day of Residual Disability.

**"Loss of Earnings"** for any month means Your Prior Earnings minus Your Monthly Earnings for the month for which a benefit is claimed.  This difference will be considered Loss of Earnings to the extent it is due to the Injury or Sickness which caused the Disability. The Loss of Earnings must be at least 20% of Prior Earnings.

If the Loss of Earnings for any month is 75% or more of Prior Earnings, We will deem the loss to be 100% of Prior Earnings.

**"Prior Earnings"** means the greater of:

a.   Your average Monthly Earnings for the year just before Your Disability began; or

b.   Your highest average Monthly Earnings for any 2 successive years during the 5 year period just before Your Disability began.

Starting as of the first Review Date, We will make an inflation adjustment to Your Prior Earnings.  We will multiply Your Prior Earnings by the CPI Factor. The result will be used until the next Review Date to compute Residual Disability benefit amounts payable.   However, the inflation adjustment increase will be at least 7% of Your Prior Earnings amount.

The inflation adjustment will not apply once the Disability ends.  But it will apply to recurrent Disability deemed continuing under the Recurrent Disability section of Your Policy.

---

*What is the Total Disability benefit?*

*When is the Residual Disability benefit payable?*

*How is the Residual Disability benefit calculated?*

---

990                                               -8-                                               91-1

**Claimant Name:  Jeffrey J Sabin        Claim #:   18451825**

PRL-CL-IDI-000183
## EXHIBIT 6

"**CPI**" means the Consumer Price Index for All Urban Consumers. It is published by the United States Department of Labor. If this index is discontinued or if the method for computing it is materially changed, We may choose another index. We will choose an index which in Our opinion would most accurately reflect the rate of change in the cost of living in the United States. CPI will then mean the index We chose.

"**Review Date**" means the date that occurs:

    a.   After each successive 12 months of Disability; and
    b.   While Your Disability continues.

No Review Date will occur on or after Your 65th birthday.

"**Index Month**" means the calendar month four months prior to the calendar month in which a Review Date occurs. But the first Index Month for any Disability will be the calendar month 4 months prior to the month in which Your Disability began.

"**CPI Change**" means the result of a computation We will make as of each Review Date. We will divide the CPI for the most recent Index Month by the CPI for the Index Month prior to the most recent Index Month.

"**CPI Factor**" means the result of the CPI Change as of the current Review Date multiplied by the CPI Change for each prior Review Date occurring since the Disability began. The CPI Factor as of the first Review Date will equal the CPI Change as of that Review Date. A CPI Factor is determined as of each Review Date while Disability continues.

"**Monthly Earnings**" means Your salary, wages, commissions, bonuses, fees, and income earned for services performed. If You own any portion of a business or profession, it means:

    a.   Your share of the income earned by that business or profession;
    b.   Less Your share of business expenses which are deductible for Federal income tax purposes;
    c.   Plus Your salary and any contributions to a pension or profit sharing plan made on Your behalf.

Monthly Earnings does not include:

    a.   Income from deferred compensation plans, disability income policies, or retirement plans; or
    b.   Income not derived from Your vocational activities.

We will allow either the cash or accrual accounting method. But during a Disability the same method must be used when determining Loss of Earnings.

-9-

990

*Claimant Name: Jeffrey J Sabin     Claim #:  18451825*

PRL-CL-IDI-000184
**EXHIBIT 6**

## 2.3 RECOVERY BENEFIT

We will periodically pay a Recovery benefit during Your Recovery. The monthly amount We pay will be calculated as if You were Residually Disabled.

This benefit will begin on the day after Your Total or Residual Disability ends. We will continue to pay this benefit while Your Recovery continues. We will not pay beyond the end of the Maximum Benefit Period.

## 2.4 PRESUMPTIVE TOTAL DISABILITY BENEFIT

If Injury or Sickness causes You to totally and irrecoverably lose:

   a.   Your power of speech; or
   b.   Your hearing in both ears; or
   c.   Your sight in both eyes; or
   d.   Use of both hands; or
   e.   Use of both feet; or
   f.   Use of one hand and one foot;

We will presume You to be Totally Disabled as long as such loss continues and whether or not You are able to work or require Physician's Care.

The Total Disability benefit will begin on the date of the above loss. We will pay it for the amount and Maximum Benefit Periods shown on the Policy Schedule. But We will pay benefits for Your lifetime if; a) the Maximum Benefit Period is "to age 65" or "lifetime"; and b) such loss occurs prior to age 65.

## 2.5 TOTAL DISABILITY BECAUSE OF COSMETIC OR TRANSPLANT SURGERY

After 6 months from the Date of Issue, if You become Totally Disabled because You have surgery to:

   a.   Improve Your appearance or prevent disfigurement; or
   b.   Transplant part of Your body to someone else;

We will consider You to be Totally Disabled due to Sickness.

*Can benefits be paid if not Disabled?*

*Can Total Disability be automatically assumed?*

*Is cosmetic or transplant surgery covered?*

Claimant Name: Jeffrey J Sabin     Claim #: 18451825

PRL-CL-IDI-000185
**EXHIBIT 6**

### 2.6    REHABILITATION

*What happens if a program of retraining or rehabilitation is entered?*

We will pay for the cost of services incurred in connection with a program of vocational rehabilitation if:

    a.    We enter into an agreement with You on both the program and the services; and
    b.    The cost of the services is not covered by another plan or program.

Participating in such a program will not affect Your eligibility for benefits under Your Policy.

### 2.7    SURVIVOR BENEFIT

*Is there a benefit if You die?*

If You die after the Commencement Date and prior to age 65, and while You are eligible for Total Disability benefits, We will pay to Your beneficiary 3 times the Maximum Monthly Amount payable at the time You die. Your beneficiary will be Your estate. But You may name someone else by writing to Us.

## PART 3
## EXCLUSIONS

### 3.1    EXCLUSIONS

*When are you not covered?*

We will not pay Policy benefits:

    a.    Due to an act or accident of war, whether declared or undeclared; or
    b.    Due to normal pregnancy or childbirth except as described in the definition of Sickness; or
    c.    For any period You are incarcerated.

### 3.2    PRE-EXISTING CONDITION

*What if a disability results from a Pre-existing Condition?*

We will not pay benefits for a Pre-Existing Condition if it was not disclosed on Your application. Pre-Existing Condition means a sickness or physical condition for which prior to the Date of Issue:

    a.    Symptoms existed that would cause an ordinarily prudent person to seek diagnosis, care, or treatment; or
    b.    Medical advice or treatment was recommended by or received from a Physician.

Also We will not pay benefits for any loss We have excluded by name or specific description.

990                                                                     -11-

Claimant Name: Jeffrey J Sabin        Claim #:  18451825

PRL-CL-IDI-000186
**EXHIBIT 6**

## PART 4
## PREMIUM AND REINSTATEMENT

### 4.1    PAYMENT OF PREMIUM

The first premium on Your Policy is payable on the Date of Issue. After that, premiums are payable in the amount and mode shown on the Policy Schedule. Payments may be made at Our Home Office, 18 Chestnut Street, Worcester, Massachusetts 01608, or to Our agent.

Premiums may be paid annually or semi-annually. If Our rules permit it, You can pay the premiums quarterly or monthly. We will allow You to change this by written request. But, We will not allow a change while You are Disabled.

*When are premiums due?*

### 4.2    GRACE PERIOD

After the first premium has been paid, a grace period of 31 days is allowed for late payment of premium. Your Policy will remain in force during the grace period.

If the premium is not paid when it is due or within the grace period, the Policy will lapse.

*What happens if a premium payment is late?*

### 4.3    REINSTATEMENT

If Your Policy lapses because the premium is not paid when due or within the grace period, it will be reinstated if We or Our agent accepts payment of the premium without requiring a reinstatement application.

If We receive the premium due at Our Home Office within 57 days from the date the premium was due, We will not require evidence of Your insurability.

If We receive the premium after 57 days, We will require a reinstatement application. We will issue You a conditional receipt for the premium. If We approve Your application, the Policy will be reinstated as of the date of Our approval. If We disapprove Your application, We must do so in writing within 45 days of the date of the conditional receipt or the Policy will be reinstated on the 45th day.  The reinstated Policy will cover only loss due to:

    a.    Injury sustained after the date of reinstatement; or
    b.    Sickness that begins more than ten days after such date.

Except for this and any new provisions that are added to the reinstated Policy, Your rights and Our rights will be the same as before the Policy lapsed.

*How can a lapsed Policy be reinstated?*

### 4.4    PREMIUM REFUND AT DEATH

Upon notice of Your death, We will make a pro rata refund of any premium actually paid for a period beyond the date of Your death.

*Is there any premium refund at death?*

Claimant Name:  Jeffrey J Sabin    Claim #:    18451825

PRL-CL-IDI-000187
**EXHIBIT 6**

## PART 5
## WAIVER OF PREMIUM

### 5.1    WAIVER OF PREMIUM

*When will premiums be waived?*

After You have been Disabled for 90 days, We will waive any premium that becomes due while You remain Disabled. Your Policy and its benefits will continue as if the premium had been paid.

We will also refund any premium paid that became due during those first 90 days of Disability.

When You are no longer eligible for Waiver of Premium, You can continue Your Policy in force by paying the next premium that becomes due.

Waiver of Premium will not apply to any premiums which become due after You elect the RENEWAL OPTION IF NOT EMPLOYED. HOSPITAL CONFINE-MENT INDEMNITY BENEFIT in PART 8.

## PART 6
## RECURRENT AND CONCURRENT DISABILITY

### 6.1    RECURRENT DISABILITY

*What if a disability reoccurs?*

If after the end of a Disability You become Disabled from the same or related causes, We will deem it a separate Disability. But if such recurrence occurs within 12 months of the end of the prior period, We will deem it a continuation of the prior Disability.

Such periods of recurrent Disability separated by 12 months or less will be deemed to be continuing in order to determine the Commencement Date and the Maximum Benefit Period.

### 6.2    CONCURRENT DISABILITY

*What if a disability is due to more than one cause?*

If a Disability is caused by more than one Injury or Sickness, or from both, We will pay benefits as if the Disability was caused by only one Injury or Sickness.

We will not pay more than one Disability benefit for the same period. We will always pay the largest benefit.

990                                      -13-

Claimant Name:  Jeffrey J Sabin      Claim #:   18451825

PRL-CL-IDI-000188
**EXHIBIT 6**

## PART 7
## RENEWAL OPTION IF EMPLOYED. TOTAL DISABILITY BENEFIT — LIMITED BENEFIT PERIOD

### 7.1    RENEWAL OPTION

After Your 65th birthday You may continue Your Policy for the Total Disability benefit while:

    a.   You remain actively and regularly employed full time for at least 30 hours per week; and

    b.   The premium is paid on time.

We can require proof after Your 65th birthday that You have continued to be actively and regularly employed full time.

You cannot elect this option after the RENEWAL OPTION IF NOT EMPLOYED. HOSPITAL CONFINEMENT INDEMNITY BENEFIT in PART 8 becomes effective.

The Policy must be in force when You elect this option.

*Can the Policy be renewed after age 65 if You are still working?*

### 7.2    TOTAL DISABILITY BENEFIT — LIMITED BENEFIT PERIOD

If You elect this option, We will pay the Total Disability amount subject to the same provisions, exceptions, and limitations in the Policy.

For Total Disability starting:

a.   After Your 65th birthday, but before Your 75th birthday, the Maximum Benefit Period will be 24 months or the period shown on the Policy Schedule if less; and

b.   After Your 75th birthday, the Maximum Benefit Period will be 12 months.

*How will the benefit period be limited?*

### 7.3    PREMIUMS

The premium will be the rate then in effect for Your rating group.  We can change the premium rate but only if We change the rate for everyone who has this policy form in Your rating group in Your state.

Any premium paid after Your 65th birthday for a period not covered by Your Policy under this option will be returned to You. Or at Your request, We will apply it to the premium payable under the RENEWAL OPTION IF NOT EMPLOYED. HOSPITAL CONFINEMENT INDEMNITY BENEFIT in PART 8.

*What will the premium be?*

990                       -14-                      91-1

Claimant Name:  Jeffrey J Sabin       Claim #:   18451825

PRL-CL-IDI-000189
**EXHIBIT 6**

## PART 8
## RENEWAL OPTION IF NOT EMPLOYED.
## HOSPITAL CONFINEMENT INDEMNITY BENEFIT

### 8.1   RENEWAL OPTION

*Can the Policy be renewed after age 65 if not working?*

When You are no longer actively and regularly employed after Your 65th birthday You may continue Your Policy for the rest of Your life, as long as the premium is paid on time. The benefit will be limited to a Hospital Confinement Indemnity. This benefit will take the place of all other benefits under Your Policy and, unless We state otherwise, any benefits under riders added to the Policy.

The Policy must be in force when You elect this option.

### 8.2   HOSPITAL CONFINEMENT INDEMNITY BENEFIT

*What will the benefit be?*

If You elect this option, We will pay You a Hospital Confinement Indemnity of 100 dollars per day while You are confined in a legally operated hospital because of Injury or Sickness.

This benefit will begin on the date You are confined. We will continue to pay it while You are confined. But We will not pay for more than 6 months during each continuous confinement.

For the purpose of this benefit, after a period of confinement ends and You are confined again from the same or related cause within 180 days, We will consider it to be a continuation of the first confinement.

For the purpose of this benefit, "hospital" will <u>not</u> mean:

    a.  A place of convalescence, nursing home care, or care for the aged; or

    b.  A place for the care or treatment of mental disorders, drug addiction, or alcoholism; or

    c.  A place that is used primarily for custodial, educational, or rehabilitative care.

### 8.3   EXCEPTIONS

*What other Policy provisions will change?*

Under this option, the Waiver of Premium, the Recurrent Disability, and Benefit provisions of the Policy will not apply. However, all of the other provisions, exceptions, and limitations in the Policy will apply.

### 8.4   PREMIUMS

*What will the premium be?*

The premium will be the rate then in effect for Your rating group. We can change the premium rate but only if We change the rate for everyone who has the policy form in Your rating group in Your state.

990

-15-

PRL-CL-IDI-000190
**EXHIBIT 6**

## PART 9
## CLAIMS

### 9.1    TIME OF LOSS

All losses must occur while Your Policy is in force. But, termination of Your Policy will not affect any claim for Total Disability that begins within 30 days of the date of an Injury causing such Disability.

*When must losses occur?*

### 9.2    WRITTEN NOTICE OF CLAIM

Written notice of claim must be given to Us within 30 days after a covered loss starts. If this cannot be done, then notice must be given as soon as reasonably possible.

The notice will be sufficient if it identifies You and is sent to Our Home Office, 18 Chestnut Street, Worcester, Massachusetts 01608, or is given to Our agent.

*When must written notice be given?*

### 9.3    CLAIM FORMS

After We receive the written notice of claim, We will send You Our proof of loss forms within 15 days. If We do not, You will meet the written proof of loss requirements if You send Us, within the time set forth below, a written statement of the nature and extent of Your loss.

*Is there a form for proof of loss?*

### 9.4    WRITTEN PROOF OF LOSS

Written proof of loss must be sent to Us within 90 days after the end of each period for which You are claiming benefits. If that is not reasonably possible, Your claim will not be affected. But, unless You are legally incapacitated, written proof must be given within one year of the date it was required.

We can also require reasonable proof from You of Your:

a.    Prior Earnings; and
b.    Monthly Earnings for the month for which Disability is claimed.

This may include personal and business tax returns filed with the Internal Revenue Service, financial statements, accountant's statements or other proof acceptable to Us or which We may require. We can have an audit performed as often as is reasonably required while Your claim is continuing. Such an audit will be at Our expense.

*What types of proof of loss might be required?*

### 9.5    EXAMINATIONS

At Our expense, We can have a Physician of Our choice examine You as often as reasonably required while Your claim is continuing.

*Can there be an independent exam performed?*

### 9.6    TIME OF PAYMENT OF CLAIMS

After We receive satisfactory written proof of loss:

a.    We will pay any benefits then due that are not payable periodically; and
b.    We will pay at the end of each 30 days any benefits due that are payable periodically — subject to continuing proof of loss.

*When will benefits be paid?*

990                                    -16-                                    91-1

## EXHIBIT 6

*To whom will
benefits be paid?*

*When must notice of
an assignment
be sent?*

*What if there is a
misstatement of age?*

*Can the Policy
be changed?*

*For how long is the
Policy contestable?*

*What if the Policy
differs with state
requirements?*

*When can legal action
be brought under
this Policy?*

### 9.7   PAYMENT OF CLAIMS

All benefits will be paid to the Policy Owner named on the Policy Schedule. If any benefit is payable to Your estate or if You are not competent to give a valid release, We can pay up to 1,000 dollars to one of Your relatives who We believe is entitled to it.  If We do that in good faith, We will not be liable to anyone for the amount We pay.

### 9.8   ASSIGNMENT

We will not be bound by an assignment of Your Policy or any claim unless We receive a written assignment at Our Home Office before We pay the benefits claimed. We will not be responsible for the validity of any assignment. An absolute assignment is a change of Policy Owner to the assignee. A collateral assignment is not a change of Policy Owner; in this case benefits will be paid jointly to the Policy Owner and the assignee.

### 9.9   MISSTATEMENT OF AGE

If Your age has been misstated, the benefits under the Policy will be those that the premium You paid would have purchased at Your correct age.

## PART 10
## THE CONTRACT

### 10.1   ENTIRE CONTRACT; CHANGES

This Policy (with the application and attached papers) is the entire contract between You and Us.  No change in this Policy will be effective until approved by a Company officer.  This approval must be noted on or attached to this Policy.  No agent may change this Policy or waive any of its provisions.

### 10.2   INCONTESTABLE

   a.   After Your Policy has been in force for 2 years, excluding any time You are Disabled, We cannot contest the statements in the application.

   b.   No claim for loss incurred or Disability that starts after 2 years from the Date of Issue will be reduced or denied because a sickness or physical condition not excluded by name or specific description before the date of loss had existed before the Date of Issue.

### 10.3   CONFORMITY WITH STATE STATUTES

Any provision in this Policy which, on its Date of Issue, conflicts  with the laws of the state in which You reside on that date is amended to meet the minimum requirements of such laws.

### 10.4   LEGAL ACTION

You cannot bring legal action within 60 days from the date written proof of loss is given. You cannot bring it after 3 years from the date written proof of loss is required.

990                                                      -17-

Claimant Name:  Jeffrey J Sabin      Claim #:   18451825

PRL-CL-IDI-000192
**EXHIBIT 6**

## COST OF LIVING ADJUSTED BENEFIT RIDER — TOTAL OR RESIDUAL DISABILITY

### Adjustments Begin After the Twelfth Month of Disability

This rider provides a COLA Benefit to the Policy to which it is added.

**DEFINITIONS**

In this rider:

"CPI" means the Consumer Price Index for All Urban Consumers. It is published by the United States Department of Labor. If this index is discontinued or if the method for computing it is materially changed, We may choose another index. We will choose an index which in our opinion would most accurately reflect the rate of change in the cost of living in the United States. CPI will then mean the index We chose.

"Review Date" means the date that occurs:
1. After each successive twelve-month period of continuous Disability; and
2. While Your Disability continues.

No Review Date will occur beyond the later of:
1. Your 65th birthday; or
2. The second Review Date, if Your Disability begins after Your 63rd birthday.

"Review Period" means the twelve months of Disability ending just prior to each Review Date.

"Index Month" means the calendar month four months prior to the calendar month in which a Review Date occurs. But the first Index Month for any Disability will be the calendar month four months prior to the month in which Your Disability began.

"COLA Factor" is used to determine the COLA benefit. It equals $\frac{A-B}{B}$.

"A" is the CPI for the most recent Index Month.
"B" is the CPI for the first Index Month.

A COLA Factor is determined as of each Review Date while Disability continues.

"Maximum Percentage" is 4%. You have the right to increase it to 10% as described in the Percentage Increase Option section below.

"Monthly Benefit for Total Disability" means the sum of the monthly amounts payable at a given time, for the Total Disability benefit. This includes any Supplemental Social Insurance Benefit rider that may be added to Your Policy.

These amounts are shown on Your Policy Schedule. This rider does not change them. They are the amounts to which this rider applies a cost of living adjustment.

H1104

87-6

Claimant Name: Jeffrey J Sabin        Claim #:   18451825

PRL-CL-IDI-000193
**EXHIBIT 6**

**COLA BENEFIT**

<mark>Starting as of the first Review Date, We will pay a COLA Benefit if You are Disabled. This benefit is added to Your other Policy benefits.</mark>

If You are Totally Disabled, this benefit is determined by multiplying the Monthly Benefit for Total Disability by the COLA Factor. But the COLA Benefit cannot:

1. Exceed the Monthly Benefit for Total Disability times a percentage factor equal to the completed number of Review Periods multiplied by the Maximum Percentage; or
2. Be less than the amount of the Monthly Benefit for Total Disability times a percentage factor equal to the completed number of Review Periods multiplied by 4%.

If You are Residually Disabled, the COLA Benefit will be determined as above except that We will use the Monthly Benefit for Residual Disability instead of the Monthly Benefit for Total Disability.

**BENEFIT PURCHASE OPTION**

You may purchase the COLA Benefit described above. This does not apply to Benefits provided under any Supplemental Social Insurance Benefit Rider that may be added to Your Policy.

This new Benefit will be added to Your coverage. It will apply only to new Disabilities which start after the effective date of the new Benefit.

The right to purchase this Benefit is subject to the following:

1. You have returned to gainful, full-time employment after the end of a period of Disability during which a COLA Benefit was paid; and

2. You have not attained age 60; and

3. You have requested this Benefit within 90 days from the end of the Disability for which You received the COLA Benefit.

These are the only requirements.

The new Benefit will take effect within 31 days after We receive Your request.

The Premium for this new Benefit will be based on Your attained age. We will use the Premium rates then in effect. The additional Premium must be paid within 31 days of the effective date. Later premiums for this new benefit must be paid as part of the renewal Premiums for this Policy.

This new Benefit will not be paid if You are receiving benefits under the Recurrent Disability provisions of Your Policy.

If You do not purchase this Benefit, Your benefit amounts will revert to the original amounts for new periods of Disability.

**MAXIMUM PERCENTAGE INCREASE OPTION**

You have the right to increase the Maximum Percentage to 7% or 10%. You may do this, without submitting evidence of insurability, by following the rules set forth below.

You may increase the Maximum Percentage on the Option Dates of Your choice. Option Date means each anniversary of the Date of Issue of the Policy starting with the first and ending with the anniversary which falls on or next follows Your 60th birthday.

The request for an increase must be made within an Option Period. Option Period means the period which begins 60 days before and ends 31 days after an Option Date. The request must be a dated written request signed by You. An increase will be effective: (a) on the Option Date if Your request is made before that date; or (b) on the date of Your request if it is made within 31 days after the Option Date.

You can request an increase during any Option Period even if you are disabled, but the increase will apply only to a period of disability which starts after the effective date of the increase. It must qualify as a separate Disability.

The first premium for an increase must be paid within 31 days after the effective date of the increase. Later premiums must be paid as part of the Policy Premium. If the premium for the policy is being waived (see Waiver of Premium provision) on the effective date of the increase, you will not have to start paying the premium for the increase until the premium for your policy becomes payable again.

The premium for this rider will increase if You raise the Maximum Percentage. The added premium will be based on: a) the change in the Maximum Percentage; b) Your attained age; and c) Our premium rates then in effect at the time of the increase.

**EXPIRATION DATE FOR MAXIMUM PERCENTAGE INCREASE OPTION**

This Option will expire on the earlier of: (a) the date when the Maximum Percentage is 10%; or (b) the date when the last Option Period ends.

**GENERAL**

All provisions of Your Policy remain the same except where We change them by this rider.

This rider will end:

1. When the Policy ends; or
2. On Your 65th birthday,

whichever happens first.

The premium charge for this rider will end when this rider ends. The annual premium for this rider is shown on the Policy Schedule.

The Date of Issue of this rider is the same as that of Your Policy. If We issued this rider after Your Policy, the Date of Issue is shown below.

Signed for Us at Worcester, Massachusetts.

THE PAUL REVERE LIFE INSURANCE COMPANY

Secretary                    President and CEO

Claimant Name: Jeffrey J Sabin     Claim #:  18451825

PRL-CL-IDI-000195
**EXHIBIT 6**

## LIFETIME TOTAL DISABILITY BENEFIT RIDER

This rider provides a Lifetime Total Disability benefit.

### LIFETIME BENEFIT AFTER AGE 65

We will pay this benefit during Your continuous Total Disability if:

1. The Total Disability begins before age 65; and
2. The Total Disability continues until age 65; and
3. The benefits under the Policy to which this rider is added have been paid during Your Total Disability.

This benefit will start to pay on the later of: (a) Your 65th birthday; or (b) the date the Total Disability benefit payable under Your Policy ends. We will pay it while You remain Totally Disabled for as long as You live.

### FOR INJURY

For Total Disability due to Injury, the monthly amount We will pay will be the amount shown on the Policy Schedule. Any Cost of Living benefit rider added to Your Policy shall apply to this amount.

### FOR SICKNESS

For Total Disability due to Sickness, the monthly amount We will pay will be based on the amount shown on the Policy Schedule. Any Cost of Living benefit rider added to Your Policy shall apply to this amount. The amount shown on the Policy Schedule plus any Cost of Living increase that applies to this rider shall be multiplied by a factor. The factor to be used will be based on Your age at the start of Total Disability which continues until age 65.

#### Factors by age for Total Disability due to Sickness

| | |
|---|---|
| 1.0 for 55 or less | .5 for 60 |
| .9 for 56 | .4 for 61 |
| .8 for 57 | .3 for 62 |
| .7 for 58 | .2 for 63 |
| .6 for 59 | .1 for 64 |

If a larger amount is payable under this Policy for the same period, the larger benefit will be payable in lieu of this benefit.

### GENERAL

This rider will end:

1. At the same time the Policy ends; or
2. On Your 65th birthday.

whichever happens first.

All definitions in Your Policy apply to this rider. All provisions of Your Policy stay the same except where We change them by this rider.

The annual premium for this rider is shown on the Policy Schedule.

The Date of Issue of this rider is the same as that of Your Policy. If We issued this rider after Your Policy, the Date of Issue is shown below.

Signed for Us at Worcester, Massachusetts.

THE PAUL REVERE LIFE INSURANCE COMPANY

Secretary          President and CEO

H858                                                                                                          88-9

## ASSOCIATION DUES BENEFIT RIDER

This policy is issued under a program sponsored by the association on file in Our Home Office.

We will repay dues payments You make to this association up to the amount stated on the Policy Schedule.

This benefit will be paid when You provide Us with proof of payment to this association.

This benefit will be paid for unreimbursed dues payments You make for a period beginning after 90 days of Total Disability. It is payable annually while You continue to receive Total Disability payments.

This Rider is effective on the Date of Issue of this Rider. The Date of Issue of this Rider is the same as that of Your Policy. If We issue this Rider after Your Policy, it is effective on the date shown on the Policy Change form issued with this Rider.

THE PAUL REVERE LIFE INSURANCE COMPANY

Secretary                    President and CEO

H874                                                                                            91-1

---

Claimant Name:  Jeffrey J Sabin      Claim #:   18451825

PRL-CL-IDI-000197
**EXHIBIT 6**

> ## SUMMARY OF THE LIFE AND HEALTH INSURANCE PROTECTION ASSOCIATION ACT
> ## AND NOTICE CONCERNING COVERAGE LIMITATIONS AND EXCLUSIONS

## INTRODUCTION

Residents of Colorado who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Life and Health Insurance Protection Association. The purpose of this Association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations.  If this should happen, the Association will assess it other member insurance companies for the money to pay the claims of insured persons who live in Colorado and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Association is limited, however. As noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

---

### IMPORTANT DISCLAIMER

The Life and Health Insurance Protection Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require residency in Colorado. You should not rely on coverage by the Life and Health Insurance Protection Association in selecting an insurance company or in selecting an insurance policy.

Coverage is **NOT** provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk.

Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the association to induce you to purchase any kind of insurance policy.

---

### SUMMARY

The state law that provides for this saftey-net coverage is called the Life and Health Insurance Protection Association Act. Below is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the Association.

**Coverage.**  Generally, individuals will be protected by the Life and Health Insurance Protection Association if they live in this state and hold a life or health insurance contract, or an annuity, or if they hold certificates under a group life or health insurance contract or annuity, issued by a member insurer. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

(Continued on Reverse Side)

---

This Information is Provided by:

Life and Health Insurance Protection Association
P.O. Box 480025
Denver, Colorado  80248-0025
(303) 292-5022

Colorado Division of Insurance
1560 Broadway, Suite 850
Denver, Colorado  80202
(303) 894-7499

---

M995

09-01

---

*Claimant Name:  Jeffrey J Sabin      Claim #:   18451825*

PRL-CL-IDI-000198
**EXHIBIT 6**

**Exclusions from Coverage**

Persons holding such policies or contracts are **not** protected by this Association if:

- they are not residents of the State of Colorado, except under certain very specific circumstances;
- the insurer was not authorized or licensed to do business in Colorado at the time the policy or contract was issued;
- their policy was issued by a nonprofit hospital or health service corporation (e.g., the "Blues"), an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policyholder is subject to future assessments, or by an insurance exchange.

The Association also does **not** provide coverage for:

- any policy or any portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk;
- any policy of reinsurance (unless an assumption certificate was issued);
- plans of employers, associations or similar entities to the extent they are self-funded or uninsured (that is, not insured by an insurance company, even if an insurance company administers them);
- interest rates yields, crediting rate yields or other factors employed in calculating returns, including but not limited to indexes or other external references stated in the policy or contract, that exceed an average rate specified in the Association Act;
- dividends;
- experience rating credits;
- credits given in connection with the administration of a policy or contract;
- any unallocated annuities;
- annuity contracts or group annuity certificates used by nonprofit insurance companies to provide retirement benefits for nonprofit educational institutions and their employees;
- policies, contracts, certificates or subscriber agreements issued by a prepaid dental care plan;
- sickness and accident insurance when written by a property and casualty insurer as part of an automobile insurance contract;
- unallocated annuity contracts issued to an employee benefit plan protected under the federal Pension Benefit Guaranty Corporation;
- policies or contracts issued by an insurer which was insolvent or unable to fulfill its contractual obligations as of July 1, 1991, except for annuity contracts issued by a member insurer which was placed into liquidation between July 1, 1991 and August 31, 1991;
- policies or contracts covering persons who are not citizens or permanent residents of the United States;
- any kind of insurance or annuity, the benefits of which are exclusively payable or determined by a separate account required by the terms of such insurance policy or annuity maintained by the insurer or by a separate entity.

**Limits on Amount of Coverage**

The act also limits the amount the Assocation is obligated to pay out.  The Association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, no matter how many policies or contracts were issued by the same company, even if such contracts provide different types of coverages, the Association will pay a maximum of:

- $300,000 in net life insurance death benefits and no more than $100,000 in net cash surrender and net cash withdrawal values for life insurance;
- for health insurance benefits - $100,000 for coverages not defined as disability, basic hospital, medical and surgical, or major medical insurance, including any net cash surrender and net cash withdrawal values; $300,000 for disability insurance; or $500,000 for basic hospital, medical and surgical, or major medical insurance;
- $100,000 in the present value of annuity benefits, including net cash surrender and net cash withdrawal values;
- with respect to each payee of a structured settlement annuity, $100,000 in present value annuity benefits, in the aggregate, including net cash surrender and net cash withdrawal values.

The Association shall not be liable to expend more than $300,000 in the aggregate, with respect to any one life except that with respect to benefits for basic hospital, medical and surgical and major medical insurance, the aggregate liability of the Association shall not exceed $500,000 with respect to any one individual.

M995                                                                                                          09-01

*Claimant Name:  Jeffrey J Sabin       Claim #:   18451825*

PRL-CL-IDI-000199

**EXHIBIT 6**



Dear Policyholder:

In the event that you become disabled and wish to file a claim with our company, please complete this form and return it to us within 30 days from the commencement of your disability. When this notice is received, we will send you the appropriate claim form.

-Policy Number(s) _____

-I have been -Totally disabled from_____ to _____

          -Partially disabled from _____ to _____

-Diagnosis or cause of disability _____

-Have you ever been disabled from this condition before? Dates? _____

-If hospitalized-name and address of hospital(s)        -Name and Address of Attending Physician(s)

_____     _____

_____     _____

_____     _____

Date of Admission(s) _____

### DISCLOSURE AUTHORIZATION

Insured's Name (Please Print) _____

I AUTHORIZE: any doctor, health care practitioner, hospital, clinic, other medical facility or provider of health care, insurer or reinsurer, consumer reporting agency, insurance support organization, Insured's agent, employer, family members, friends, neighbors or associates, the Social Security Administration or any other organization or person having any knowledge of me or my health to give The Paul Revere Life Insurance Company or its employees and agents, Insured's agent, or any consumer reporting agency any information i) as to cause, treatment, or advice of my physical or mental condition; or ii) otherwise needed to determine policy claim benefits with respect to Insured. This may include (but is not limited to): driving records, mental illness and use of alcohol or drugs.

I AUTHORIZE: The Paul Revere Life Insurance Company to request a report from the Medical Information Bureau (MIB), which is an association of life insurance companies that operates the Health Claim Index (HCI) for subscriber insurers. An HCI report contains the date(s) of past or present claims filed by me and the names of the companies but does not contain medical or other personal information. I understand The Paul Revere Life Insurance Company will report to MIB the date(s) of any past or present claims filed by me.

I AGREE: the information obtained with this Form may be used by Paul Revere to determine policy claim benefits with respect to Insured. A photo copy of this Form is as valid as the original and I may request one. This Form will be in force for the term of coverage of the policy up to one year from the date shown below. I may revoke it at any time for information not then obtained by writing to Paul Revere.

Date: _____    Claimant's Signature: _____

                                  (Insured or Insured's authorized representative)

Address _____

        (Street and Number)        (City)    (State)    (Zip Code)

**Please mail Notice of Claim form to:**
**Unum, Customer Care Center, PO Box 15112, Worcester, MA 01615-0    112**

UNUM
1 Mercantile Street, Worcester, Massachusetts 01608
508.799.4441

*Claimant Name: Jeffrey J Sabin*    *Claim #:  18451825*

# EXHIBIT 6

APPLICATION FOR
DISABILITY INSURANCE TO:

**THE PAUL REVERE LIFE INSURANCE COMPANY**

WORCESTER, MA 01608

№ 10730

| | | | | |
|---|---|---|---|---|
| 1a. Name (Print): Sabin | | Jeffrey | J | M.D. |

b. Soc. Sec. # _____   c. Ht. 6'0"   d. Wt. 180   e. Sex M ☒ F ☐   f. Birthdate: 6-29-56

g. Age (nearest): _____   h. Birthplace (State) OH   i. If not U.S., length of U.S. residence: N/A

j. Residence Address: 2 White Fir Ct.   Littleton   CO   80127   (303) 979-1227

k. Business Address 1630 Carr   Lakewood   CO   80218   (303) 232-1111

2a. Occupation: Orthopaedic Surgeon - Spine spec.   b. Employer: Colorado Orthopedic Clinic PC

c. Exact duties: Surgery of the spine / surgical spine fellowship - 1 year Univ. of CO

d. Length of current employment: 6 yrs   e. Nature of Employer's business: Medical Practice

f. If owner, percentage owned: 20%   Length of Ownership: 10 months   # full-time employees: 20

g. Type of Business Entity:   Sole Proprietor ☐   Partnership ☐   C-Corporation ☒   S-Corporation ☐

3. Have you within the past 2 years engaged in motorcycle riding, scuba diving, racing, karate, parachuting, aviation, gliding or any similar sport or avocation?   Yes ☐   No ☒   If "yes" give details: _____

4. Have you smoked cigarettes in the past 12 months? Yes ☐   No ☒   Used any other forms of tobacco?   Yes ☐   No ☒
   If "yes," explain form of tobacco used _____

5. Have you been actively at work full-time for the past 6 months?   Yes ☒   No ☐
   If "No," give details: _____

Questions 6, 7 and 8 need not be answered if a Paul Revere Medical Exam is required.

6. Have you ever been treated for or had any known indication of: (Circle all conditions that apply and give details below)
   a. Chest pain, high blood pressure, arthritis, diabetes, cancer, tumor, fainting spells, chronic fatigue, Chronic Fatigue Syndrome or Epstein-Barr Virus?   Yes ☐   No ☐
   b. Mental or emotional disorder, stress, anxiety or depression?   Yes ☐   No ☐
   c. Disease or disorder of the heart or circulatory system, lungs, kidneys, stomach, intestines, liver, thyroid, bladder, genital or reproductive organs, brain or nervous system, skin, eyes, ears or speech?   Yes ☐   No ☐
   d. Disease or disorder, injury, strain or sprain involving the bones, joints, muscles, ligaments, knees, back or neck?   Yes ☐   No ☐
   e. Complications of pregnancy including miscarriage, preeclampsia, or cesarean section?   Yes ☐   No ☐
   Are you currently pregnant?   Yes ☐   No ☐   Due Date _____

7. a. Within the past 5 years, have you ever been treated for or had any known indication of having Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC)?   Yes ☐   No ☐
   b. Within the past 5 years, have you tested positively for antibodies to HIV Virus?   Yes ☐   No ☐

8. In the past 5 years, have you had any medical advice or operation, physical exam, treatment, illness, abnormality, injury or seen a therapist, counselor, psychologist, psychiatrist, chiropractor, or health practitioner not listed above?   Yes ☐   No ☐
   Are you currently receiving any medical advice or treatment?   Yes ☐   No ☐

9. Have you ever used stimulants, hallucinogens, narcotics or any controlled substance other than prescribed by a physician, or been counseled or treated for excess use of alcohol or drugs?   Yes ☐   No ☒

10. Give details to all "Yes" answers to 6, 7 or 8. Include exact diagnoses, dates, durations, treating practitioners and addresses.

_____

11. In the past 5 years have you had any insurance application rejected or modified or received or been refused any disability or medical benefits?   Yes ☐   No ☒   If "yes" give details: _____

| For questions 12, 13, and 14, complete only appropriate section(s) based on amounts as reported on your Federal Income Tax returns. | Actual Current Annual Rate 1994 | Actual Last Year 19 93 | Actual 2 Years Ago 19 92 |
|---|---|---|---|
| 12. IF non-owner employee (W-2) | | | |
| a. Gross salary including bonus minus expenses on IRS form 2106 | $ | $ | $ 151253 |
| 13. IF sole proprietor or partner (Schedule C, or Form 1065) | | | |
| a. Proportionate share of gross business revenue | $ | $ | $ |
| b. Proportionate share of deductible business expenses (must enter an amount) | $ | $ | $ |
| c. Your net income (a–b) | $ | $ | $ |
| 14. IF shareholder employee with 10% or more ownership of regular or S corp. (W-2, 1120, or 1120S) | | | |
| a. Gross salary including bonus | $ 607822 | $ 400070 | $ |
| b. Pension and profit sharing contributions | $ 30,000 | $ | $ |
| c. Proportionate share of corporate net profits or losses | $ | $ | $ |
| d. Total (a+b+c) | $ 637822 | $ 400070 | $ |
| 15. IF more than one of above sections are completed, enter total insurable net income | $ | $ | $ |

App 64.1 CO

93-5

Claimant Name:  Jeffrey J Sabin        Claim #:   18451825

PRL-CL-IDI-000201
**EXHIBIT 6**

16. Is net worth (assets minus liabilities) more than $3,000,000?   Yes ☐   No ☑   If "Yes," specify amount _____

17. Is unearned income (interest, dividends, capital gains, rent, etc.) more than $30,000 per year?   Yes ☐   No ☑
If "Yes," specify amount _____.

18. Describe all disability coverage in force, and all coverage applied for in the past 12 months. Indicate if it is: A) Individual, B) Social Security Substitute, C) Association, D) Group, E) Salary Continuation, F) Overhead Expense, or G) Buy-Out. If none, write "none."

| Company or Source (including Paul Revere) give Pol. # If pending, check ↴ | | Type (A,B,C, etc.) | Monthly Amount | Elim. Period | Benefit Period | Will coverage be Replaced ☐ Changed ☐ or Madeover ☐? | | Effective Date of Discontinuance |
|---|---|---|---|---|---|---|---|---|
| CML | | A | 6150 | 60 | L/L | Yes ☒ | No ☐ | 4-20-94 |
| | | | | | | Yes ☐ | No ☐ | |
| | | | | | | Yes ☐ | No ☐ | |
| | | | | | | Yes ☐ | No ☐ | |

19. Describe Coverage Being Requested (if BOE, complete supplement):

| Plan Code: 990 | Monthly Amt. | Elim. Period | Benefit Period | Form # | Optional Benefits Amount | Form # | Amount |
|---|---|---|---|---|---|---|---|
| Base | 15,080 | 90 | 65 | 1104 | 15080 | | |
| AMI | | | | 858 | 15000 | | |
| AMI | | | | 874 - A exx. Dues | | Own Occ Y | FIO Q |
| SSIB | | | | | | AIB Q % | |

a. Will this case be part of a Paul Revere combination group/individual purchase?  No ☒  Yes: PRISM 2+ ☐   LTD 2000 ☐   LTD ☐

20. a. Will requested coverage be paid for by employer?  Yes ☐  No ☒  If "yes" how much? _____ %
Will employer's contribution be included in your taxable income?  Yes ☐  No ☐ N/A

b. List name and address of proposed owner if other than proposed insured _____
↳ Attn: Jim Sabin _____

c. Send notices to:  Residence ☐  Business ☒   d. Collected with this application in exchange for Conditional Receipt: $ Q ____

### CORRECTIONS AND AMENDMENTS (For Home Office Use Only)

age 38
_____

It is understood and agreed as follows:

(1) I have read the statements and answers recorded above. They are to the best of my knowledge and belief, true and complete and correctly recorded. They will become part of this Application and the basis for any policy issued on it.

(2) I will permanently discontinue all policies shown to be discontinued in answer to question 18 on or before the dates indicated. If not, benefits under any policy issued on this application may be reduced by the amount payable under such existing policies.

(3) No agent or broker has authority to waive the answer to any question, to determine insurability, to waive any of the Company's rights or requirements, or to make or alter any contract or policy.

(4) The insurance applied for will not take effect unless the issuance and delivery of the policy and payment of the first premium occur while the health of the Proposed Insured remains as stated in the Application. The only exception to this is the insurance provided in the Conditional Receipt detached herefrom and issued if at least the Minimum Deposit is made with the Application.

(5) Acceptance by the Proposed Insured/Owner of any policy issued on this Application will ratify any changes listed under "Corrections and Amendments."

(6) I have received a copy of the Medical Information Bureau, Inc. Pre-Notice.

If this application is being used to request Prism 2+/LTD 2000 coverage, then it is also understood and agreed as follows:

(1) Group insurance applied for will not be in force until this application and the Group plan are approved by The Paul Revere.

(2) If I am absent from work due to an accident or illness at the time my insurance would otherwise become effective, I understand that my insurance will not become effective until I return to work. This application must be signed and dated prior to the requested effective date of my Prism 2+/LTD 2000 Group coverage.

(3) I certify that I am employed by the employer named in this form and that I am working for that employer at least thirty hours per week.

Signed at _____ Lakewood CO _____   Date _____ April 4 _____ 19 94

I certify that I have truly and accurately recorded on this application the information supplied by the Proposed Insured.

X _____ Signature of Proposed Insured

Witness _____ W. _____

Licensed Agent or Broker For: FINANCIAL DESIGNS, LTD.

X _____ Signature of Proposed Owner (if applicable)

Applicants will be informed whether or not their application has been accepted within 60 days or be given the reason for any further delay.

PAGE 2

---

Claimant Name:  Jeffrey J Sabin       Claim #:   18451825

**EXHIBIT 6**

MEDICAL APPLICATION

WORCESTER, MA 01608

**PART 2**    THE PAUL REVERE LIFE
INSURANCE COMPANY

THE PAUL REVERE PROTECTIVE
LIFE INSURANCE COMPANY

THE PAUL REVERE VARIABLE
ANNUITY INSURANCE COMPANY

| 1. NAME | | | 2. Birthdate | 3. Birthplace |
|---|---|---|---|---|
| | Last | Sabin | 06 29 56 | OH |
| | First / Middle | Jeffrey | Mo Day Yr | (State) |

4. Residence: Street 2 White First Ct   Apt #_____   5. Occupation Orthropedic Spine Surgeon
City Littleton   State CO   Zip 80127   Duties Spine Surgery

6. Name(s) and address(es) of personal physician(s) or health care facility(ies). If none, write "none".

Gerald Brown    (303) 979-1234
6169 S. Balsam Way #24 Littleton, Co

7. Date and reason for last consultation. Never Seen

8. Is Proposed Insured presently under observation or treatment or taking medication?   Yes☐   No☒   If "Yes", give details.

| 9. Family History | Age if Living | Age at Death | Cause of Death |
|---|---|---|---|
| Father | 61 | | |
| Mother | 59 | | |
| 4 Brothers 2 & Sisters | 35, 33, 31, 31, 4 32 27 | | |

10. Has any family member ever had a stroke or diabetes, cancer, high blood pressure, heart or kidney disease, mental illness, or committed suicide?   Yes ☐   No ☒
If "Yes", give details.

| 11. Have you, *within the past 5 years:* | Yes | No | Details of "Yes" answers. Identify question number. Circle applicable items. Include diagnosis, dates, duration and current status. List names and addresses of all attending physicians and medical facilities. |
|---|---|---|---|
| a. Been examined by or consulted a physician or other practitioner? | ☐ | ☒ | |
| b. Been under observation or treatment in any hospital, sanitarium, or institution? | ☐ | ☒ | |
| c. Had an X-ray, EKG, blood or urine test, or other lab tests? | ☐ | ☒ | |
| **12.** Have you *ever:* | | | |
| a. Except as legally prescribed by a physician, used: cocaine, barbiturates, heroin, or any narcotic drug? | ☐ | ☒ | |
| b. Sought or received advice for, or treatment of, or been arrested for the use of alcohol, marijuana or drugs? | ☐ | ☒ | |
| c. Been rejected for or given medical discharge from military, naval, or air service? | ☐ | ☒ | |
| **13.** Are you pregnant? If"Yes", what is due date?   N A | ☐ | ☐ | |
| **14.** Has your weight changed *within the past year?* | ☐ | ☒ | |

K946083

All question OK however no medical history was revealed

| 15. Have you *ever* had any known indication of or been treated for: | Yes | No | Details of "Yes" answers. Identify question number. Circle applicable items. Include diagnosis, dates, duration and current status. List names and addresses of all attending physicians and medical facilities. |
|---|---|---|---|
| a. Any disease or impairment of eyes, ears, nose or speech? | ☐ | ☒ | |
| b. Any type of back or spinal trouble, including sprain or strain? | ☐ | ☒ | |
| c. Chest pain, heart murmur, high blood pressure, or any disease of the heart, blood vessels, or blood? | ☐ | ☒ | |
| d. Peptic ulcer, indigestion, or any disease of the stomach, intestines, gall bladder, or liver? | ☐ | ☒ | |
| e. Tuberculosis, asthma, pleurisy, or any disease of the chest or lungs? | ☐ | ☒ | |
| f. Kidney stone, albumin, pus, blood or sugar in urine, or any disease of the kidneys, bladder, or genital organs? | ☐ | ☒ | |
| g. Headaches, fainting spells, epilepsy, paralysis, nervousness, mental disorder, or any disease of the brain or nervous system? | ☐ | ☒ | |
| h. Rheumatic fever, syphilis, gout, arthritis, thyroid disease, diabetes, cancer, or tumor? | ☐ | ☒ | |
| i. Allergies or any disease of the skin? | ☐ | ☒ | |
| j. Any disease of the reproductive organs or breast? | ☐ | ☒ | |
| k. Any amputation or deformity, hernia or rupture, hemorrhoids or varicose veins? | ☐ | ☒ | |
| 16. Have you had any surgical operation, treatment, special diet, or any illness, ailment, abnormality, or injury, not mentioned above, *within the past five years?* | ☐ | ☒ | |

I have read the statements and answers made above. They are, to the best of my knowledge and belief, true and complete and correctly recorded. I understand that they will become a part of my application for insurance and any policy issued on it.

Signed at ___Lakewood   CO___   Date ___April   8th___   19 94

Witness ___Saundra   Mairs NCHA___   X _____ Person Examined

### COMPLETE IN ALL CASES — AUTHORIZATION FOR INFORMATION

I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically-related facility, insurance company, MIB, Inc. or other organization, institution or person, that has any records or knowledge of me or my health, to give to The Paul Revere Life Insurance Co., The Paul Revere Protective Life Insurance Co., The Paul Revere Variable Annuity Insurance Co., and/or their reinsurers any such information. To facilitate rapid submission of such information, I authorize all said sources, except MIB, Inc., to give such records or knowledge to Equifax Services, The Hooper-Holmes Bureau, or American Service Bureau. A photostat of this authorization shall be as valid as the original.

___4/8/94___
Date

X _____ Signature of Proposed Insured

App 51

80-1

Claimant Name: Jeffrey J Sabin    Claim #: 18451825

PRL-CL-IDI-000204
**EXHIBIT 6**

FINANCIAL SUPPLEMENT

WORCESTER, MA 01608

☑ **THE PAUL REVERE LIFE INSURANCE COMPANY**    ☐ **THE PAUL REVERE PROTECTIVE LIFE INSURANCE COMPANY**    ☐ **THE PAUL REVERE VARIABLE ANNUITY INSURANCE COMPANY**

**1. NAME** Last: S A B I N
First / Middle: J E F F R E Y  J.

**2.** Birthdate: 6 - 24 - 56  (Mo - Day - Yr)

**3.** What were your earnings from your occupation or profession as reported on your federal tax return — form 1040?

| | *1994* Current Year | Annual Rate *1993* Last Year | *1992* 2 Years Ago |
|---|---|---|---|
| a. Salary, Wages, Fees and/or Commissions | 607,822 | 400070 | 159253 |
| b. Pension and Profit Sharing Plan Contributions | 30,000 | | |
| c. Bonus | | | |
| d. Earnings from any other occupations (state occupation and give details in **6.** below) | | | |
| e. TOTAL EARNINGS (a + b + c + d) | 637,822 | 400070 | 159253 |
| f. Deductible Business Expenses | | | |
| g. NET EARNINGS (e — f) | 637,822 | 400070 | 159253 |

**4.** What was your other income for the last calendar year as reported on your federal tax return — form 1040?
$ 2599 (give details below)

Dividends $ 681      Rental Income (gross less cash spent but before depreciation) $ ____
Interest $ 2183      
Net Realized Capital Gains $ (265)      Other (give details in **6.** below) $ ____

**5.** Estimate your net worth (gross worth less any mortgages, loans and other debts).
$ 400,000 (give details below)

Cash Savings, Stocks, Bonds $ ____      Real Estate — Residence only $ ____
Interest in my Business (exclude goodwill) $ ____      Other Real Estate $ ____
Personal Property $ ____      Other (give details in **6.** below) $ ____

**6.** Remarks: Show here any details to your answers to the questions above.

_____

_____

_____

**It is understood and agreed as follows:**

**(1)** I have read the statements and answers made above. They are, to the best of my knowledge and belief, true and complete and correctly recorded. The Company will rely on them to determine the amount, if any, of disability income insurance it will issue.

**(2)** This Supplement will become a part of my application for insurance and any policy issued on it.

Signed at ___Lakewood, CO___      Date ___April 14___ 19 94

Witness ___[signature]___
Agent or Broker
For Financial Designs Ltd.

(X) ___[signature]___
Applicant

This form may be completed in private, but your signature must be witnessed by an Agent or Broker. Place it in an envelope addressed to the Vice President, Underwriting Department, The Paul Revere Companies, Worcester, MA 01608.

App 60

60-1

# Paul Revere
# Insurance Group
A subsidiary of Textron Inc.
**TEXTRON**

APRIL 21 1994

JEFFREY J SABIN MD
Attn: Jim Sabin Co Orthopaedic
1630 Carr
Lakewood Co 80218

Policy # 01026639430

Subject: **DISABILITY AND HIV INFECTION**

Dear JEFFREY J SABIN MD .

We are pleased to advise you as to Paul Revere's position on covering HIV infection under our individual disability policies.

Generally, disability policies require that the insured actually suffer physical or mental symptoms which cause impairment. Thus an insured infected with HIV but free from impairing symptoms would not normally be considered "disabled" merely because of the presence of the infection. However, we recognize that due to your current occupation as a health care professional, you face a unique situation if you become infected with HIV. Therefore, we will consider you to be Disabled if you become infected with HIV and any of the following result:

1. You are restricted from performing your occupational duties by law, regulations, or guidelines addressing the transmission of HIV to patients. Such authority may be established by the Centers for Disease Control (CDC), a medical regulatory or licensing authority, a hospital or an employer; or

2. Patients have refused treatment from you as a result of your required disclosure to them of your infected status; or

3. You elect to limit or discontinue your healthcare practice because of a risk of transmitting your infection to your patients.

If your important or material duties were restricted and you were not engaged in any gainful occupation, you would be considered Totally Disabled. If you were working but, because of your infection, you suffered at least a 20% Loss of Earnings, you would be eligible for Residual Disability benefits available under your policy.

We would, of course, require proof acceptable to us as to the existence of the infection.

You may consider this letter a change to your policy that is binding on us under the "Entire Contract; Changes" section of your policy. Please attach it to your policy.

Sincerely,

*Donald E. Boggs*

Donald E. Boggs, RHU
Executive Vice President
Insurance Operations

Paul Revere Insurance Group • 18 Chestnut St., Worcester, MA 01608-1528 (508) 799-4441     OUR POLICY IS QUALITY

---

Claimant Name:  Jeffrey J Sabin        Claim #:   18451825

PRL-CL-IDI-000206
**EXHIBIT 6**

# THE PAUL REVERE LIFE INSURANCE COMPANY

## ADDRESS CHANGE ENDORSEMENT

Endorsement Date:  **[February 2013]**

This endorsement is made part of the policy, contract or certificate as of the Endorsement Date.  It should be attached to and kept with the policy, contract or certificate.

The following address as it may appear on the face page or within the text of the policy, contract or certificate is *deleted:*

**18 Chestnut Street**
Worcester, MA  01608

The following address is *substituted:*

**1 Mercantile Street**
Worcester, MA 01608

You should continue to use the same telephone numbers as before to make requests, ask questions or otherwise receive service under the policy, contract or certificate unless we have asked you to use different ones.

In all other respects, the terms and provisions of the policy, contract or certificate remain unchanged and in full force and effect.

President and Chief Executive Officer                Corporate Secretary

AMD-141-PRL                                                                        (03/17)

Claimant Name:  Jeffrey J Sabin          Claim #:    18451825

PRL-CL-IDI-000207

**EXHIBIT 6**



DISABILITY INCOME POLICY
990                     THE PREFERRED PROFESSIONAL                                    91-1

UNUM
1 Mercantile Street, Worcester, Massachusetts 01608
508.799.4441
Claimant Name: Jeffrey J Sabin      Claim #:   18451825

PRL-CL-IDI-000208
EXHIBIT 6