

Attorneys at Law
**EVANS CASE**
EVANS · JACOBS · BOUNDS · LAPUYADE

John Case, of Counsel

**Keith D. Lapuyade**
Partner
1660 S. Albion Street, Suite 1100
Denver, Colorado 80222-4047

303-757-8300 / Fax: 303-753-0444
keith@evanscase.com
www.evanscase.com

April 23, 2021

VIA EMAIL: RWaterman@UNUM.com
AND CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Mr. Ryan Waterman
Lead Benefit Specialist
UNUM
The Benefit Center
P.O. Box 100262
Columbia, S.C. 29202

> Re:    Renewed Application for "Total Disability" Benefits and Request for
>        Reconsideration of Denial of Total Disability Benefits
>        Jeffery J. Sabin, M.D., Claim Number: 0102663943001

Dear Mr. Waterman,

This firm represents Jeffery J. Sabin, M.D. ("Dr. Sabin") in connection with his request to UNUM to reconsider its denial of Dr. Sabin's claim for total disability benefits under his policy of disability insurance with UNUM, the successor to The Paul Revere Life Insurance Company, Policy No. 0102663943 (the "Policy"). Dr. Sabin respectfully requests that UNUM honor its obligation to pay "Total Disability" benefits to Dr. Sabin, an orthopedic surgeon who can no longer operate. Based on this and other developments, including the closure of his clinical practice, Dr. Sabin respectfully submits this letter as a Renewed Application for "Total Disability" benefits. Additionally, this submission serves as his timely Request for Reconsideration of Denial of Total Disability Benefits.

On March 16, 2021 via a series of email communications with Ryan Waterman and Kasandra Hazard, Dr. Sabin was granted an additional one-month extension of time, through and including April 24, 2021 in which to submit his Request for Reconsideration attached here as **Exhibit 1**. Notwithstanding UNUM's extension of the deadline, on April 22, 2021, Dr. Sabin received correspondence from UNUM stating that his "Residual Disability" benefit had been approved, with a commencement date for payments of the same beginning October 7, 2020.[1] A true copy of UNUM's April 22, 2021 letter is attached here as **Exhibit 2**. UNUM's determination

---

[1] Dr. Sabin notes that UNUM's April 22, 2021 letter indicates he is entitled to payments since "October 7, 2020 (when your Commencement Date was met)." **Exhibit 2.** However, according to the Policy Schedule, there is no qualification period for Residual Disability. "Qualification Period for Residual Disability: 0 Days" **Exhibit 3,** Policy Schedule. Thus, it appears that Dr. Sabin would be entitled to disability benefits for Residual Disability effective July 9, 2020.

1

is clearly intended to close the issue of Dr. Sabin's claim for "Total Disability" benefits. As such, UNUM has disregarded its own extended deadline and it has become concerning that UNUM had no real intention of reconsidering the information that Dr. Sabin has compiled. UNUM's premature determination on this issue, without consideration of this communication and the additional information contained herein and attached hereto is further evidence of UNUM's unreasonableness and lack of consideration of all of the facts relevant to a fair determination of Dr. Sabin's claim for "Total Disability" benefits.

Notwithstanding UNUM's improper, premature determination, Dr. Sabin submits this letter and attachments in further support of his claim for "Total Disability" benefits, which appears obvious on its face.

## Background

In 1994, Dr. Sabin was marketed and sold an "own occupation" policy and was assured that if he could not work as a spine surgeon, he would receive benefits based on total disability. In reliance upon the representations of the predecessor to UNUM, Dr. Sabin purchased the Policy, which was issued on April 20, 1994. Since issuance of the Policy, Dr. Sabin has faithfully paid the Policy premiums for 27 years and no lapse of coverage has occurred.

## The Application for Disability Insurance / Dr. Sabin's Statements

Dr. Sabin completed the Application for the Policy on April 4, 1994. A true and correct copy of the Policy, which incorporates the Application, is attached as **Exhibit 3**.

On the first page of the Application, Dr. Sabin described his "Occupation" in §2a. as follows: "Orthopedic Surgery Spine Spec." He described his "Exact Duties" in §2.c. as "Surgery of the spine/surgical spine fellowship - 1 year Univ. of Co." Dr. Sabin signed the Application on Page 2, acknowledging and agreeing to the following:

> "I have read the statements and answers recorded above. They are to the best of my knowledge and belief, true and complete and correctly recorded. They will become part of this Application and the basis for any policy issued on it."

*See* **Exhibit 3**, Application, p. 2.

## The Insurance Policy

The Policy generally provides that the benefits will be paid to Dr. Sabin for periods in which he is disabled with a "Total Disability" or "Residual Disability," providing that UNUM receives proper notice of the claim, in writing, and written proof of loss for each period for which the insured is claiming benefits.

The statements in Dr. Sabin's Application, including his description of his occupation and exact duties are incontestable. The Policy expressly provides, "[a]fter Your Policy has been in force for 2 years, excluding the time you are Disabled, We cannot contest the statements in the application." *See* **Exhibit 3**, p. 17, Part 10 The Contract, para. 10.2.a The Policy further provides, "We have issued this Policy to You in consideration of the payment of the premium and the statements made in Your application. Your application is part of this Policy." *See id.*, Cover Page.

2

PRL-CL-IDI-003126

**EXHIBIT 13**

The Policy also includes the following key definitions:

**1.1** **"Policy"** means the legal contract between You and Us.   The policy, the application, the Policy Schedule, and any attached papers that We call riders, amendments, or endorsements make up the entire contract between You and Us.

**1.5** **"Injury"** means accidental bodily injury sustained after the Date of Issue and while Your Policy is in force.

**1.6** **"Sickness"** means sickness or disease which first manifests itself after the Date of Issue and while Your Policy is in force.   It includes Disability due to complications of pregnancy or childbirth.   It includes Disability due to normal pregnancy or childbirth after You have been Disabled for 90 days.

**1.10**   **"Total Disability"** means that because of injury or Sickness:

    a.   You are unable to perform the important duties of Your Occupation; and
    b.   You are receiving Physician's Care.   We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.

**1.13** **"Disability or "Disabled"** refers to continuing periods of Total Disability, Residual Disability and/or Recovery.   Successive periods will be deemed to be continuing if:

    a.   Due to the same or related causes; and
    b.   Separated by no more than 12 months;

Otherwise, such periods will be deemed to be new and separate disabilities.

*See* **Exhibit 3**, Part 1 Definitions, pp. 6-7.

The Policy is devoid of any formula for determining the "important duties" of the insured's occupation.   Instead, as noted above, the Policy expressly incorporates the statements in the Application, such as Dr. Sabin's description of his "Occupation" and "Exact Duties" as part of the Policy.

Additionally, and significantly as regards Dr. Sabin's claim for "Total Disability" benefits, Dr. Sabin purchased and paid an additional annual premium for the Policy's "Lifetime Total Disability Benefit Rider," which provides in relevant part:

### LIFETIME TOTAL DISABILITY BENEFIT RIDER

This rider provides a Lifetime Total Disability benefit.

### LIFETIME BENEFIT AFTER AGE 65

We will pay this benefit during Your continuous Total Disability if:

1. The Total Disability begins before age 65; and
2. The Total Disability continues until age 65; and
3. The benefits under the Policy to which this rider is added have been paid during your Total Disability.

3

*Claimant Name: Jeffrey J Sabin       Claim #:   18451825*

PRL-CL-IDI-003127

**EXHIBIT 13**

This benefit will start to pay on the later of: (a) Your 65th birthday; or (b) the date the Total Disability benefit payable under your Policy ends.  We will pay it while You remain Totally Disabled **for as long as you live.**

**FOR INJURY**

For Total Disability due to injury, the monthly amount We will pay will be the amount shown on the Policy Schedule.  Any Cost of Living benefit rider added to Your Policy shall apply to this amount.

**FOR SICKNESS**

FOR Total Disability due to Sickness, the monthly amount We will pay will be based on the amount shown on the Policy Schedule.  Any Cost of Living benefit rider added to Your Policy shall apply to this amount.  The amount shown on the Policy Schedule plus any Cost of Living increase that applies to this rider shall be multiplied by a factor.  The factor to be used will be based on  Your age at the start of Total Disability which continues until age 65.

. . .

**Exhibit 3**, Lifetime Total Disability Benefit Rider (emphasis added in bold).

Pursuant to the Policy Schedule, Dr. Sabin has paid the following premiums for the past 27 years:

| | |
|---|---|
| ANNUAL PREMIUM FOR DISABILITY BENEFITS | $5,865.00 |
| ANNUAL PREMIUM FOR ADDITIONAL BENEFITS | $3,088.58 |
| TOTAL ANNUAL PREMIUM | $8,953.58 |
| *SELECT 15 ANNUAL PREMIUM | $7,610.54 |

The Policy Schedule further provides a Table of Disability Benefits, which provides that the maximum monthly amount payable is $15,080.00 to Age 65. "Qualification period for Residual Disability: 0 Days."

**Exhibit 3,** Policy Schedule.

The Table of Additional Benefits provides the breakdown of the additional benefits totaling $3,088.58 per year as follows:

| ADDITIONAL BENEFITS ATTACHED | AMOUNT OF BENEFIT | MAXIMUM BENEFIT PERIOD | ANNUAL PREMIUM PRIOR TO AGE 65 |
|---|---|---|---|
| LIFETIME TOTAL DISABILITY | $15,000.00 PER MONTH | LIFETIME | $1,456.50 |
| COST OF LIVING | 4% - CPI – 4% | -- | $1,051.08 |

4

*Claimant Name: Jeffrey J Sabin       Claim #:   18451825*

PRL-CL-IDI-003128

**EXHIBIT 13**

| TOTAL DISABILITY IN YOUR OCCUPATION | -- | -- | $581.00 |
|---|---|---|---|

Pursuant to the Policy Schedule II, Maximum Benefit Periods are as follows:

YOU HAVE A LIFETIME BENEFIT RIDER ADDED TO YOUR POLICY WHICH PROVIDES A BENEFIT FOR AS LONG AS YOU LIVE. PLEASE REFER TO YOUR POLICY FOR DETAILS.

FOR TOTAL DISABILITY BENEFITS PAYABLE TO AGE 65, IF TOTAL DISABILITY BEGINS:

. . .

AT AGE 64 BUT BEFORE AGE 65          30 MONTHS.

**Exhibit 3,** Policy Schedule II.

## Dr. Sabin's Disability

Dr. Sabin claimed that he is entitled to Total Disability benefits beginning July 9, 2020, due to his inability to perform spine surgeries and submitted evidence of the same. *See* Attending Physician Statement of Dr. Todd Maus, dated October 21, 2020, confirming Dr. Sabin's diagnosis of glaucoma. According to Dr. Maus, Dr. Sabin has "primary, open angle glaucoma, bilateral." Dr. Maus determined that Dr. Sabin has a number of physical restrictions including, "utilizing fine suture, fine forceps & pick-ups, photophobia, judging depth perception, and peripheral vision." Dr. Maus also determined that Dr. Sabin has physical limitations including "manipulation, spinal nerves and durotomies [sic]." A copy of Dr. Maus' Physician Statement is attached here as **Exhibit 4**.

Importantly, UNUM does not dispute that Dr. Sabin cannot perform surgeries.

## UNUM's Position Regarding Total Disability

Dr. Sabin submitted his claim for Total Disability benefits on or around October 28, 2020.

On January 6, 2021, UNUM wrote to Dr. Sabin informing him of its denial of his claim for "Total Disability" benefits. In the letter, UNUM acknowledged that Dr. Sabin's occupation is that of a self-employed orthopedic surgeon. *See* UNUM Letter to Dr. Sabin dated January 6, 2021, attached here as **Exhibit 5**.

> "Beginning July 9, 2020, you have been unable to perform surgery due to your vision. You indicated that you have continued to evaluate patients in your office and make referrals to other surgeons if a patient requires surgery. You also indicated that you have continued to perform medical record reviews for insurance companies."

*Id.*

UNUM determined, based on information provided by Dr. Sabin including a monthly CPT code report for the period of July 2019 through November 2020, that prior to Dr. Sabin's disability, "surgery only accounted for about 36% of your total charges during the year prior to your

disability." **Exhibit 5**, p. 2. UNUM further determined, "you have continued to perform medical/legal reviews since your disability began, . . . medical/legal reviews accounted for your highest charges during the year prior to your disability at about 43%. *Id.* UNUM continued, "[a]lthough surgery is considered an important duty of your occupation at the time your disability began, the medical / legal reviews you perform in  your occupation are also considered to be an important duty of your occupation. *Id.* UNUM concluded, "[b]ecause you are unable to perform one of the important duties of your occupation but continue to perform another important duty of your occupation, we have determined that you are not Totally Disabled under the terms of your policy at this time." *Id.*

UNUM stated that alternatively, it would evaluate Dr. Sabin's eligibility for Residual Disability benefits under the Policy and requested, among other things, copies of information to calculate prior earnings for the period from 2015 through 2020, and information to calculate monthly earnings from July 2020 to present. *See* **Exhibit 5**.

Dr. Sabin responded to UNUM's request on January 10, 2021. *See* **Exhibit 6**. Dr. Sabin explained that the period from the date of his disability, July 10, 2019 through July 9, 2020 was an aberrant year due to the COVID – 19 pandemic, and that the breakdown of Dr. Sabin's work for that year, Surgery – 30.15%, Office – 27.11%; medical/legal 42.74%, was an inaccurate representation of Dr. Sabin's normal work duties. *Id.* He offered data for the three consecutive years prior to the COVID – 19  pandemic, and explained, based on that information, that in a normal year, surgery comprised over 40% of his duties; office comprised of approximately 30% of his duties; and medical-legal routinely comprised of less than 33% of his duties. *Id. See also* data produced by Dr. Sabin for years 2016-2017; 2017-2018; 2018-2019 and post disability, July 9, 2020 – December 31, 2020, attached here as **Exhibit 7**.

On February 5, 2021, UNUM wrote again to Dr. Sabin requesting data to calculate Dr. Sabin's prior earnings and monthly earnings, including business and personal tax returns for 2015 through 2019, profit and loss statements, paystubs, and documentation of contribution to a pension or profit-sharing program for the periods from July 2019 – June 2020, and July 2020 to present. *See* **Exhibit 8**.

On February 12, 2021, UNUM wrote again to Dr. Sabin reiterating its determination that Dr. Sabin is not "Totally Disabled," explaining that although Dr. Sabin is unable to perform one of the important duties of his occupation, surgery, the fact that he continues to perform another important duty of his occupation, medical/legal reviews, means that he is not "Totally Disabled" under the terms of the policy. *See* **Exhibit 9**. UNUM continued, "[a]s such, it remains our determination that medical / legal reviews are considered to be an important duty of your occupation that you continue to perform, we will continue to evaluate your eligibility for Residual Disability benefits under your policy rather than Total Disability benefits." *Id.*

Throughout this process, Dr. Sabin has promptly and completely responded to each and every request for information concerning his surgery practice and his earnings. *See* numerous email communications between UNUM and Dr. Sabin attached hereto as **Exhibit 10**. Please note that **Exhibit 10** is not inclusive of every such communication. Rather, it is intended to show a scant selection of Dr. Sabin's *many* email communications with UNUM representatives.

*Claimant Name: Jeffrey J Sabin        Claim #:  18451825*

PRL-CL-IDI-003130

**EXHIBIT 13**

Thus, it should be undisputed that Dr. Sabin has promptly and fully cooperated with all of UNUM's requests for information in this process.

**UNUM's Denial of Coverage Is Both Illogical and Unreasonable**

UNUM's denial of coverage for "Total Disability" unreasonably and illogically ignores the express language of the Policy, the obvious fact that a surgeon is a doctor who performs surgery, and the fact that that any other duties a surgeon performs are dependent upon the fact that a surgeon is a doctor who performs surgery.

i.      *The express language of Policy supports Dr. Sabin's claim for "Total Disability" benefits.*

Under the express language of the Policy (which incorporates the Application), Dr. Sabin's "exact duties" are "surgery of the spine / surgical spine fellowship – 1 year Univ. of CO." In other words, at the time Dr. Sabin filled out the Application for disability insurance in 1994, he had a one-year surgical spine fellowship at the University of Colorado. Thereafter, through and including the time he submitted the claim for "Total Disability" benefits, Dr. Sabin's "exact duty" has been "surgery of the spine." Because the Policy adopts the Application, and the Application includes Dr. Sabin's description of his "occupation" and "exact duties," UNUM is bound by them. UNUM cannot reasonably or logically invent its own reality concerning the "important duties" of Dr. Sabin's work as an orthopedic surgeon.

ii.     *UNUM's interpretation of the Policy ignores the simple truth that a surgeon is a doctor who performs surgery.*

Additionally, it strains credulity that UNUM would argue that an orthopedic surgeon with a spine specialty, whose "exact duties" are "surgery of the spine," that surgery is just one "important duty," among others. UNUM's three-bucket, fabricated formula in which UNUM's vocational consultant determined that "surgery," "clinical" and "medical/legal" are separate and distinct "important duties" of an orthopedic surgeon ignores the fact that a surgeon cannot have a "clinical" practice, e.g., consulting with patients who need orthopedic spine surgery, if he cannot perform the ultimate surgery. Clearly, patients would consult with the surgeon who will be performing their surgery. Likewise, an orthopedic surgeon who no longer performs orthopedic surgeries is not likely to be retained over an extended period as an independent medical examiner. Adopting UNUM's three-bucket formula ignores that an orthopedic surgeon's clinical and medical/legal practice are dependent upon his ability to perform surgery.

Instead, UNUM's focus on three distinct areas of "important duties," "surgery," "clinical," and "medical/legal" is based solely upon the revenue generated by the different areas of Dr. Sabin's orthopedic surgery practice. There is nothing in the Policy concerning a formula for determining the "important duties" of the insured's occupation, or providing that the insurer will focus on the revenue different areas of one's practice generate in determining the "important duties" of the insured's occupation. Instead, as noted above, the Policy expressly incorporates the statements in the Application, such as Dr. Sabin's description of his "Occupation" and "Exact Duties" as part of the Policy.

7

iii.    *UNUM's failure to acknowledge that the COVID-19 pandemic has impacted Dr. Sabin's practice and income is unreasonable and illogical.*

UNUM's denial also unreasonably and illogically fails to acknowledge that the COVID-19 pandemic led to the closure of Dr. Sabin's practice for at least two months in early 2020, preventing all surgeries during that time. Upon re-opening, moreover, many patients delayed scheduling surgeries for the remainder of 2020 and very few surgeries were performed as a result of the restrictive, protective procedures implemented to prevent the spread of COVID-19.

iv.    *Prominent neutral legal and medical professionals support Dr. Sabin's claim for "Total Disability" benefits.*

Dr. Sabin has obtained the attached neutral statements of position from renowned medical and legal professionals that support his contention that a surgeon who cannot perform surgery is unable to perform the most important duty of his occupation.

First, Scott Robinson, Esq., a litigation attorney and patient of Dr. Sabin believes that UNUM's position is insupportable and stated, "…if he was not in a position to perform surgery when surgical intervention had been required, I would not have remained a patient of his," and that "surgeons who cannot perform surgery have no realistic chance to maintain a clinic…." Additionally, Mr. Robinson, as an attorney who has hired IME physicians as expert witnesses agrees that "an orthopedic surgeon who can no longer perform surgery will have much less credibility with jurors than would a physician who has an active surgical practice," and believes that "[s]uch an expert's opinion [one not performing surgery] can easily be undermined by opposing counsel on the grounds that the witness only does IMEs, has no patients of his own who trust him and his judgment." A copy of Mr. Robinson's statement is attached hereto as **Exhibit 11.**

Additionally, Deana R. Dagner, Esq., a personal injury defense attorney for nearly 40 years and senior partner of Dagner Schluter Mitzner Werber LLC has opined that "[w]hen I hire a surgeon, it is important that the surgeon is actively practicing in his specialty. When a surgeon is no longer performing surgery, his persuasiveness and credibility as a witness is significantly compromised." A copy of Ms. Dagner's statement is attached hereto as **Exhibit 12.**

v.    *Even applying UNUM's tortured definition of "occupation" to these facts, Dr. Sabin is entitled to "Total Disability" benefits.*

In its correspondence to Dr. Sabin dated February 5, 2021, UNUM stated that it had denied Dr. Sabin's claim for "Total Disability" benefits "since you continue to perform medical / legal reviews." *See* **Exhibit 8.** However, UNUM thereafter unilaterally altered the way it would reevaluate Dr. Sabin for disability in consideration of data Dr. Sabin had produced to UNUM, stating, "If it is determined that you are currently not performing **any** of the material and substantial duties of your occupation, we may determine you are Totally Disabled under the terms of your policy." *Id.* This is not the definition of "Total Disability" in the Policy. However, even if Dr. Sabin accepted UNUM's tortured definitions and means of evaluating Dr. Sabin's entitlement to "Total Disability" benefits, as discussed above, Dr. Sabin's performance of medical / legal reviews will soon likely dwindle to little or nothing. *See* **Exhibits 5** through **9**. In addition, as of May 27, 2021, Dr. Sabin will completely cease his clinical practice due to his inability to operate. If a spine

8

surgeon cannot perform surgery, he cannot perform evaluations regarding where a patient is a candidate for surgery, and there is no longer a need for post-surgical evaluations. Thus, it is clear that not only can Dr. Sabin not perform the "important duties" of his occupation (the Policy definition), Dr. Sabin also cannot perform **any** material or substantial duties of his occupation since he is an orthopedic spine surgeon who cannot perform surgery and has no clinical practice and no future medical / legal review practice. Because Dr. Sabin's practice will close, he hereby respectfully renews his application for "Total Disability" benefits based on these developments.

Based on the objective evidence, Dr. Sabin believes that UNUM's three-bucket formula, focus on the revenue generated by the different areas of his orthopedic practice and its ever-changing definition of "Total Disability" is unreasonable and illogical. Dr. Sabin's surgery, clinical and medical/legal practice are inextricably intertwined, and are not separate and distinct areas of his orthopedic practice. As an orthopedic surgeon who can no longer perform surgeries, Dr. Sabin is unable to perform the "exact duty" of his profession, the "important duties" of his profession, or any material and substantial duties of his profession, since surgery is the professional duty upon which all of his other work is dependent.

### A Reasonable Person Would Expect an Owner's Disability Policy to Cover An Orthopedic Surgeon Who Could No Longer Perform Surgeries, Due to Glaucoma

Colorado recognizes the doctrine of reasonable expectations of the insured. *Bailey v. Lincoln General Ins. Co.*, 255 P.3d 1039, 1048 (Colo. 2011). "In Colorado, the reasonable expectations of insureds have succeeded over exclusionary policy language in two main situations (1) where an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or she is not entitled to the coverage at issue; and (2) where, because of circumstances attributable to an insurer, an ordinary objectively reasonable person would be deceived into believing that he or she is entitled coverage, while the insurer would maintain otherwise." *Id.* at 1048-1049. The entire policy is to be construed as it would be understood by an ordinary insured. *Id.* at 1051. An insurer who seeks to avoid liability must do so in clear and unequivocal language and must call out limiting conditions to the attention of the insured. *Id.* at 1055. Absent proof of such disclosure, coverage will be deemed to be that which would be expected by the ordinary layperson." *Leland v. Travelers Indem. Co. of Illinois*, 712 P.2d 1060, 1064 (Colo. App. 1985) *citing Sanchez v. Connecticut General Life Ins. Co.*, 681 P.2d 974, 977 (Colo. App. 1984).

Applying the reasonable expectations of the insured doctrine to Dr. Sabin's case, it is clear that UNUM's decision to ignore Dr. Sabin's description of his "exact duties" in the Application, which has been incorporated into the Policy and is incontestable, and instead, adopt a methodology for denying his claim for "Total Disability" benefits based on the amount of revenue that is generated by the different areas of Dr. Sabin's orthopedic surgery practice violates the reasonable expectations of an ordinary layperson purchasing disability insurance. Dr. Sabin purchased disability insurance in order to ensure that if he should be unable to work as an orthopedic surgeon, he would be covered by the Policy. A reasonable person would expect the same. There is no "clear and unequivocal language" in the Policy stating that UNUM would focus on the amount of revenue generated by the different areas of the insured's practice in order to determine what it believes is an "important duty." *See Bailey*, 255 P.3d at 1055. Because, like Dr. Sabin, a

9

PRL-CL-IDI-003133

**EXHIBIT 13**

reasonable person would expect a disability policy to cover the orthopedic surgeon who is unable to perform surgeries, UNUM's coverage-limiting methodology violates the objectively reasonable expectations of the insured. *See Bailey*, 255 P.3d at 1048-1057.

**UNUM's Position is Unreasonable and Constitutes a Bad Faith Breach of Insurance Contract Under Colorado Law**

Colorado recognizes that an insurer's bad faith breach of an insurance contract gives rise to tort liability. *Schultz v. GEICO Casualty Co.*, 2018 CO 87 ¶14. To prevail on such a claim, the insured must establish that the insurer, "acted unreasonably and with knowledge of or reckless disregard for the fact that no reasonable basis existed for denying the claim." *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985).

In addition to the common law claim, Colorado has a statutory remedy. C.R.S. § 10-3-1115 provides in relevant part,

> (1)(a) A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.
>
> . . .
>
> (2) . . . for the purposes of an action brought pursuant to this section and section 10-3-1116, an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

Significantly, Section 10-3-1116(1) provides that a first-party claimant whose claim has been unreasonably delayed or denied may bring an action "**to recover reasonable attorney fees and court costs and two times the covered benefit.**"

While the common law claim for bad faith breach of insurance contract requires proof that the insurer acted unreasonably and that it knew or recklessly disregarded the fact that it's conduct was unreasonable, the statutory claim only requires proof that the insurer denied benefits without a reasonable basis. C.R.S. §10-3-1116; *Schulz*, 2018 COA 87, ¶19 *citing Vaccaro v. Am. Family Ins. Grp.*, 2012 COA 9M, ¶¶ 21, 44, 275 P.3d 750, 756, 760 (other citations omitted).

As discussed above, the objective evidence demonstrates that it is unreasonable for UNUM to deny coverage to Dr. Sabin for "Total Disability" benefits. UNUM's reliance on the revenue generated by the different areas of Dr. Sabin's orthopedic surgery practice and its determination that surgery is just one of Dr. Sabin's "important duties" is unreasonable because it ignores the Policy itself (incorporating the Application and Dr. Sabin's own statements concerning his "exact duties," which he identified as "surgery of the spine." *See* **Exhibit 3**.

It is also unreasonable for UNUM to deny coverage on these grounds because UNUM ignores the most obvious fact that a surgeon is a doctor who performs surgery. Without the ability to perform surgery, Dr. Sabin is unable to sustain any clinical practice, seeing patients who need orthopedic surgery, because those patients would consult with the surgeon who will actually conduct their surgery. Without the ability to perform surgery, Dr. Sabin is also unable to sustain

10

PRL-CL-IDI-003134

**EXHIBIT 13**

any "medical/legal" practice, as his expertise as an orthopedic surgeon cannot be sustained if he no longer performs orthopedic surgery. *See* **Exhibits 11 - 12.**

Finally, it is unreasonable for UNUM to deny coverage and utilize the COVID-19 pandemic year as the twelve-month period for calculation of Dr. Sabin's earnings in his orthopedic surgery practice. All contracts have an implied duty of good faith and fair dealing. *Cary v. United of Omaha Life Ins. Co.,* 68 P.3d 462, 466 (Colo. 2003). Additionally, insurers are bound to "be at all times actuated by good faith in everything pertaining thereto." C.R.S. § 10-1-101. UNUM therefore owes a duty of good faith and fair dealing to Dr. Sabin, and its failure to acknowledge that the COVID-19 global pandemic impacted Dr. Sabin's practice in the twelve months prior to the date of his disability constitutes a breach of duty of good faith and fair dealing.

### Dr. Sabin is Entitled to a Lifetime Benefit for Total Disability

Dr. Sabin has paid the Policy premium for disability benefits and the Policy premium for additional benefits, which include the Lifetime Benefit Rider and a Cost-of-Living Adjustment Rider, for the past 27 years. Specifically, Dr. Sabin has paid an additional annual premium for the Lifetime Total Disability Benefit Rider of $1,456.50 and an additional annual premium for the Cost of Living Benefit Rider of $1,081.08.

Thus, after Dr. Sabin's first 30 months of Total Disability, Dr. Sabin is entitled to payment of the Lifetime Total Disability benefit of $15,000.00 per month, for his lifetime. **Exhibit 3,** Policy Schedule, Policy Schedule II, Lifetime Total Disability Rider. After a year, moreover, Dr. Sabin's Lifetime Total Disability Benefit payment is also subject to the Cost of Living Adjusted Benefit Rider.

Based on the foregoing, Dr. Sabin believes that the value of his claim for Total Disability benefits and Lifetime Total Disability is substantial.

### Request for Production of Dr. Sabin's File

In connection with this Request for Reconsideration, Dr. Sabin requests that UNUM produce its entire file regarding Dr. Sabin's Policy and application for benefits, including but not limited to all documents, written communications, reports, expert opinions upon which UNUM relies, and vocational consultant notes, data, analyses, reports and memoranda. In addition, Dr. Sabin seeks copies of all notes of telephone communications between UNUM and Dr. Sabin since he filed his claim under the Policy, including recordings of those conversations, and any memoranda or reports summarizing the same and important for his economic security as he faces the reality that he can no longer operate and must prepare for the next phase of his life.

### Conclusion

In closing, Dr. Sabin believes that given the objective evidence and based on proof of the industry standards, he would prevail in any litigation concerning UNUM's denial of his claim for "Total Disability" benefits, if litigation is necessary. Dr. Sabin is confident that a jury would determine, among other things, that he had a reasonable expectation that his disability based upon glaucoma would be covered by the Policy, since he cannot see well enough to perform surgeries, a fact which UNUM does not dispute, and that UNUM acted unreasonably and illogically in denying his claim for "Total Disability" benefits. Indeed, Colorado's statutory claim requires only

11

PRL-CL-IDI-003135

**EXHIBIT 13**

proof that UNUM acted unreasonably, not proof of knowledge of or reckless disregard for the fact that no reasonable basis exists for denying the claim. *See* C.R.S. § 10-3-1115. *Compare Schultz*, 2018 CO 87 ¶14; *Travelers Ins. Co.*, 706 P.2d at 1274. In addition to unpaid benefits Dr. Sabin would be entitled to an award of his reasonable attorney fees, costs and two times the covered benefit, under C.R.S. § 10-3-1116. Dr. Sabin will vigorously prosecute these claims against UNUM, if necessary to protect his financial future.

Based on the foregoing, Dr. Sabin is hopeful that UNUM will thoughtfully reconsider its denial of his claim for "Total Disability" benefits and Lifetime Total Disability after the first 30 months and reach the only conclusion that is reasonable under the circumstances. Please direct any further requests for information that you may have to my attention. We look forward to hearing from you.

Very truly yours,

Evans Case, LLP

Keith D. Lapuyade, Partner

12

*Claimant Name: Jeffrey J Sabin      Claim #:  18451825*

PRL-CL-IDI-003136

**EXHIBIT 13**