**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:23-cv-00236-DDD-SBP

JEFFREY SABIN, M.D.,

      Plaintiff,

v.

THE PAUL REVERE LIFE INSURANCE COMPANY
and UNUM GROUP,

      Defendants.

---

## ORDER ON MOTIONS

---

Defendants Paul Revere Life Insurance Company and Unum Group have moved for summary judgment and to strike portions of Plaintiff Jeffrey Sabin's declaration in this insurance coverage dispute. For the reasons discussed below, the motion for summary judgment is granted and the motion to strike is moot.

## BACKGROUND

Defendant Paul Revere Life Insurance Company issued a professional disability income policy to Dr. Jeffrey Sabin in April 1994. Dkt. 5 at 4. In exchange for annual premiums, the policy guaranteed Dr. Sabin a monthly income in the event he became disabled and could no longer perform the important duties of his occupation. Dkt. 5 at 4; Dkt. 35-6 at 1. The policy definitions relevant to the parties' dispute include Your Occupation, Total Disability, and Residual Disability. The definitions state, in relevant part:

> "**Your Occupation**" means the occupation or occupations in which You are regularly engaged at the time Disability

- 1 -

begins.

"**Total Disability**" means that because of Injury or Sickness:

    a.  You are unable to perform the important duties of Your Occupation; and

    b.  You are receiving Physician's Care.

"**Residual Disability**" means that due to Injury or Sickness which begins prior to age 65:

    a.  (1) You are unable to perform one or more of the important duties of Your Occupation; or

        (2) You are unable to perform the important duties of Your Occupation for more than 80% of the time normally required to perform them; and

    b.  You are receiving Physician's Care.

    c.  You are not Totally Disabled.

Dkt. 35-6 at 7–8.

In addition to performing surgeries, Dr. Sabin also saw patients in his office and conducted medical-legal reviews. Dkt. 38 at 2. In July 2020, Dr. Sabin stopped performing surgeries due to problems with his vision. Dkt. 35 at 5; Dkt. 38 at 3. In October that year, he submitted a claim for Total Disability to Unum, Paul Revere's parent company and claims administrator. Dkt. 5 at 3; Dkt. 38 at 14. He closed his surgical practice the following May, Dkt. 38 at 10, but continued to perform medical-legal reviews. Dkt. 35 at 6. As part of his claim, Dr. Sabin submitted an Occupation Description form that described his occupational duties as office practice (evaluating and diagnosing patients), medical-legal (reviewing records and writing reports), and surgery (procedures on the spine, hips, and knees). Dkt. 35-10. Unum reviewed Dr. Sabin's claim and denied it for Total Disability because, though he could no longer perform surgeries, he remained capable of conducting medical-legal reviews, which it determined was an important aspect of his occupation. Dkt. 35 at 3. While Dr. Sabin appealed this decision, in April 2021,

Unum approved him for Residual Disability, which was scheduled to begin paying out for a period of 24 months in October 2020. Dkt. 38-6 at 1; Dkt. 38-11 at 13; Dkt. 35-6 at 8.

In April 2021, Dr. Sabin's counsel requested that Unum reconsider its denial decision. Dkt. 35-13. In a May 2021 response letter, Unum informed Dr. Sabin and counsel that it maintained its denial of benefits because "[t]he information that Dr. Sabin provided back to July 2016 supports that legal medical reviews was a duty he was routinely engaged in for the 3 years immediately prior to his claimed onset of disability." Dkt. 35-14 at 4. On January 5, 2023, after Defendants refused to reverse its coverage decision, Dr. Sabin filed a lawsuit in Denver County District Court that included claims of breach of contract, bad faith, and unreasonable denial and delay under C.R.S. § 10-3-1115–16. Dkt. 5 at 16–18. Defendants removed the case to federal court on January 27, Dkt. 1, and, following discovery, moved for summary judgment on April 19, 2024.[1] Dkt. 35.

## LEGAL STANDARD

A district court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). A fact is material if it could affect the outcome of the suit under the governing law, and a factual dispute is genuine if a rational jury could find for the nonmoving party on the evidence presented. *Id.* If a reasonable juror

---

[1] The case is in federal court under 28 U.S.C. § 1332, so Colorado substantive law applies. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

could not return a verdict for the nonmoving party, summary judgment is proper, and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In deciding whether the moving party has carried its burden, courts do not weigh the evidence, and instead must view it and draw all reasonable inferences from it in the light most favorable to the nonmoving party. *Adamson*, 514 F.3d at 1145; *Scott v. Harris*, 550 U.S. 372, 378 (2007). But a nonmovant's unsupported conclusory allegations or mere traces of evidence are not sufficient to demonstrate a genuine factual dispute. *Maxey v. Rest. Concepts II, LLC*, 654 F. Supp. 2d 1284, 1291 (D. Colo. 2009); *Scott*, 550 U.S. at 380 ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."). And "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

## DISCUSSION

Defendants move for summary judgment seeking a determination that (1) Dr. Sabin is not totally disabled and is, at most, residually (or partially) disabled under the language of the policy; (2) the monthly disability benefit under the policy is $1,508, not $15,080; (3) Defendants handled Dr. Sabin's disability claim in good faith; and (4) the statutory penalty under C.R.S. §§ 10-3-1115–16 only applies to past monthly disability benefits that were unreasonably delayed or denied. Dkt. 35.

### I.    Total Disability

Defendants argue that the plain language of the policy and well-established canons of contract interpretation require that Dr. Sabin be

deemed not totally disabled as a matter of law. Dkt. 35 at 2, 4–20. They say that because the policy's definitions focus on the duties of Dr. Sabin's occupation at the time his disability began rather than his job title or when the policy was issued, all work performed by Dr. Sabin must be considered when evaluating his claim for disability. *Id*. at 15. Dr. Sabin disagrees, and argues that his medical-legal review work does not fall within the policy's defined terms (Your Occupation; Total Disability), and that even if it did, those terms are ambiguous and must be construed in his favor. Dkt. 38 at 20–23.

"Contract interpretation is a question of law for the court to decide." *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 696 (Colo. 2009). An insurance policy is interpreted according to ordinary principles of contract interpretation. *Hoang v. Assur. Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007). Courts interpret contracts by giving "effect to the plain and generally accepted meaning of the contractual language." *Copper Mountain*, 208 P.3d at 697. If the plain language of the policy is unambiguous, the Court must enforce the policy as written. *Hoang*, 149 P.3d at 801. "An insurance policy is ambiguous if it is susceptible on its face to more than one reasonable interpretation." *Cary v. United Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005). When provisions in a policy are ambiguous, "[a]n insurance contract must be construed in favor of coverage." *Bohrer v. Church Mut. Ins. Co.*, 965 P.2d 1258, 1262 (Colo. 1998).

It's undisputed that since the mid-1990s up to the point he tendered his disability claim in October 2020, Dr. Sabin consistently engaged in medical-legal review. Dkt. 38-1 at 2. This included review of medical records, performing independent medical examinations, and preparing reports and opinions based on both. Dkt. 35 at 4; Dkt. 38 at 2. Most of his medical-legal cases came by referral from Integrated Medical Evaluation, and since 2005, the invoicing for them ran through his personal

practice, Precision Orthopedics. Dkt. 38-1 at 19–20. By 2020, this work comprised roughly 18% of his normal work week, or at least 14 hours each week. Dkt. 38 at 3. In each of the three years prior to submitting his claim for disability, Dr. Sabin reported that medical-legal review accounted for 23.4%, 33.61%, and 32.74% of his invoices. *Id*. When Dr. Sabin stopped performing surgeries in July 2020 due to problems with his vision, he continued his medical-legal review. Dkt. 35 at 5. This work continued up to the time he submitted his disability claim and after he closed his medical practice in May 2021. *Id*. at 6.

By the terms of Dr. Sabin's disability policy, to qualify for Total Disability, he must be "unable to perform the important duties of Your Occupation." Dkt. 35-6 at 7. "Your Occupation" is defined in the policy as "the occupation or occupations in which You are regularly engaged *at the time Disability begins*." *Id*. (emphasis added). As part of the disability claim Dr. Sabin submitted in October 2020, he filled out an Individual Disability Claim Form, which asked him to describe his occupational duties. Dkt. 35-10. On that form, Dr. Sabin listed three separate duties: office practice, medical-legal, and surgery. *Id*. at 1.

Dr. Sabin is correct that the policy does not define the "important duties" of one's occupation in the definition of Total Disability, but no one disputes that at the time he submitted his claim for Total Disability he was regularly engaged in medical-legal work, or that he listed it as one of the duties of his occupation. Surgery may well have been the defining or predominant aspect of his occupation as orthopedic surgeon when he purchased the policy from Defendants in 1994, but by the time he submitted his claim, his occupation, by his own admission, had expanded to include a significant amount of medical-legal review.

It is true, as Dr. Sabin argues, that "there is a continuum of disability." Dkt. 38 at 22 (quoting *Giddens v. Equitable Life Assurance Soc'y of*

*the U.S.*, 445 F.3d 1286, 1300–01 (11th Cir. 2006). But Dr. Sabin is on the wrong end of that continuum. This is not a case of say, a mechanic who might still be able to answer the phone in the shop after a physical disability, but can't realistically earn a living anymore. Dr. Sabin's occupation, one might say, had multiple "jobs," and while he could no longer perform one of them, it is undisputed that he continued to be able to do another effectively. Something amounting to a quarter to a third of one's invoices is well within the concept of an "important" part of one's duties. Whether that work was performed at home, after hours, or took less of his time in comparison to his other duties does not change the result. *See Hershman v. Unumprovident Corp.*, 660 F. Supp. 2d. 527, 532 (S.D.N.Y.) ("The legal conclusion remains the same regardless of whether one characterizes [a doctor's other duties] as separate 'occupations,' or … a piece of the same occupation that, by virtue of the considerable time and attention they demanded, cannot be considered incidental.").

Based on the undisputed facts in the record and the plain language of the policy, Dr. Sabin was able to perform at least some of the important duties of his occupation when he submitted his claim. Under the terms of the policy then, he was not totally disabled. This conclusion comports with the language of the policy as a whole, which includes a separate provision that allows for residual, or partial disability, when one is "unable to perform one or more of the important duties of Your Occupation." Dkt. 35-6 at 8. Any other interpretation would render this provision meaningless. It also comports with the basic purpose of the Total Disability provision: to protect Dr. Sabin in the event he lost the ability to perform all of the important duties of his work that provided

him with income. That is not what happened here.[2] Accordingly, Defendants' motion for summary judgment seeking a determination that Dr. Sabin is not totally disabled and is, at most, residually (or partially) disabled under the language of the policy, is granted.

## II.    Monthly Disability Benefit

The parties disagree over the amount of monthly benefit Dr. Sabin is owed under the policy if he is deemed to be totally disabled. Dr. Sabin never contends that he is owed under the Residual Disability provision. In April 2021, Unum informed him that he was approved for this benefit, though it's unclear from the record how much he was paid and when or if it discontinued. Dkt. 38-6 at 1; Dkt. 38-11 at 6, 12, 70. Because the parties' arguments regarding the monthly benefit amount are only relevant if under the Total Disability provision, which he is not as a matter of law, this dispute is not one of material fact.

## III.    Bad Faith & Unreasonable Delay or Denial

Because Defendants had a proper basis under the disability policy to deny Dr. Sabin's claim of Total Disability, his bad faith claims also must be dismissed. *See Farmers All. Mut. Ins. Co. v. Cutrone*, 448 F. Supp.2d 1226, 1234 (D. Colo. 2006) ("Summary judgment in favor of an insurance company is appropriate for bad faith breach of insurance contract claims when a court determines that the insurance contract does not provide coverage for the underlying facts.") (citing *Tynan's Nissan, Inc. v. Am. Hardware Mut. Ins. Co.,* 917 P.2d 321, 326 (Colo. App. 1995)). Accordingly, summary judgment in favor of Defendants on Dr. Sabin's second and third claims for relief is also granted.

---

[2] Since May 2021, Dr. Sabin's medical-legal work has yielded $1 million or more in annual revenue. *See* Dkt. 35 at 6.

## IV.    Motion to Strike (Dkt. 41)

Defendants' motion to strike focuses on paragraphs in Dr. Sabin's declaration that relate to the provenance of his vision problems—whether it resulted from an injury, sickness, or both—and whether he is qualified as an expert to render those opinions. *See* Dkt. 41 at 5–10. But this dispute again is only relevant if Dr. Sabin were totally disabled, so the cause of his vision problem no longer bears on any live issues in the case. Accordingly, Defendants' motion to strike is moot.

### CONCLUSION

It is **ORDERED** that:

Defendants' Motion for Summary Judgment, **Dkt. 35**, is **GRANTED;**

Plaintiff's Complaint is **DISMISSED**; and

Defendants' Motion to Strike, **Dkt. 41**, is **MOOT**.


DATED: March 27, 2025                    BY THE COURT:

Daniel D. Domenico
United States District Judge

- 9 -